**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 16-cv-02137 WJM-KLM

JENNIFER M. SMITH,

    Plaintiff,

v.

U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT,

    Defendant.

---

**REVISED MOTION FOR LEAVE TO TAKE 30(b)(6) DEPOSITION OF U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT**

---

Plaintiff Jennifer M. Smith, through her undersigned counsel, hereby respectfully moves pursuant to the Court's Order Regarding Discovery Motions (Doc. #51) and the Court's Minute Order of September 8, 2017 (Doc. #68) for leave to take a 30(b)(6) deposition of a representative of U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT at a location in Denver, Colorado at a time to be determined by mutual agreement of the parties within 30 days following the court's order.

**BACKGROUND**

This is a case brought under the Freedom of Information Act, 5 U.S.C. §§552 *et seq*. ("FOIA") challenging ICE's practice of withholding documents otherwise subject to release under a FOIA request for reasons outside the statutory exceptions. First Amended Complaint (Doc. #32) ¶1 (hereafter, "Am. Cplt."). Plaintiff Jennifer M. Smith is an immigration attorney, who challenges the government's stated practice of refusing to release records related to non-citizens whom the defendants label "fugitives." This practice not only violates Ms. Smith's rights

under FOIA, but also impairs her ability to represent her clients, who have no other avenues to obtain critical records related to their immigration status. *See* Am. Cplt. ¶¶25-28.

The government clearly wishes to prevent the courts' review of its illegal practice. The government delayed over *two years* before providing a response to Ms. Smith's FOIA request, in which it denied the request based on its "practice" of refusing to provide documents related to persons it deems "fugitives." Nevertheless, only one month after Ms. Smith filed this action, the government exercised its discretion to disregard its self-described "practice" and produced the disputed documents—so that it could argue to this court that the case was now moot and outside the court's jurisdiction. *See* Motion to Dismiss (Doc. #15). When Ms. Smith amended her complaint to identify yet another instance of the government's withholding of documents under the identical illegal practice, the government once again moved to dismiss—this time on the grounds that the First Amended Complaint, which seeks equitable relief just like the original complaint, but also alleges yet another instance of injury to Ms. Smith under ICE's illegal practice, fails to establish "continuing or imminent future harm." That motion was denied.

Now the government undertakes a new effort to avoid review: it has adopted a "new" Standard Operating Procedure (SOP), that is related to the challenged practice, but which operates differently. By "disclosing" the new SOP in discovery responses, the government has obscured the original practice, in another bid to avoid review of the challenged practice, without actually even acknowledging whether the government still illegally denies FOIA requests under the original practice.

The government's discovery responses do not provide any information, let alone assurances, that the original challenged practice has been legally discontinued, or whether it still exists in tandem with the "new" SOP. Likewise, the SOP gives conflicting guidance where a

2

FOIA requester submits the same FOIA request both to ICE and to a sister agency. Further, the SOP does not reveal which documents may actually be withheld—after initially withholding *all* documents related to a "fugitive," without even reviewing those documents to see what they are. In short, the government's discovery responses conceal more than they reveal. For Ms. Smith to file an appropriate summary judgment motion, as anticipated by the Court and the parties, additional discovery is warranted and necessary.

**FACTS AND PROCEDURAL HISTORY**

Ms. Smith, an attorney specializing in immigration, agreed to represent Marta Alicia del Carmen Orellana Sanchez to assist with resolving concerns about Ms. Sanchez's immigration status. Am. Cplt. (Doc. #32) ¶10. In connection with that representation, in May, 2013, Ms. Smith made a FOIA request to U.S. Citizenship and Immigration Services ("USCIS"), specifically requesting her client's "Complete Alien File ('A-File')." Am. Cplt. ¶¶15-16. USCIS located some responsive documents and then referred those documents, plus Ms. Smith's request, to defendant U.S. Immigration and Customs Enforcement ("ICE"). Am. Cplt. ¶¶18, 19.

More than two years later, ICE notified Ms. Smith that

> ICE's records indicate that as of September 3, 2015, the subject of your request is a fugitive under the Immigration and Nationality Act of the United States. It is ICE's practice to deny fugitive alien FOIA requesters access to the FOIA process when the records requested could assist the alien in continuing to evade immigration enforcement efforts.

Am. Cplt. ¶20; *see also* ICE response letter dated September 3, 2015 (Doc. #32-1).

This case challenges what the government itself characterizes as its "practice" of withholding documents related to non-citizens the government labels "fugitives." *See* Am. Cplt. ¶¶25-32 and ICE FOIA denial letters (Docs. ##32-1 and 32-2). While FOIA contains nine statutory exceptions to the government's obligation to release records, none of them authorizes

the government's stated practice. Am. Cplt. ¶14. In short, Ms. Smith challenges the government's practice as illegal under FOIA. Am. Cplt. ¶¶37-47.

The government's policy of withholding documents in these circumstances imposes significant burdens on immigration attorneys generally and Ms. Smith in particular. *See generally* Am. Cplt. ¶¶25-28. In many cases, lawyers cannot effectively represent their non-citizen clients – or even determine whether there is a way to help them – without access to information or records the client may be unable to provide. Am. Cplt. ¶25. Immigration proceedings generally have no discovery procedures, and no way for a lawyer to obtain basic information necessary to represent her client without the FOIA process. Moreover:

- Many non-citizens lack familiarity with the immigration system and U.S. law enforcement in general, and do not know or understand the difference between various agencies with which they might interact. The Department of Homeland Security, for example, has several branches that a non-citizen may encounter, but with different roles within the system. These agencies include, among others, Customs and Border Patrol, ICE, and USCIS. Often, non-citizens (and citizen non-lawyers, for that matter) may simply know they are talking to an officer wearing a badge, without understanding what jurisdiction and/or authority that person represents. Thus, a non-citizen's understanding of a contact with government agents is often insufficient to inform an immigration attorney as to what occurred and the outcome of any agency investigation. Am. Cplt. ¶26.

- Furthermore, the client may not remember events that occurred long ago, or may not have received mailings or notices from USCIS and/or ICE. In other cases, the non-citizen might be unaware of proceedings that occurred where the non-citizen was not present, or if present, where the non-citizen failed to understand what happened, or the significance of what happened. Or there may be procedural irregularities that a lawyer could discern from the government's documents that her client, as a layperson, might not recognize. Or, in some cases it is possible that a deportation order issued *in absentia* that the non-citizen knows nothing about. Or a non-citizen may not know whether a claim of asylum was properly acted on, or was even presented to the proper agency. Am. Cplt. ¶27.

- As a result, immigrants seeking legal advice may be unable to explain to their attorney which agency they met with, and what type of interaction transpired, and what the legal issues may be. In these circumstances the only way the non-citizen's lawyer may obtain this kind of information is through a FOIA request. Without access to the FOIA process, a lawyer may have literally no place to start in assisting her client. Am. Cplt. ¶28.

After exhausting her administrative remedies (Am. Cplt. ¶¶7, 22-24), Ms. Smith filed this action on August 24, 2016. Doc. #1. In her initial complaint, Ms. Smith alleged that her FOIA request had been improperly denied under the government's illegal practice, and she sought an order (a) requiring defendants to release the requested records, and (b) declare the government's practice illegal. Cplt. (Doc. #1) ¶¶1, *prayer for relief*. On September 28, 2016, Ms. Smith's litigation counsel in this case received an unannounced overnight delivery from an unfamiliar address in Maryland, which contained 20 pages of additional documents that were subsequently confirmed to be the missing portions of the requested A-File. Smith Decl. (Doc. #19-1) ¶9. No explanation was provided for the government's decision to provide the documents it had previously withheld, nor was there any mention of the government's practice under which it withheld the documents in the first place. *Id*. ¶9; *see also* Doc. #15-4 (cover letter transmitting documents).[1]

On September 27, 2016, while this action was pending, ICE sent another letter to Ms. Smith's law firm in response to a FOIA request related to Ms. Smith's representation of a *different* client. In that letter, the government stated that it refused to provide responsive documents. As grounds, it invoked the identical practice challenged in this case: "It is ICE's practice to deny fugitive alien FOIA requesters access to the FOIA process when the records

---

[1] The government has provided shifting explanations for why the documents were released. The government's lawyers initially explained that withholding records under the practice was discretionary, and ICE had exercised its discretion to release the records. Subsequently, however, the government has taken the position that it released the records in response to an administrative appeal of the request filed more than two years ago, and which the government apparently had no intention of responding to until this litigation made the release of the records expedient for the purpose of avoiding judicial review of the challenged practice. *See* Motion to Dismiss (Doc. #35) at p.4 ("After Plaintiff filed suit, ICE processed her administrative appeal, reversed the initial decision to withhold the records based on the challenged practice, and released the requested records").

requested could assist the alien in continuing to evade immigration enforcement efforts." Smith Decl. (Doc. #19-1) ¶12 and ICE letter of Sept. 27, 2016 (Doc. #19-2).

In October, 2016, the government filed a motion to dismiss, arguing primarily that the government mooted the case by finally providing the documents responsive to Ms. Smith's 2013 FOIA request. Doc. #15. The court struck that motion. Doc. #27. After conferring with the government's counsel and reaching an agreement that amending the complaint would eliminate the need for further motions to dismiss, Ms. Smith filed her First Amended Complaint on January 12, 2017. Doc. #32. The First Amended Complaint alleges two denials of FOIA requests under the government's illegal practice, and it also seeks injunctive relief in addition to the declaratory relief sought in the original complaint.

The government moved to dismiss again. Seeking once again to evade this Court's review of the challenged practice, the government asserted that Plaintiff lacks standing to challenge the illegal practice. The government's motion was denied in an Order dated April 5, 2017 (Doc. #45). In that Order, the Court emphasizes that Ms. Smith has made and will continue to make FOIA requests on a regular basis to various agencies of the Department of Homeland Security, and other relevant factors. *See generally,* Order (Doc. #45) pp.3-4. Accordingly, the Court rejected the government's challenge to Ms. Smith's standing to pursue the case, at least at this stage of the litigation.

**SUBSEQUENT PROCEEDINGS**

From here, the parties agreed that limited discovery was appropriate in this case, and they filed separate motions seeking leave to take limited discovery. *See* Docs. ##46, 47. The government's requested discovery focused on issues related to Ms. Smith's standing, while Ms. Smith sought details related to the government's "practice." *Id.* The Court permitted limited

6

discovery in its Order Regarding Discovery Motions (Doc. #51), which permitted the government to propound interrogatories regarding Ms. Smith's prior and planned FOIA requests, and which also permitted Ms. Smith to propound interrogatories "inquiring about the scope of the challenged practice, ICE's definition of a 'fugitive' for purposes of the challenged practice, and the frequency of ICE's invocation of the challenged practice to deny FOIA requests." Order (Doc. #51) at p. 2. The Court's Order (Doc. #51) further denied Ms. Smith leave to take a 30(b)(6) deposition, but provided that Ms. Smith may seek leave to take a Rule 30(b)(6) deposition upon a showing of good cause.

The need for this motion, which seeks leave to take a 30(b)(6) deposition, in accordance with the Court's discovery Order (Doc. #51), arises out of the government's responses to Ms. Smith's interrogatories.

Quite simply, in a twist that was not foreshadowed by the government and which was likely not anticipated by the Court, the government's responses obscure, rather than clarify, the scope of the challenged practice, by appearing to supplement the original challenged FOIA practice with a new Standard Operating Procedure (SOP). True and correct copies of the government's discovery responses and the SOP are part of the record in this case at Docs. ##60-1 and 60-2. According to the government, the SOP was not operative at the time the "request that was the subject of Plaintiff's complaint was processed."[2] Responses (Doc. #60-1) at p.2 fn.1. Nevertheless, the government's interrogatory responses relate *solely* to the SOP, and they fail entirely to discuss the practice under which Ms. Smith's FOIA requests were denied.

---

[2] The government's responses do not make clear the date on which ICE "processed" the request, nor is it clear whether the government is referring to the FOIA request detailed in Plaintiff's initial Complaint (Doc. #1) or the additional FOIA requests detailed in Plaintiff's Amended Complaint. Am. Cplt. ¶¶29-32.

More important, the SOP, which,by its terms, applies only to FOIA requests directed specifically to ICE, and does not apply at all to FOIA requests submitted to other agencies and *referred* to ICE, acknowledges that referral requests will be processed "in the ordinary course and categorical withholding based on the alien's fugitive status does not apply" (SOP, Doc. #60-2 at p.1)—but provides no guidance whatsoever on what happens in the "ordinary course." **In short, it is impossible to ascertain, based on the SOP and/or the interrogatory responses, whether ICE would withhold documents based on a non-citizen's "fugitive" status, in response to a FOIA request referred to ICE**.

Most concerning in this regard is the SOP's differentiation between FOIA requests received directly by ICE and FOIA requests "originating from another DHS component and thereafter referred to ICE for its direct response (referrals)." SOP (Doc. #60-2) at p.1. According to the SOP, for FOIA requests submitted directly to ICE, where the request relates to a "fugitive", ICE summarily denies the FOIA request and "categorically" withholds *all* records related to that "fugitive" without even reviewing those records to see what information is contained in the records.[3] By contrast, "Referrals are processed in the ordinary course and categorical withholding based on the alien's fugitive status does not apply." *Id.* In other words, according to the SOP, documents responsive to a direct request to ICE are automatically withheld, while documents responsive to an identical request that has been referred to ICE are "processed in the ordinary course." Leaving aside the illegal differentiation on the basis of which agency the requester targets, the SOP is self-contradictory, and fails to advise what records are

---

[3] It should be noted that this practice is even more harsh than the "policy" as previously asserted by the government in its denial previous denials under the fugitive disentitlement doctrine. Under the original challenged policy, ICE asserted that it denied access to the FOIA process not categorically, but "when the records requested could assist the alien in continuing to evade immigration enforcement efforts." Under the SOP, the government does not even review the records in the first instance, it merely denies the request based on its determination that the requester is a member of the category of "fugitive."

released if the same FOIA request is submitted to ICE *and* a sister agency—just as Ms. Smith does on a regular basis.[4] If records are withheld in these circumstances, it appears the SOP does *not* replace the challenged practice, but instead continues it in a different guise. But the SOP does not state what happens when ICE receives the same request directly and as a referral, leaving Ms. Smith unable to properly challenge these circumstances in a motion for summary judgment.

Equally concerning is the language of the SOP providing that "ICE FOIA may categorically withhold the fugitive's law enforcement records or information pursuant to FOIA Exception (b)(7)(A)…, *and the fugitive disentitlement doctrine*." SOP (Doc. #60-2) at p.2 (emphasis added). Again, the SOP does not differentiate when ICE relies on Exception (b)(7)(A), which is a legitimate statutory FOIA exception, and the fugitive disentitlement doctrine, which is not. Without knowing the circumstances under which, and the extent to which, ICE relies on Exception (b)(7)(A), versus the fugitive disentitlement doctrine, Ms. Smith is unable to address the SOP in a motion for summary judgment.

These gaps in the government's discovery responses are critical to this case—particularly in light of the fact that Ms. Smith's FOIA requests were themselves directed to both USCIS and ICE, but then denied by ICE under its previous practice—which may or may not be the "ordinary course" for ICE today.

Plaintiff brought these issues to the court in a motion for leave to take a Rule 30(b)(6) motion. In a hearing held on September 8, 2017, this Court heard argument from the parties and advised on the Court's concerns regarding the motion. At the hearing, the Court ultimately directed Ms. Smith to file a revised motion for leave to take a Rule 30(b)(6) motion addressing the following three issues:

---

[4] Filed herewith are Plaintiff's Interrogatory Responses, together with the attachment, showing that Ms. Smith regularly submits FOIA requests to multiple agencies, including sometimes ICE and a sister agency. *See, e.g.*, information related to the individual with A Number 094-829-xxx.

9

1.   What remaining relief does Plaintiff seek in this case, including in light of the SOP's reference to 5 U.S.C. §552(b)(7)(A)?

2.   What is Plaintiff's burden of proof in obtaining the available relief?

3.   What discovery is Plaintiff entitled to under applicable FOIA precedent to meet the burden of proof?

## ARGUMENT

Without additional discovery, Ms. Smith cannot adequately file a motion for summary judgment, as anticipated by the parties and the Court. Accordingly, Ms. Smith moves for an order permitting a Rule 30(b)(6) deposition for the purpose of ascertaining which FOIA requests ICE

Good cause exists for the simple reason that defendant's discovery responses, including the Standard Operating Procedure (SOP) disclosed in the government's responses, do not provide fundamental details necessary for Ms. Smith to file her affirmative motion for summary judgment to resolve this case. Accordingly, further discovery is necessary for the court to reach, and rule on, the issues raised in this matter. Turning to the matters specifically requested by the Court, Plaintiff states as follows:

**1.   Plaintiff seeks a permanent injunction against any ICE "policy or practice," including, without limitation, the SOP, by which ICE withholds documents solely on the basis of the "fugitive" status of the subject of the FOIA request.**

In her First Amended Complaint (Doc. #32), Ms. Smith asks the Court to:

   a.   Declare that defendant ICE's stated "practice" of denying access to records otherwise obtainable under the FOIA process pertaining to persons it deems to be "fugitive alien FOIA requesters" is in violation of the FOIA; [and]

   b.   Permanently enjoin ICE's stated "practice" of denying access to records otherwise obtainable under the FOIA process pertaining to persons it deems to be "fugitive alien FOIA requesters."

First Amended Complaint (Doc. #32) at p.9.

In prosecuting her claim to obtain the requested relief, this Court permitted limited discovery related to the scope of the challenged practice. However, in response to Plaintiff's interrogatory regarding the scope of the practice, the government responded with the following sleight-of-hand:

> In response to parts (a) and (b) of this interrogatory, ICE states that **the practice under which Plaintiff's FOIA request was denied**, as alleged in the First Amended Complaint, applied to FOIA requests submitted by or on behalf of fugitive aliens. ICE further states that, **as set out in the Standard Operating Procedure ("SOP") produced in response to Plaintiff's request for production,** ICE's practice with respect to "FOIA Requests Made By, or On Behalf of, Fugitive Aliens" applies to FOIA requests submitted to ICE by or on behalf of fugitives, as that term is used in the SOP and as set forth [in] response to interrogatory number 2.

Interrogatory Response #1 (Doc. #60-1) (emphasis added).

The problem is that the government's response cherry-picks which "practice" it refers to in its response, which conceals from Plaintiff the information she needs to file her summary judgment motion. Specifically, the first sentence of the government's response refers to a "practice" that, according to a footnote on the same page, was operative when the "request [sic: there are *two* FOIA requests described in the First Amended Complaint] that was the subject of Plaintiff's complaint was processed," while the second sentence refers to a different "practice," namely, the SOP, which ICE apparently adopted in response to this litigation. The problem with this response is that it conceals the information Plaintiff needs to file her summary motion brief, because it does not answer the key question: Does ICE *continue to deny* FOIA requests "from or on behalf of fugitives" when the FOIA request was initially directed to a sister agency, rather directly to ICE?

As the SOP explains, the practice outlined in the SOP only applies to FOIA requests submitted directly to ICE, and does not apply to requests "referred" to ICE by sister agencies—which are "processed in the ordinary course." SOP (Doc. #60-2) at p.1. But nowhere does the

11

government explain, either in its interrogatory responses or in the SOP itself, what ICE's practice is "in the ordinary course," for referred requests. Does ICE continue to withhold records related to "fugitives" referred from, say, USCIS (like Ms. Smith's initial request)? If so, then the original "practice" still exists as to referred FOIA requests, like the one giving rise to this lawsuit, notwithstanding the government's interrogatory response that elides this information. On the other hand, if ICE does not continue to withhold records related to "fugitives" referred from sister agencies, this raises a different set of issues, namely, how can a statutory FOIA exception, including the (b)(7)(A) exception, be applied to reach opposite results as to the same document held by the same agency, depending on which agency received the original request? Either set of circumstances is subject to review by this Court, and the entry of a permanent injunction if the practice violates FOIA—but it is impossible for Ms. Smith to appropriately address the issue at hand without knowing the actual scope of the challenged practice.

Moreover, the government's invocation of the (b)(7)(A) exception in the "new" SOP does not negate the need for further discovery. On the one hand, the SOP makes no mention of what criteria are applied to FOIA requests referred by sister agencies, other than saying they are handled in the "ordinary course." But even under the SOP, the criteria for "categorical withholding" is applied on the basis of the "[(b)(7)(A) exception], which permits the withholding of records or information compiled for law enforcement purposes to the extent that production of law enforcement records or information could reasonably expected to interfere with law enforcement proceedings, **and the fugitive disentitlement doctrine**." SOP (Doc. #60-2) at p.2 (emphasis added). The (b)(7)(A) exception is a proper FOIA exception, if correctly applied—but the "fugitive disentitlement doctrine" is not. Thus, further discovery is required to determine when, and to what extent, the "fugitive disentitlement doctrine" is the basis for withholding

records under the SOP *versus* exception (b)(7)(A). Without further discovery, the parties cannot appropriately brief the legality of the government's practice for the Court's ruling.

Finally, as discussed above, the SOP calls for the opposite treatment of FOIA requests directly to ICE versus "referrals." Ignoring the unequal treatment of these requests for an illegal reason, the SOP fails to state what happens to a FOIA request submitted to *both* ICE and a sister agency—like the one identified in the Amended Complaint at ¶¶29-31 and Exh. B (Docs. 32 and 32-2).

**2. In FOIA "pattern and practice" cases, government agencies bear the burden of proving, by preponderance of the evidence, the right to withhold documents under a FOIA exemption.**

"Policy and Practice" claims have been expressly recognized by the D.C. Circuit and the Ninth Circuit. *Payne Enterprises, Inc. v. United States*, 837 F.2d 486, 492 (D.C.Cir. 1988) ("even though a party may have obtained relief as to a *specific request* under the FOIA, this will not moot a claim that an agency *policy or practice* will impair the party's lawful access to information in the future") (emphasis in original); *Long v. IRS*, 693 F.2d 907, 909 (9th Cir. 1982) (courts have authority to enjoin agencies from patterns and practices of FOIA violations). "Largely due to the statutory designation of the District of Columbia as an appropriate forum for any FOIA action, the District Court for the District of Columbia and the D.C. Circuit have, over the years, decided a great many of the leading cases under the FOIA." *Freedom of Information Act Guide* (U.S. DOJ/Office of Information Policy, 2004 Ed.) at 722-23; *see also Matlack, Inc. v. U.S. EPA,* 868 F. Supp. 627, 630 & n.3 (D. Del. 1994) (noting that federal courts in the District of Columbia have "long been on the leading edge" of interpreting the FOIA); *Gaylor v. United States,* No. 05-414, 2006 WL 1644681, at *1 (D.N.H. Jun. 14, 2006) (transferring suit to the District of Columbia because of its "special expertise in FOIA matters").

To establish a "pattern and practice" claim, the plaintiff needs to show the following:

> We now clarify, based on *Lujan [v. Defenders of Wildlife*, 504 U.S. 555 (1992)] and our own precedent, that where a plaintiff alleges a pattern or practice of FOIA violations and seeks declaratory or injunctive relief, regardless of whether his specific FOIA requests have been mooted, the plaintiff has shown injury in fact if he demonstrates the three following prongs: (1) the agency's FOIA violation was not merely an isolated incident, (2) the plaintiff was personally harmed by the alleged policy, and (3) the plaintiff himself has a sufficient likelihood of future harm by the policy or practice.

*Hajro v. U.S. Citizenship and Immigration Servs.,* 811 F.3d 1086, 1103 (9th Cir. 2015).

Once these elements of a "pattern and practice" claim are established, the standard burden of proof applies—namely, the government must establish, by preponderance of the evidence, that the practice conforms to one or more statutory exemptions for withholding documents under FOIA. *Payne*, the leading D.C. Circuit case on pattern and practice claims, articulates the showing needed to obtain an injunction, as follows: "The question is simply whether the blanket refusal of AFLC bases to grant Payne's FOIA requests when there is limited competition for a contract, without any legal reason apart from an admittedly inadequate reference to Exemptions 4 and 5, warrants equitable relief." *Payne*, 837 F.2d at 492. This reflects the general standard of proof applicable to all FOIA cases—namely, that the agency bears the burden of proving, by preponderance of the evidence, the right to withhold documents under a FOIA exemption. "As the FOIA presumes public entitlement to agency information, an agency which would withhold information must establish its right to an FOIA exemption." *Providence Journal Co. v. U.S. Dep't of Army*, 981 F.2d 552, 556 (1st Cir. 1992) (citing 5 U.S. C. §552(a)(4)(B)); *see also Dobronski v. FCC*, 17 F.3d 275, 277 (9th Cir. 1994). The district courts make a *de novo* determination as to the validity of the agency's exemption claim. *Id*. (citing *Department of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 755 (1989).

Here, the inquiry is simple: the Court must determine, based on the relevant facts of the scope and nature of the government's practice, whether the government can establish the right to

withhold records responsive to FOIA requests under a statutory exemption under FOIA. *See Payne; Providence Journal*. If not, the Court should enjoin the practice as illegal under FOIA. *Payne*. But before the Court can make an appropriate determination, the Court must enable the parties to discover and present the relevant facts.

**3. Established FOIA precedent holds that Plaintiff is entitled to discovery detailing the scope of the challenged practice, including (a) whether ICE withholds records in response to FOIA requests referred to ICE by sister agencies [as opposed to those directed to ICE itself]; and (b) which records, if any, ICE withholds after receiving an appeal of the initial request.**

In FOIA cases, like in others, a district court has wide latitude in controlling discovery. *See, e.g., Lane v. Department of Interior*, 523 F.3d 1128, 1134 (9th Cir. 2008); *Broadrick v. Exec. Office of the President*, 39 F.Supp.2d 55, 63 (D.D.C. 2001). In most FOIA cases, in which the issue is the propriety *vel non* of withholding documents, discovery is often disallowed, and the government is permitted to file a motion for summary judgment before discovery is permitted, and discovery is only allowed if there are legitimate concerns about the government's good faith and/or the scope of the government's search for responsive records. *Id.*

However, a pattern and practice claim is fundamentally different, since the inquiry is not whether or not the government has appropriately withheld records responsive to a specific request, but whether it is engaged in an illegal pattern or practice. In such cases, while discovery is typically more limited than non-FOIA cases, wider latitude of discovery is ordinarily permitted—just as it has been permitted in this case. *See* Order Regarding Discovery Motions (Doc. #51) (permitting limited discovery). The ruling in *Gilmore v. U.S. Dept. of Energy*, 33 F.Supp. 1184, 1189-90 (N.D. Calif. 1998) is instructive in this regard. In that case, the plaintiff alleged a pattern and practice claim against the DOE for repeated untimely FOIA responses. DOE moved to dismiss (a) for lack of subject matter jurisdiction over the case because all records sought in the underlying FOIA requests had either been released or properly withheld,

15

and (b) on the basis of plaintiff's lack of standing—just as in this case. Just as in this case, the district court rejected both arguments. Following these determinations, the court then allowed limited discovery "on DOE's policies and practices for responding to FOIA requests, and the resources allocated to ensure its compliance with the FOIA time limitations. There is no need for [plaintiff] Gilmore to file an expedited discovery motion; the discovery is necessary and should be taken." *Gilmore,* 33 F.Supp.2d at 1190. The court then allowed interrogatories, document production requests, and depositions. *Id.* Likewise, in another case, the D.C. District Court permitted discovery when, "even after a full round of briefing and a motions hearing, there still remain unanswered questions regarding the government's position that what occurred here is an ordinary and normal processing of a voluminous FOIA request." *Citizens for Responsibility and Ethics in Washington v. U.S. Dept. of Justice*, 2006 WL 1518964 at *3 (D.D.C. June 1, 2006). Following such finding, the court authorized *four* depositions "for the purpose of exploring the reasons behind the delays in processing CREWs FOIA requests." *Id.*

Here, the limited discovery already provided by ICE leaves substantial questions unanswered regarding, *inter alia,* whether or not the government's acknowledged practice of withholding documents relating to "fugitives" continues "in the ordinary course" when the FOIA request is referred by a sister agency instead of received directly by ICE, as well as under what circumstances ICE relies on the "fugitive disentitlement doctrine" (per the SOP), versus when it relies on the (b)(7)A) exception. Plaintiffs respectfully submit that a 30(b)(6) deposition inquiring into the matters identified in the Notice of 30(b)(6) Deposition filed herewith, is not only warranted, but is the most efficient and reliable way to develop the record to permit Ms. Smith to prosecute her claim.

Respectfully submitted this 22nd day of September, 2017.

DANIEL J. CULHANE LLC

*s/* Daniel J. Culhane

_____
Daniel J. Culhane
1600 Broadway, Suite 1600
Denver, CO 80202
Telephone: 303.945.2070
Facsimile: 720.420.5998
Dan@CulhaneLaw.com
*AS COOPERATING ATTORNEY FOR THE ACLU FOUNDATION OF COLORADO*

Mark Silverstein
Sara R. Neel

AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF COLORADO
303 E. 17th Avenue, Suite 350
Denver, CO 80203
Telephone: 720.402.3107
Facsimile: 303.777.1773
msilverstein@aclu-co.org
sneel@aclu-co.org
**Attorneys for Plaintiff**

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document, together with all attachments and supporting documents, if any, was served on defendant's counsel of record via email.

*s/ Daniel J. Culhane*