IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 16-cv-02137-WJM-KLM

JENNIFER M. SMITH,

     Plaintiff,

v.

U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT,

     Defendant.

_____

**ORDER**
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

     This matter is before the Court on Plaintiff's **Revised Motion for Leave to Take 30(b)(6) Deposition of U.S. Immigration and Customs Enforcement** [#69][1] (the "Motion"). Defendant filed a Response [#72]. No reply was permitted. *See Minute Entry* [#68]. The Court has reviewed the filings, the record, and the applicable law, and is sufficiently advised in the premises. For the reasons stated below, the Motion [#69] is **GRANTED in part** and **DENIED in part**.

## I. Summary of the Case

     Plaintiff, an immigration attorney, filed this action challenging the withholding of agency records pertaining to her client's immigration status. *Compl.* [#1]. On or around May 22, 2013, Plaintiff submitted a Freedom of Information Act ("FOIA") request on behalf

_____

[1] "[#69]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF). This convention is used throughout this Order.

of her client seeking agency records from U.S. Citizenship and Immigration Services ("USCIS") and U.S. Immigration and Customs Enforcement ("Defendant" or "the agency" or "ICE"). *Am Compl.* [#32] ¶ 15. On September 3, 2015, Defendant sent Plaintiff a letter containing the following response:

> [Defendant's] records indicate that as of September 3, 2015, the subject of your request is a fugitive under the Immigration and Nationality Act of the United States. It is [Defendant's] practice to deny fugitive alien FOIA requesters access to the FOIA process when the records requested could assist the alien in continuing to evade immigration enforcement efforts.

*Id.* ¶ 20. Defendant withheld 18 pages of documents. *Id.* ¶ 2. After Plaintiff filed the Complaint [#1] initiating this case on August 24, 2016, Defendant provided the 18 pages of documents to Plaintiff and argued in this Court that the case was moot. *Motion to Dismiss* [#15]. However, Plaintiff filed an Amended Complaint [#32] on January 12, 2017, and the parties were permitted a brief period of written discovery. *See Order Regarding Discovery Motions* [#51]; *Abbreviated Scheduling Order* [#55]. Plaintiff's First Amended Complaint acknowledges that her claim for records is moot, but she continues to seek injunctive and declaratory relief, which is further explained below.

Defendant's practice of denying information to fugitive alien FOIA requesters is referred to as the "fugitive alien doctrine," or "fugitive disentitlement doctrine." Pursuant to this practice, FOIA requesters are denied access to documents that "could assist the alien in continuing to evade immigration enforcement efforts." *Am Compl.* [#32] ¶ 20. Plaintiff argues that Defendant is unlawfully denying access to records otherwise subject to disclosure under FOIA on the basis of the "fugitive alien doctrine." *Id.* ¶ 1. During the course of this case, Defendant drafted and provided to Plaintiff a new Standard Operating Procedure ("SOP"), which the agency has explained represents its current policy with

respect to withholding documents pursuant to the "fugitive alien doctrine." *Response* [#72] at 2. Although Defendant has now disclosed its new policy, Plaintiff contends that the SOP is vague in various respects and therefore seeks to conduct a Rule 30(b)(6) deposition of Defendant in order to clarify the scope of its practices for purposes of proving her claim for injunctive and declaratory relief. *See generally Motion* [#69].

## II. Legal Standards

The proper scope of discovery is "any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). However, the Court may prohibit discovery "to protect a party or any person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). Further, discovery that is duplicative or unduly burdensome should not be permitted. Fed. R. Civ. P. 26(b)(2)(C); *see also SEC v. Nacchio*, No. 05-cv-00480-MSK-CBS, 2008 WL 4087240, at *3 (D. Colo. Oct. 19, 2008).

"In FOIA cases, discovery is both rare and disfavored." *Freedom Watch v. Bureau of Land Mgmt.*, 220 F. Supp. 3d 65, 68 (D.D.C. 2016). This is because discovery requests in FOIA cases concerning the issue of a plaintiff's entitlement to documents may be "tantamount to granting the final relief sought." *Id.* (quoting *Tax Analysts v. IRS*, 410 F.3d 715, 722 (D.C. Cir. 2005)). Exceptions to the general rule of not allowing discovery in FOIA cases include circumstances where issues of material fact exist, agency affidavits are incomplete, or the plaintiff has made a showing that the agency acted in bad faith. *Id.*; *Scudder v. CIA*, 25 F. Supp. 3d 19, 50 (D.D.C. 2014).

"Agency affidavits are accorded a presumption of good faith, which cannot be

rebutted by purely speculative claims about the existence and discoverability of other documents." *Am. Ctr. for Law & Justice v. United States Dep't of State*, 289 F. Supp. 3d 81, 86 (D.D.C. 2018) (quoting *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (internal quotation marks and citation omitted)).

### III. Language of the SOP and Affidavit

The SOP states that FOIA requests to the agency are received either by: (1) direct request to Defendant, or (2) referral from other DHS "components," such as USCIS, who encounter requests for Defendant's records when assembling their own responses to FOIA requests. *SOP* [#60-2] at 1. The SOP states that it applies

> only to FOIA requests submitted directly to ICE, which are more likely to implicate law enforcement equities than requests for portions of A-files [Alien Files] referred to ICE. Referrals are processed in the ordinary course and categorical withholding based on the alien's fugitive status does not apply.

*Id.* Furthermore, the SOP provides that Defendant

> may categorically withhold the fugitive's law enforcement records or information pursuant to FOIA Exemption (b)(7)(A) . . ., which permits the withholding of records or information compiled for law enforcement purposes to the extent that production of law enforcement records or information could reasonably be expected to interfere with law enforcement proceedings, and the fugitive disentitlement doctrine.

*Id.* at 2 (emphasis added).

In support of the SOP, Defendant submits the Declaration of its Deputy FOIA Officer, Fernando Pineiro ("Pineiro"), who attests that the SOP provides the only practices and policies Defendant employs in order to determine whether documents concerning fugitive aliens should be withheld. *Pineiro Decl.* [#72-1] ¶ 4. He affirms the SOP's provision that "categorical withholding based on the alien's fugitive status does not apply" to referrals from other agencies. *Id.* ¶¶ 4, 6. Mr. Pineiro further explains that the statement that FOIA

referrals from other agencies are processed "in the ordinary course" means that the agency looks to the FOIA regulations to determine whether the requested records should be released, or whether they are exempt from release. *Id.* ¶ 6. Accordingly, Mr. Pineiro states that "there is no special policy or practice that applies to such requests [that are referred from other DHS components]." *Id.*

## IV. Analysis

Plaintiff seeks leave to take Defendant's Rule 30(b)(6) deposition regarding the implementation and effect of the SOP. *Motion* [#69]. Rule 30(b)(6) expressly permits a party to notice the deposition of "a governmental agency." Fed. R. Civ. P. 30(b)(6). However, the District Judge denied without prejudice Plaintiff's previous request to take such a deposition, finding that it was unnecessary at the time. *Order* [#51] at 2. The Order advised Plaintiff that she could renew the motion "for good cause." *Id.* As grounds for the present request, Plaintiff states that Defendant's interrogatory responses and the SOP do not sufficiently explain fundamental details about the scope of the fugitive alien doctrine that Plaintiff must ascertain prior to filing her anticipated motion for summary judgment.[2] *Motion* [#69] at 7, 10.

As an initial matter, the Court is not persuaded by Defendant's assertion that Plaintiff has failed to explain how the discovery she seeks relates to her claim for declaratory and injunctive relief. *See Response* [#72] at 14. Plaintiff seeks the following relief:

---

[2] As Defendant points out, the District Judge denied without prejudice Plaintiff's previous request for a Rule 30(b)(6) deposition and stated that "the Court would strongly prefer that any request for renewal come in the form of a Rule 56(d) argument and declaration included in a summary judgment response . . . ." *Order* [#51] at 2-3. However, Plaintiff represents that she plans to file an affirmative motion for summary judgment, to which Rule 56(d) – which pertains to a nonmovant – does not apply.

> Declare that defendant ICE's stated "practice" of denying access to records otherwise obtainable under the FOIA process pertaining to persons it deems to be "fugitive alien FOIA requesters" is in violation of the FOIA; [and]

> Permanently enjoin ICE's stated "practice" of denying access to records otherwise obtainable under the FOIA process pertaining to persons it deems to be "fugitive alien FOIA requesters[.]"

*Am. Compl.* [#32] at 9.  Plaintiff's request to conduct a Rule 30(b)(6) deposition is for the purpose of clarifying the scope of Defendant's "practice" in order to analyze its legality and gather evidence to support Plaintiff's claim for relief.  *See generally Motion* [#69].  Thus, it is readily apparent that Plaintiff has explained how the discovery she seeks is related to the relief sought.  The Court is similarly unpersuaded by Defendant's argument that further factual development – specifically, permitting a Rule 30(b)(6) deposition – is unnecessary because Plaintiff's claim presents a purely legal question, namely, "whether or not the practice set forth in the SOP is invalid under FOIA."  *Response* [#72] at 11.  Plaintiff is seeking information regarding the scope of the practice, which is a factual inquiry.

Next, in a discovery hearing on September 8, 2017, the Court instructed the parties to brief the issue of who will ultimately carry the burden of proof on Plaintiff's claim.  The parties disagree on the burden of proof issue.  Plaintiff argues that once she establishes that there is a "pattern and practice" of FOIA violations, the burden shifts to the government to establish by a preponderance of the evidence that the practice falls under a FOIA exemption.  *Motion* [#69] at 14.  Defendant argues that Plaintiff has not provided sufficient legal authority in support of her argument, and then contends that Plaintiff not only has to prove a "pattern and practice" constituting an ongoing failure to abide by FOIA, but that she also must show "that there is 'no set of circumstances' in which the challenged practice might be applied consistent with the agency's statutory authority."  *Response* [#72] at 12

(citing *Scherer v. USFS*, 653 F.3d 1241, 1243 (10th Cir. 2011)). As the issue before the Court is whether to permit Plaintiff to take Defendant's Rule 30(b)(6) deposition, the Court does not find it necessary to resolve with finality the issue of burden of proof at this time. Rather, for the purposes of this Motion [#69], the Court merely notes that both sides contend that Plaintiff bears at least part of the burden of proof, to the extent that Plaintiff must establish that there is a "pattern and practice" of FOIA violations.

Hence, the Court proceeds to examine the parties' remaining arguments about the need for the Rule 30(b)(6) deposition. The Court first notes that it is unclear how Plaintiff could attempt to gather evidence related to Defendant's alleged "pattern and practice" of FOIA violations without conducting discovery. Given Defendant's concession regarding Plaintiff's at least partial burden of proof, permitting such discovery is reasonable. As to the Rule 30(b)(6) deposition sought by Plaintiff, Defendant argues that a deposition is unnecessary because the other discovery Defendant has provided to Plaintiff has sufficiently explained Defendant's practice. *See Response* [#72] at 2. For the reasons discussed below, the Court finds that the discovery previously provided to Plaintiff is insufficient, at least in part.

First, Plaintiff argues that the SOP is vague regarding the agency's applicable authority when withholding documents. Plaintiff points out that the SOP states that Defendant

> **may categorically withhold the fugitive's law enforcement records or information pursuant to FOIA Exemption (b)(7)(A)** . . ., which permits the withholding of records or information compiled for law enforcement purposes to the extent that production of law enforcement records or information could reasonably be expected to interfere with law enforcement proceedings, **and the fugitive disentitlement doctrine**.

SOP [#60-2] at 2 (emphasis added). Plaintiff argues that "[t]he (b)(7)(A) exception is a proper FOIA exception, if correctly applied – but the 'fugitive entitlement doctrine' is not." *Motion* [#69] at 12. Thus, Plaintiff contends that a Rule 30(b)(6) deposition is necessary to ascertain "under what circumstances [Defendant] relies on the 'fugitive disentitlement doctrine' (per the SOP), versus when it relies on the (b)(7)(A) exception." *Id.* at 16. Defendant responds that "[u]nder the plain language of the SOP, there is *no instance* in which [Defendant] may rely on the fugitive disentitlement doctrine 'versus' exemption 7(A)." *Response* [#72] at 17. Mr. Pineiro attests: "[T]here is never a situation in which [Defendant] would deny a fugitive alien's FOIA request on the basis [of] the fugitive disentitlement doctrine but not FOIA Exemption 7(A)." *Pineiro Decl.* [#72-1] ¶ 5. Moreover, the Court notes that the plain conjunctive language of the SOP ("**and** the fugitive disentitlement doctrine") makes Defendant's explanation logical and reasonable.

Thus, from the plain language of the SOP and Mr. Pineiro's supporting statement, it appears that the agency applies *both* the (b)(7)(A) exception *and* the fugitive alien doctrine to justify withholding certain documents. This is a clear answer to Plaintiff's question regarding whether Defendant applies the (b)(7)(A) exception "versus" the fugitive alien doctrine. Plaintiff has not made a showing that Defendant has acted in bad faith and that the affidavit can therefore be ignored. *See Scudder*, 25 F. Supp. 3d at 50. The Court therefore declines to permit Plaintiff to inquire about this issue in a Rule 30(b)(6) deposition.

Second, Plaintiff argues that Defendant has not fully explained in the SOP or interrogatory responses its practice of processing FOIA requests that are referred from other DHS "components." *Motion* [#69] at 11-12. The SOP provides: "Referrals are

-8-

processed in the ordinary course and categorical withholding based on the alien's fugitive status does not apply." *SOP* [#60-2] at 1. Plaintiff contends that, because Defendant's practice regarding such "ordinary course" processing is undefined, the following key question remains unanswered: "Does [Defendant] continue to deny FOIA requests 'from or on behalf of fugitives' when the FOIA request was initially directed to a sister agency, rather [than] directly to ICE?" *Id.* at 11. Mr. Pineiro's affidavit explains that the "ordinary course" means that the agency looks to the FOIA regulations to determine whether the requested records should be released, or whether they are exempt from release. *Pineiro Decl.* [#72-1] ¶ 6. This is a reasonable explanation of the phrase "ordinary course."

Nevertheless, the Court takes issue with a different aspect of this language. The addition of the word "categorical" in the phrase "**categorical** withholding does not apply" makes the phrase's meaning somewhat ambiguous. "Categorical" means "absolute," or "unqualified." *Categorical*, MERRIAM-WEBSTER (2018). Saying that documents will not be withheld "categorically" leaves open the possibility that *some* documents *could* be withheld based on an alien's fugitive status even when the FOIA request has been referred from another agency. On the other hand, Mr. Pineiro's affidavit states that "there is no special policy or practice that applies to such [referred] requests," implying that the fugitive alien doctrine is *never* applied to referred FOIA requests. *Pineiro Decl.* [#72-1] ¶ 6. Thus, it appears to the Court that there may be inconsistency between Mr. Pineiro's affidavit and the language of the SOP.

Additionally, as Plaintiff points out, the SOP language and Mr. Pineiro's affidavit appear to create a dual standard. *See SOP* [#60-2] at 1; *Pineiro Decl.* [#72-1] ¶¶ 4, 6. Specifically, it seems that Defendant applies the fugitive alien doctrine to direct requests,

but may or may not apply it to referrals (based on the use of the word "categorical," as explained above).  Thus, the heart of Plaintiff's remaining inquiry related to referred FOIA requests is the following:  "[H]ow can a statutory FOIA exception . . . be applied to reach opposite results as to the same document held by the same agency, depending on which agency received the original request?"  *Motion* [#69] at 12.   Defendant argues that the SOP and Mr. Pineiro's affidavit clarify the rationale behind its practices.  For example, the SOP states that "requests submitted directly to ICE . . . are **more likely** to implicate law enforcement equities than requests for portions of A-files referred to ICE."  *SOP* [#60-2] at 1 (emphasis added).  Mr. Pineiro adds that "referrals **predominantly** involve requests for A-files."  *Pineiro Decl.* [#72-1] ¶ 6.  However, these explanations do not entirely resolve the issue.  Rather, the phrases "more likely" and "predominantly" both indicate that there may be a scenario where a request referred from another agency *does* implicate law enforcement equities and does *not* simply involve a request for an A-file.  Thus, the Court concludes that Plaintiff should be entitled to inquire in a Rule 30(b)(6) deposition of Defendant regarding the circumstances under which such a request could be treated differently from an identical request submitted directly to ICE.

## V.  Conclusion

For the foregoing reasons,

IT IS HEREBY **ORDERED** that the Motion [#69] is **GRANTED in part** and **DENIED in part**.  The Motion [#69] is **granted** to the extent that Plaintiff seeks information about the following: the inconsistency between the SOP and Mr. Pineiro's affidavit regarding how referrals from other DHS components are handled with respect to the fugitive alien

doctrine; whether identical FOIA requests can and are treated the same or differently depending on whether they are initially sent to ICE, another DHS component, or both; and if the requests are treated differently, the agency's explanation for such treatment. Defendant shall provide a Rule 30(b)(6) deponent to testify on these topics on a mutually agreeable date and time, for a period of no longer than 90 minutes.  The Motion [#69] is **denied** in all other respects.


Dated:  June 21, 2018

BY THE COURT:

Kristen L.  Mix
United States Magistrate Judge