**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 16-cv-02137 WJM-KLM

JENNIFER M. SMITH,

     Plaintiff,

v.

U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT,

    Defendant.

---

**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

---

Plaintiff Jennifer M. Smith, through her undersigned counsel, respectfully moves for summary judgment pursuant to F.R.C.P. 56. As grounds for her motion, Plaintiff states as follows:

**INTRODUCTION**

In the last years, courts across the country have repeatedly invalidated and enjoined defendant ICE and other executive-branch officers and agencies for their violations of civil, constitutional, and due process rights of undocumented individuals. Such injunctions have curtailed violations running the gamut from separating migrant children from their families (Order Granting Plaintiffs' Motion for Classwide Preliminary Injunction, *Ms. L v. U.S. Immigration and Customs Enforcement*, S.D. Ca. Case No. 18-cv-0428 DMS (MDD), June 26, 2018), to denying Temporary Protected Status for immigrants from Haiti, Sudan, Nicaragua and El Salvador (Order Granting Plaintiffs' Motion for Preliminary Injunction*, Ramos v. Nielsen, N.D.Ca.* Case No. 18-cv-1554 EMC, October 3, 2018), to denying immigrants at the southern border to exercise their right to seek asylum (*Easy Bay Sanctuary Covenant v. Trump*, 9th Cir. Case No. 18-17274 (slip

op.) December 7, 2018 (Bybee, J.)), to summarily deporting asylum-seeking migrants in violation of the APA and the INA under a policy adopted by Attorney General Sessions (*Grace v. Whitaker*, D.D.C. Case No. 18:cv-1853 (EGS), December 19, 2018 ("because it is the will of Congress—not the whims of the Executive—that determines the standard for expedited removal, the Court finds that those policies are unlawful" [Slip. Op. p.3]). The government's assault on the rights of non-citizens is all the more disgraceful because defendants in immigration proceedings lack the full panoply of rights guaranteed under the Bill of Rights for criminal defendants, such as the right to representation, leaving non-citizens particularly vulnerable to abuse.

This case arises in precisely this context. Plaintiff, an immigration attorney who regularly represents non-citizens, seeks to redress yet another systemic violation of non-citizens' rights—the right to obtain basic information about the nature of proceedings that affect non-citizens' immigration status—which is available only through the Freedom of Information Act (FOIA). ICE's policy denies "access to the FOIA process"—and fundamental due process rights—to non-citizens whom ICE unilaterally designates as "fugitives." In response to FOIA requests, which ICE still issues to this day, ICE advises FOIA requesters:

> ICE's records indicated that as of [date], the subject of your request is a fugitive under the Immigration and Nationality Act of the United States. **It is ICE's practice to deny fugitive alien FOIA requesters *access to the FOIA process* when the records requested could assist the alien in continuing to evade immigration enforcement efforts**.
>
> ***
>
> **The ICE FOIA office *declines to process your request* until the subject of the request is no longer considered a fugitive. If the fugitive surrenders at the nearest ICE office, you may notify this office and ICE will process your FOIA request**.

Declaration of Daniel P. Harris (**Exh. D**) ¶¶6-7 and Exhibit A thereto (ICE Letter to FOIA requester (October 5, 2018) (emphasis added).

Worse, ICE's practice of denying "access to the FOIA process" applies to an overly-broad class of non-citizens ICE designates as "fugitives," which ICE defines (without any basis in law) in an unpublished SOP, which is unavailable to the public for review or scrutiny, *see* Fact 41 *infra*, in a way that may include virtually everyone ICE deals with. *See* Fact 15 *infra.*

ICE's policy is straight-up illegal. Neither ICE nor any other administrative agency has the authority to "deny … requesters access to the FOIA process," let alone to deny FOIA access to a class ICE defines for itself without any authority or basis in law. There is nothing in the FOIA statute that even mentions "fugitives," let alone grants authority to ICE to prevent any class of persons, especially under an illegal and secret definition, from obtaining records through FOIA requests.

To make matters worse, ICE has systematically acted to evade judicial review of its illegal policy. When plaintiff filed this lawsuit, ICE had denied plaintiff's FOIA request and administrative appeal pursuant to its "practice" to deny "access to the FOIA process," as described in its letter quoted above. Promptly after plaintiff filed this action, however, suddenly ICE produced the responsive documents, after which ICE claimed the case was "moot." When its motion to dismiss was denied (Doc #45), ICE tried to move the goal posts again, and purported to withdraw its previous unwritten policy, in favor of a formal Standard Operating Procedure (SOP), which ICE avers has supplanted its previous practice. Nevertheless, ICE continues to send the exact same letters "denying access to FOIA" to those it deems "fugitives"—leaving the court to adjudicate a SOP that ICE does not follow, while insisting the court must disregard its ongoing practice that prompted this lawsuit in the first place.

ICE's reluctance to face judicial scrutiny is understandable, because just like its ongoing indefensible practice of "denying fugitives access to the FOIA process," ICE's new SOP adopted in response to this lawsuit is itself illegal on its face. But worse, it appears the SOP is a sham, since ICE continues to send out the "deny-access-to-FOIA" letters, despite ICE's sworn testimony that it has replaced that practice with the illegal SOP. **The evidence conclusively demonstrates that ICE continues its "deny-access-to-the–FOIA-process" policy, irrespective of the SOP.**

But more to the point, even if ICE does, in fact, follow its SOP (Doc #60-2) (attached hereto as **Exhibit A**), the policies in the SOP are themselves illegal in numerous ways:

- The SOP relies on the "fugitive disentitlement doctrine," which ICE itself concedes is not a lawful exception for withholding records under FOIA.

- Under the SOP, ICE "categorically" withholds *all* records related to "fugitives" in the agency's response to the initial FOIA request, and defers application of the statutory FOIA exceptions until the requester files an appeal.

- By deferring lawful FOIA compliance until the applicant's appeal, ICE violates the statutory right to an agency appeal of a FOIA denial. The applicant's "appeal" <u>de facto</u> serves as the *initial* response, because the purported initial response under the "fugitive practice" is an illegal categorical denial, rather than the substantive response mandated by FOIA itself—which eliminates the statutory administrative appeal, and requires an applicant to file a federal lawsuit instead.

- ICE illegally refuses to refer "fugitive" FOIA requests to sister agencies that may be the lawful custodian of records in ICE's possession (such as the non-citizen's A-File, whose custodian is U.S. Customs and Immigration Services), on the illegal ground that ICE "does not want to help fugitives."

- Likewise, ICE applies its "categorical withholding" policy only to FOIA requests submitted directly to ICE, while it processes requests "referred" from sister agencies in the "normal course of business," resulting in an arbitrary and groundless disparity based on the irrelevant factor of where the FOIA request was originally directed.

ICE's FOIA fugitive practices—both the "deny-access-to-FOIA" practice and the SOP— are illegal and serve not only to violate FOIA itself, but also to deprive non-citizens of the opportunity to meaningfully exercise rights available to them under law. Moreover, given that ICE

continues the "deny-access-to-FOIA" policy that existed before ICE adopted its formal SOP, simply declaring the SOP illegal will be insufficient to prevent future harm: ICE has *two* illegal FOIA practices that must be enjoined, not just one. Accordingly, Plaintiff respectfully moves the Court to grant summary judgment in favor of Plaintiff Jennifer Smith and (a) declare ICE's "deny-access-to-FOIA" practice illegal; (b) declare ICE's SOP illegal; and (c) enter a permanent injunction prohibiting ICE from (i) denying any applicant access to the FOIA process; (ii) "categorically" withholding any records under FOIA or otherwise withholding documents except as permissible under FOIA's statutory exceptions, (iii) deferring substantive compliance with FOIA until the applicant's appeal, and (iv) refusing to refer FOIA requests to sister agencies as required by law.

## MOVANT'S STATEMENT OF MATERIAL FACTS

In addition to matters already of record in this Court, Plaintiff relies on the following exhibits filed herewith:

- **Exhibit A**: ICE SOP (Doc. #60-2);
- **Exhibit B**: Transcript of Deposition of Fernando Pineiro (10/17/2018);
- **Exhibit C**: Declaration of Jennifer Smith (3/22/19);
- **Exhibit D**: Declaration of Daniel Harris (3/22/19) and Exhibits thereto;
- **Exhibit E**: Declaration of Melody Poole (3/22/19) and Exhibits thereto;
- **Exhibit F**: ICE discovery responses.

1.      Plaintiff Jennifer M. Smith is an immigration attorney. She challenges ICE's practice of refusing to release records related to non-citizens whom the defendant labels "fugitives" (referred to herein as the "Fugitive Practice"). Smith Decl. (Doc. #49-1) ¶¶2-3.

2.      Ms. Smith is well aware of policy changes implemented by the Trump Administration to target non-citizens in this country. ICE has significantly and aggressively increased its efforts to increase deportations, detentions, and splitting up families of non-citizens,

including law-abiding non-citizens, and/or non-citizens whose only crimes are non-violent, insignificant crimes such as traffic violations. These increased activities have had a significant chilling effect on non-citizens, including Ms. Smith's clients and potential clients. Smith Decl. (Doc. #49-1) ¶4.

3. Ms. Smith agreed to represent Marta Alicia del Carmen Orellana Sanchez to assist with resolving concerns about Ms. Sanchez's immigration status. Declaration of Jennifer Smith (filed herewith as **Exhibit C**) ¶4.

4. In connection with that representation, in May, 2013, Ms. Smith submitted a FOIA request to U.S. Citizenship and Immigration Services ("USCIS"), specifically requesting Ms. Sanchez's "Complete Alien File ('A-File')." *Id.* ¶5.

5. USCIS located some responsive documents, and then referred those documents, plus Ms. Smith's request, to defendant ICE. *Id.* ¶6.

6. More than two years later, in a letter dated September 27, 2015 (Doc. #15-3) ICE notified Ms. Smith that:

> ICE's records indicate that as of September 3, 2015, the subject of your request is a fugitive under the Immigration and Nationality Act of the United States. It is ICE's practice to deny fugitive alien FOIA requesters access to the FOIA process when the records requested could assist the alien in continuing to evade immigration enforcement efforts.

*Id.* ¶7.

7. After exhausting her administrative remedies (Am. Cplt. [Doc #32] ¶¶7, 22-24; Smith Decl. [**Exh. C**] ¶8), Ms. Smith filed this action on August 24, 2016. Cplt. (Doc. #1).

8. In her initial complaint, Ms. Smith alleged that her FOIA request had been improperly denied under the government's illegal practice and sought an order (a) requiring

defendants to release the requested records, and (b) declare the government's practice illegal. Cplt. (Doc. #1) ¶¶1, *prayer for relief.*

9.      On September 28, 2016, Ms. Smith's litigation counsel in this case received an unannounced overnight delivery from an unfamiliar address in Maryland, which contained 20 pages of additional documents that were subsequently confirmed to be the missing portions of the requested A-File. Smith Decl. (Doc. #19-1) ¶9.

10.     The government provided no explanation for its decision to provide the documents it had previously withheld, nor did it provide any details of the government's practice under which it withheld the documents in the first place. *Id*. ¶9; *see also* Doc. #15-4 (cover letter transmitting documents).

11.     On September 27, 2016, while this action was pending, ICE sent another letter to Ms. Smith's law office in response to a FOIA request related to Ms. Smith's representation of a *different* client, in which the government invoked the identical practice in its refusal to provide responsive documents: "It is ICE's practice to deny fugitive alien FOIA requesters access to the FOIA process when the records requested could assist the alien in continuing to evade immigration enforcement efforts." Smith Decl. (Doc. #19-1) ¶12 and ICE second letter (Doc. #19-2).

12.     ICE moved to dismiss this lawsuit, claiming that its release of Ms. Sanchez's records renders the case moot. Doc. #15. Plaintiff amended her complaint to clarify that she is challenging ICE's illegal policies and practices, not just seeking records responsive to a single FOIA request. Doc. #31-1. ICE subsequently moved to dismiss on the grounds that plaintiff lacks standing to challenge ICE's illegal policy. Doc. #35. The court denied the motion. Doc. #45.

13.     ICE then adopted the SOP (Doc. #60-2), attached as **Exhibit A;** *see also* Pineiro Dep, filed herewith as **Exhibit B** at 8:8-9:4; ICE responses to interrogatory #1 and request for production #1 (attached as **Exhibit F**).

14.     ICE claims in filings, representations to the court, and deposition testimony that its SOP states its sole practice and policy governing responses to FOIA requests related to those it deems "fugitives." *See, e.g.,* Doc. #72 at p.2 ("the SOP governs ICE's treatment of FOIA requests by or on behalf of fugitive aliens, and there is no other practice applied by ICE to FOIA requests submitted by or on behalf of fugitive aliens"); Pineiro Decl. (Doc. #72-2) at ¶4.

15.     The SOP provides for "categorical withholding" of records related to a "fugitive" alien. SOP (**Exh. A**) p.2. The SOP defines "fugitive" as follows:

> For FOIA purposes, a fugitive is any subject, not in ICE custody, who:
> - Is an alien who received either a grant of voluntary departure or a removal order, and was instructed to depart or to report to ICE with proof of planned departure to his or her nation of citizenship, and failed to do so;
> - Is an alien who has failed to report to an ICE officer after receiving a legal order to do so;
> - Is an alien who has failed to comply with any conditions placed on him/her;
> - Is an alien who has failed to comply with the provisions of any program that requires him/her to report to ICE for any reason; or
> - Is wanted by ICE for criminal violations of the Titles 8, 18, 19 and 21.

SOP (**Exh. A**) at p. 2.

16.     ICE averred as early as July 2017 (ICE Responses to Plaintiff's Discovery Requests, Doc. #60-1, at fn1) and continuously through October 2018, that it halted its "deny-access-to-FOIA" practice described in its letter (Smith Decl. [Doc. #19-1] and Doc. #19-2), *i.e.,* that it denies those it deems fugitives "access to the FOIA process." Pineiro Dep, filed herewith as **Exhibit B**, at 32:4-13 ("I can categorically tell you you're not going to have a request from my

office that says we're not going to respond to your FOIA request and that's it"); *see also* Response to Revised Motion for Leave to Take Rule 30(b)(6) Deposition of ICE (Doc. #72) at pp. 5-7 and p. 15 ("Plaintiff's belief that ICE employs a different practice, outside the SOP, is mistaken. No discovery is necessary to inquire into a non-existent practice"); *see also* Pineiro Decl. (Doc. #72-1) ¶4 (same).

17.    Despite its repeated representations (Fact #16 above), ICE continues its "deny-access-to-FOIA" practice. On **October 5, 2018**, less than two weeks *before* Mr. Pineiro gave his deposition (October 17, 2018), ICE applied its "deny-access-to-FOIA" process to yet another FOIA request. ICE letter denying the FOIA request was identical to the September, 2015 and September, 2016 letters sent to Smith's law firm. This letter states, in relevant part: "It is ICE's practice to deny fugitive alien FOIA requesters access to the FOIA process when the records requested could assist the alien in continuing to evade immigration enforcement efforts." Declaration of Daniel Harris (filed as **Exhibit D** herewith) Decl. ¶6 and Exh. A thereto; *compare id. with* Docs. ##15-3, 19-1.

18.    The FOIA denial letter sent to Mr. Harris repeated the communication to Ms. Smith of conditions for processing his client's FOIA request: "The ICE FOIA office declines to process your request until the subject of the request is no longer considered a fugitive. If the fugitive surrenders at the nearest ICE office, you may notify this office and ICE will process your FOIA request." Harris Decl. (**Exh. D**) ¶7 and Exh. A thereto; *compare id. with* Docs. ##15-3, 19-1.

19.    Just last month, following Mr. Harris's appeal of ICE's denial of his FOIA request on behalf of his client, Mr. Harris received a letter dated February 4, 2019 from the ICE Office of the Principal Legal Advisor, which reiterated that ICE had "**declined to process** [Mr. Harris's]

request until the subject of the request is no longer a fugitive." Harris Decl. (**Exh. D**) ¶9 and Exh. B (emphasis added). That letter advised that following a "complete review of the administrative record," Mr. Harris's request was remanded to ICE "for processing and re-tasking to the appropriate agency/office(s) to obtain any responsive documents." Harris Decl. ¶10 and Exh. B thereto. No documents have yet been provided, however. Harris Decl. (**Exh. D**) ¶11.

20.     ICE issued yet another FOIA denial letter using exactly the same language in response to yet another FOIA request in August, 2018, using the identical language stating that "It is ICE's practice to deny fugitive alien FOIA requesters access to the FOIA process when the records requested could assist the alien in continuing to evade immigration enforcement efforts." Declaration of Melody Poole (filed herewith as **Exhibit E**) at ¶¶6-7 and Exh. A thereto.

21.     When Ms. Poole appealed ICE's refusal to process her FOIA request she received a response from Erin Clifford of the ICE Office of the Principal Legal Officer dated November 8, 2018 (Poole Decl. Exh. B) restating ICE's "deny-access-to-FOIA" practice, but advising that after a "complete review of this administrative record" it is it is appropriate for the ICE FOIA Office "to release records pertaining to your client, subject to any applicable exemptions under the FOIA." Poole Decl. (**Exh. E**) ¶¶9-10 and Exh. B thereto. Ms. Poole has received no responsive records. Poole Decl. ¶11.

22.     Plaintiff has communicated with at least two (2) other immigration attorneys in the last two (2) months who have indicated to her that they have received denials of FOIA requests based on ICE deeming their immigrant clients to be "fugitives." Many of the lawyers who have reached out to Ms. Smith about this issue have not followed through with providing her copies of

the denial letters from ICE. Ms. Smith understands some of the lawyers may be concerned about bringing unwanted attention to their practice and their clients. Smith Decl. (**Exh. C**) ¶15.

23.     ICE admits that there is no provision of law that allows ICE to deny people access to the FOIA process even though there is a process to allow ICE to withhold documents. Pineiro Dep. (**Exh. B**) 49:2-7.

24.     ICE further admits that the phrasing of the "deny-access-to-FOIA letter," such as the September 27, 2016 letter (Doc. #19-1) is improper, and does not comply with the SOP. Pineiro Dep. (**Exh. B**) 50:21-51:9.

25.     ICE does not review whether there is a link between the contents of documents responsive to a FOIA request and legitimate law enforcement activities prior to its initial FOIA response, but instead "categorically" withholds all responsive documents. SOP (**Exh. A**) at p.2; Pineiro Dep. (**Exh. B**) at 24:20-25:10; 33:15-35:11 ("so, again, it's the categorical denial of the records"). Only if the requester appeals does ICE review whether there is a link between the requested documents and legitimate law enforcement activities. SOP (**Exh. A**) at §III(6); Pineiro Dep. (**Exh. B**) at 46:4-19; Harris Decl. (**Exh. D**) ¶¶9-10 and exhibit B thereto; Poole Decl. (**Exh. E**) ¶¶9-10 and exhibit B thereto.

26.     If ICE claims a FOIA exemption permits withholding of a part of a document, ICE redacts the part to which the exemption applies and annotates the exemption, i.e., with a notation in the redacted portion citing the specific exemption. Pineiro Dep. (**Exh. B**) 20:5-18.

27.     When ICE receives a FOIA request on behalf of a person it deems a fugitive for records for which ICE is not the custodian (such as a non-citizen's A-file, for which USCIS is the custodian), it does not refer (or "transfer") those requests to the sister custodial agency, because

ICE's practice is not to "provide access" to those it deems fugitives. Pineiro Dep. (**Exh. B**) 78:22-79:15; *see also id.* 11:1-7 (if ICE received a FOIA request for an A-file, it would have to transfer that request to USCIS); 35:8-12 (ICE does not transfer requests relating to those it deems "fugitives"); 57:13-24 (same).

28.    The only means plaintiff has to obtain documents to represent her clients in many situations is to make FOIA requests. For this reason, plaintiff makes FOIA requests on a regular basis to various agencies of the Department of Homeland Security just like the one at issue in this case. Smith. Decl. (Doc. #19-1) ¶4.

29.    Plaintiff submits numerous FOIA requests as part of her practice. Plaintiff has no way of knowing whether any particular client will be deemed a "fugitive" by ICE, and whether, as a result, (a) her FOIA request will be denied on the basis of the "deny-access-to-FOIA" practice (*see* Facts 6, 11, 17, 20 above), or (b) documents will be "categorically withheld" under the SOP, depriving plaintiff both of (i) responsive documents, redacted only to the extent permitted under statutory FOIA exceptions, and (ii) her substantive right to an administrative appeal. Smith Declaration, attached as **Exhibit C** at ¶12.

30.    At the time the case was filed, plaintiff had 11 FOIA requests pending with ICE, any of which was susceptible to denial under ICE's "deny-access-to-FOIA" practice and/or its overly broad definition of "fugitive" quoted in Fact 15 above. Smith Decl. (**Exh. C**) at ¶12. In fact, one FOIA request pending at the time the case was filed was, in fact, denied under the "deny-access-to-FOIA" practice on September 16, 2016—the same date when ICE attempted to moot this case by releasing documents, without explanation, in response to the request related to Ms. Sanchez. *Id.* ¶12; *see* Fact 11 above.

31.     Any FOIA requests submitted to ICE at the time of this lawsuit subjects Ms. Smith to the risk of imminent harm of an illegal denial of her rights under FOIA. Smith Decl. (**Exh. C**) ¶15. This is because ICE defines "fugitive" so broadly that it could include almost any one of her immigration clients. *Id.*

32.     Plaintiff has suffered actual harm from the "deny-access-to-FOIA" practice, as two of her firm's requests have actually been denied on this basis, thereby depriving her of her rights protected by and under FOIA. *Id.* ¶¶7, 13; *see* Facts 6, 11 above.

33.     Plaintiff is subject to the risk of imminent harm from the "deny-access-to-FOIA" practice, which ICE continues to invoke to this day to deny access to attorneys representing non-citizens, as well as from the SOP, which ICE asserts (although incorrectly) has succeeded the "deny-access-to-FOIA" practice. Smith Decl. (Doc #19-1) ¶¶6, 8; Smith Decl. (**Exh. C** hereto) ¶16; *see* Facts 16-21 above.

34.     Plaintiff's clients frequently lack information and/or understanding of critical information related to their immigration status. Without obtaining ICE documents through a FOIA request, plaintiff is unable to adequately understand the issues in her client's cases and represent her clients under applicable law. Smith Decl. (**Exh. C**) ¶17.

35.     The law provides non-citizens with numerous avenues to challenge or amend adverse immigration orders, including removal (i.e., deportation) orders. For example, if a non-citizen has married a citizen, this may provide an opportunity to remain in the country. As another example, a deportation order may be subject to legal challenge if it was entered improperly or without proper notice to the non-citizen. Smith Decl. (**Exh. C**) ¶18.

36.     The defenses and legal avenues to remain in the country are generally unavailing to a non-citizen unless the non-citizen has access to their immigration files. If a non-citizen deemed by ICE to be a "fugitive" surrenders to ICE without access to her immigration files, she will generally be summarily deported, even if represented by an attorney. This is because the attorney is unable to present defenses and exercise other legal rights without a full understanding of the information in the government's files. Smith Decl. (**Exh. C**) ¶19.

37.     ICE's SOP relies on the "fugitive disentitlement doctrine" as a basis for categorically withholding records in response to a FOIA request. SOP (**Exh. A**) at p.2.

38.     ICE admits that the "fugitive disentitlement doctrine" is not a legal basis for withholding records responsive to a FOIA request. Pineiro Dep. (**Exh. B**) 39:14-19; 73:17-22.

39.     The SOP provides for "categorical withholding" of records only for FOIA requests submitted directly to ICE, while processing FOIA requests "referred" from sister agencies are treated in the "ordinary course," *i.e.*, without "categorical withholding." SOP (**Exh. A**) at p.1.

40.     ICE avers that it has "A-Files" in its possession, but that if it received a direct request for a non-citizen's A-File, it would refer (or "transfer") that request its legal custodian, which is USCIS (U.S. Customs and Immigration Services). Pineiro Dep. (**Exh. B**) 11:1-7; 15:8-11.

41.     The SOP is not published or available to the public. Pineiro Dep. (**Exh. B**) 41:1-4.

## SUMMARY JUDGMENT STANDARD

Pursuant to Fed.R.Civ.P. 56, Plaintiff Jennifer M. Smith moves for the entry of summary judgment on her single claim that ICE's FOIA practices with respect to "fugitives" are illegal and unsound, and requests the entry of an order (a) declaring the "deny-access-to-FOIA" practice

illegal, (b) declaring the SOP illegal; (c) declaring the practice of "categorical withholding" of FOIA documents illegal, irrespective of whether undertaken under the SOP or otherwise, (d) enjoining ICE from denying any applicant access to the FOIA process, (e) enjoining defendant ICE from "categorical withholding" of records in response to FOIA requests from or on behalf of those it deems fugitives, and (f) enjoining ICE from refusing to transfer FOIA requests from those it deems "fugitives" to sister agencies who may have responsive documents.

"The Court *shall* grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (emphasis added).

> "FOIA actions are typically decided on motions for summary judgment." *Info. Network for Responsible Min. v. Bureau of Land Mgmt.,* 611 F. Supp. 2d 1178, 1182 (D. Colo. 2009). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).
>
> In evaluating the pending motions, "two guiding principles apply. First, FOIA is to be broadly construed in favor of disclosure. Second, its exemptions are to be narrowly circumscribed." *Trentadue v. Integrity Comm.,* 501 F.3d 1215, 1226 (10th Cir. 2007). In other words, "disclosure, not secrecy, is [FOIA's] dominant objective." *Dep't of Interior v. Klamath Water Users Protective Ass'n, 532 U.S.* 1, 8, 121 S. Ct. 1060, 149 L. Ed. 2d 87 (2001) (internal quotation marks omitted).

*Rocky Mtn. Wild, Inc. v. United States Forest Services*, 2016 U.S. Dist. Lexis 10846 (D. Colo. January 29, 2016) at *4-5.

## ARGUMENT

At the outset, Plaintiff notes that ICE has made inconsistent and misleading statements to the Court and to plaintiff, and it has acted inconsistently with its representations to the Court by continuing the "deny-access-to-FOIA" process while repeatedly insisting that it discontinued that policy when it adopted the SOP. This Court should adjudicate ICE's *actions*, not its contradictory and inconsistent representations to the court.

- Despite announcing an unwritten policy in letters to plaintiff's law firm (Facts 6, 11) and refusing to provide responsive documents under that stated policy, in response to this lawsuit, and without explanation, ICE produced the responsive documents—first explaining that it had "exercised discretion" to deviate from its policy (Smith Decl. [Doc. #49-1] ¶9), and then reversing itself to aver to the court that it had reconsidered Ms. Smith's appeal, and reversed its previous denial, evidently finding that ICE's policy does not apply to Ms. Smith's request in the first place. Motion to Dismiss (Doc. #15) at p.4.

- ICE has averred to the Court that its newly-implemented fugitive practice (ICE calls it the "SOP") is the "sole" policy for governing ICE's responses to FOIA requests to those it labels "fugitives." Fact 16. This assertion is belied by ICE's 2018 letters to Mr. Harris (Facts 17-19), Ms. Poole (Facts 20-21), and other immigration attorneys (Fact 22), identical in form to the two Ms. Smith received in 2016, which asserts that ICE denies those it deems fugitive aliens "access to the FOIA process." *Compare* Harris Decl. (**Exh. D**) at Exh. A thereto and Poole Decl. (**Exh. E**) at Exh. A thereto *with* Docs. ##15-3 and 19-2.

- Finally, ICE obfuscates its reliance on the "fugitive disentitlement doctrine," which, according to the SOP (**Exh. A**), is the basis for ICE's "categorical withholding" of responsive FOIA documents. Specifically, ICE told the Court that its categorical withholdings are determined *both* under the FDD *and* b(7)(A), such that the FDD and b(7)(A) exemption are indistinguishable and 100% overlap. ICE Response to Motion to Dismiss (Doc #72) at 17; Pineiro Decl. (Doc. #72-1) ¶5 ("there is never a situation in which ICE would deny a fugitive alien's FOIA request on the basis of the fugitive disentitlement doctrine but not FOIA Exemption 7(A)"). But if that is so, why does ICE mention the FDD in its SOP at all, especially given that ICE acknowledges that the FDD is not a legally recognized exception to FOIA?

Nevertheless, despite factual discrepancies in ICE's FOIA practices, it is irreducibly clear that ICE engages in the following FOIA practices, which are illegal whether under a written SOP or otherwise:

(a)     ICE continues to use the "deny-access-to-FOIA" process, announced in letters sent in September, 2015 (Fact 6), September, 2016 (Fact 11) and continuing substantially passed the implementation of the SOP, on August 16, 2018 (Fact 20) and October 5, 2018 (Fact 17). Plaintiff

has likewise been in communication with other immigration attorneys who have received these letters *after* the implementation of the SOP. Fact 22. ICE's Office of the Principal Legal Advisory has affirmed this practice on November 8, 2018 (Fact 21) and just last month on February 4, 2019 (Fact 19).

(b)     According to its SOP (**Exh. A**), which ICE avers has supplanted and replaced the "deny-access-to-FOIA" practice (Facts 13-14), in its initial response to a FOIA request, ICE "categorically" withholds documents based on the identity of the subject of the documents (Facts 15, 25) rather than the content of the records—meaning that it refuses to provide *any* records in its initial FOIA response. This is flatly illegal under FOIA.

(c)     According to its SOP (**Exh. A**), which ICE avers it follows (Facts 13-14), if the applicant appeals, then (and only then) does ICE examine whether there is a link between the contents of the records and legitimate law enforcement activities that could be compromised by disclosing the records, which is recognized as exception to FOIA under 5 U.S.C. § 552(b)(7)(A) (hereafter, "b(7)(A)") (Fact 25). If so, ICE redacts the documents as permitted by that exception, and then provides the responsive redacted records to the requester. Facts 25, 26. These steps, undertaken only on appeal, are exactly what ICE is obligated to do in its *initial* response, which then allows the requester to appeal any of the redactions or other response in the ordinary FOIA administrative appeal process. By deferring this step to the appeal, ICE effectively eliminates any substantive appeal, which then puts the onus on the FOIA requester to file a federal lawsuit to avail itself of any appeal rights at all.

(d)     Finally, if ICE has records in its files (such as parts of the requester's A-file) for which a sister agency is the custodian (USCIS in this case), ICE refuses to refer the FOIA request

those records to the custodial agency, because of its policy "not to assist" those it deems "fugitives." Fact 27.

Despite the inconsistencies in how ICE has described its fugitive practices to this Court, there is no genuine dispute of any material fact regarding these practices. ICE's illegal practices must be declared illegal and permanently enjoined. ICE has no authority to "amend" or disregard FOIA's statutory requirements or to define classes of FOIA requesters to be denied access to FOIA, a role reserved to Congress, not an executive agency.

## I.      ICE's ILLEGAL PRACTICE OF "DENYING ACCESS TO THE FOIA PROCESS" MUST BE DECLARED ILLEGAL AND PERMANENTLY ENJOINED.

The Freedom of Information Act, 5 U.S.C. 552, provides that government agencies "shall" make records available to requesting members of the public. 5 U.S.C. 552(1), (2) and (3). The plain language of the FOIA statute is crystal clear on its face, and it grants no authority to any agency to "deny … [FOIA] requesters access to the FOIA process," under any circumstances. Facts 6, 11, 17-22. In fact, the FOIA's requirements are precisely to the contrary. They provide "a public right of access, enforceable in federal court, to agency records," *Trentadue v. Integrity Committee,* 501 F.2d 1215, 1225 (10th Cir. 2007), subject only to "nine specific exemptions allowing agencies to withhold otherwise responsive documents. *Id.* at 1226 (citing 5 U.S.C. 552(b)). "Unless the requested material falls within one of these nine statutory exemptions, FOIA requires that records and material in the possession of federal agencies be made available on demand to any member of the general public." *N.L.R.B. v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 221 (1978).

Nothing—nothing—in FOIA allows any government agency to "deny access to the FOIA process" to any requester.  Consequently, ICE's stated practice, announced repeatedly in letters to

plaintiff and other FOIA requesters (Facts 6, 11, 17-22), that "It is ICE's practice to deny fugitive alien FOIA requesters access to the FOIA process when the records requested could assist the alien in continuing to evade immigration enforcement efforts," Facts 6, 11, 17, 20, is flatly and undeniably illegal. Indeed, ICE admits in sworn testimony that denying requesters access to the FOIA process is illegal (Fact 23), and that such denial of access does not even comply with ICE's (defective) SOP. Fact 24.

ICE's contention that it has discontinued its policy of "denying access to the FOIA process" (Fact 16) is no defense at all, given that ICE continues to practice the access denial policy *to this day*. Facts 17-22. ICE must not be permitted to assure the court that it no longer follows the FOIA access denial policy to avoid declaratory and injunctive relief while it continues to practice the policy. Indeed, after affirmatively averring, under oath, that it has discontinued the "deny-access-to-FOIA" practice in its discovery responses in July of 2017 (Doc #60-1) and Facts 14, 16, ICE engaged in exactly the practice it disavowed months later, in August and October, 2018, and affirming its practice through its Office of the Principal Legal Advisor as late as February, 2019. Facts 17-22. ICE's repeated letters (Facts 17-22) citing its ongoing practice of denying access to the FOIA process is cannot be disputed, and conclusively demonstrates that ICE continues to practice the "deny-access-to-FOIA" policy, irrespective of its assertions to the contrary (Facts 14, 16). And indeed, ICE's disclaimers and denials of the existence of refusing "access to the FOIA process" (Facts 14, 16) do not, and cannot, redress the repeated explicit violation of FOIA— particularly because those disclaimers and denials (a) appear to be cynically intended to avoid judicial scrutiny, rather than good-faith efforts to discontinue illegal practices, and (b) are belied

by ICE's ongoing use of the practice it claims it has halted (Facts 17-22). This court should adjudicate ICE's actions and practices, not its unreliable assurances.

Quite simply, ICE admits that denying anyone—"fugitives" included—access to the FOIA process is illegal. Facts 23-24. But given that ICE nevertheless continues its illegal practice (Facts 17-22), ICE's admission is insufficient to curtail ICE's violation of law. In these circumstances, the court must act. It must declare ICE's "deny-access-to-FOIA" practice illegal. It must permanently enjoin ICE from engaging in the admittedly illegal policy and practice—and from denying any more FOIA requests under that illegal policy and practice nationwide in the future.

## II. ICE's SUCCESSOR SOP IS EQUALLY DEFECTIVE AND MUST ALSO BE DECLARED ILLEGAL AND PERMANENTLY ENJOINED.

### A. FOIA requires ICE to release all responsive information—including partial documents—that is not subject to a statutory FOIA exception.

FOIA's requirements, set out in the statute's plain language, are perfectly clear: "Each agency, upon any request for records which (i) reasonably describes such records, and (ii) is made in accordance with published rules setting the time, place, fees (if any), and procedures to be followed, *shall* make the records promptly available to any person." 5 U.S.C. 552(a)(3)(A) (emphasis added). Further, as the Tenth Circuit has clarified,

> In considering whether information should be disclosed, two guiding principles apply. First, FOIA is to be broadly construed in favor of disclosure. Second, its exemptions are to be narrowly circumscribed. FOIA further provides that "[a]ny reasonably, segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt." § 552(b). The federal agency resisting disclosure bears the burden of justifying withholding.

*Trentadue, supra*, 501 F.3d at 1226 (citing *Alirez v. NLRB*, 676 F.2d 423, 425 (10th Cir.1982); *Irons & Sears v. Dann*, 606 F.2d 1215, 1219 (D.C.Cir.1979).

ICE cannot carry its burden to justify the SOP, because the SOP flatly violates FOIA.

Specifically, ICE is legally required—in its *initial* response to a FOIA request—to release all responsive documents, except for information that strictly falls within an explicit FOIA exception, which may be narrowly redacted. 5 U.S.C. §552(a)(3)(4). ICE knows this. Fact 26. ICE's 30(b)(6) witness testified about records plaintiff received from ICE after filing this lawsuit, which ICE contends conforms to FOIA's requirements exactly as they are laid out in the statute. Pineiro Dep. (**Exh B**) pp.18-20 and Exh. 5 thereto. Information withheld under a specific FOIA exception is redacted, with the specific FOIA exception identified in the redaction's notation. Fact 26. As ICE's 30(b)(6) deponent averred under oath, these documents were released in conformance with FOIA's requirements, including redactions permitted under applicable exceptions. Pineiro Dep. (**Exh. B**) pp.18-20. Yet, not a single comma was withheld or redacted on the basis of Exception b(7)(A), demonstrating that the fact that ICE deems an individual a "fugitive" does not support the inference that b(7)(A) justifies categorical (or indeed, any) withholding of records—let alone an outright denial of the applicant's "access to the FOIA process." Pineiro Dep. (**Exh. B**) pp. 18-20 and Exh. 5 thereto.

The SOP violates FOIA on its face. ICE is not permitted to withhold records from any member of the public on the basis of a its own determination, using its own secret (Fact 41) definition, of the subject's "fugitive" status—nor may ICE defer its obligations to release records until a requester files an administrative appeal of an illegal initial withholding. 5 U.S.C. §552(a)(3)(A). This court must declare the SOP illegal and enjoin ICE from withholding or delaying release of records, which flatly violates the statutory requirements of FOIA.

**B. The SOP's provision for ICE to withhold documents under the "fugitive disentitlement doctrine" is illegal.**

The SOP is also facially illegal because it directs ICE to withhold otherwise responsive records on the basis of the "fugitive disentitlement doctrine." Specifically, the SOP provides that ERO (Office of Enforcement and Removal Operations) "communicates to the ICE FOIA Office an alien's fugitive status. If ERO informs ICE FOIA that an alien is classified as a fugitive for FOIA purposes, ICE FOIA may categorically withhold the fugitive law enforcement records or information pursuant to FOIA Exemption b(7)(A)… *and the fugitive disentitlement doctrine.*" SOP (**Exh. A**) at p.2 (italics added).

Generally speaking, the "fugitive disentitlement doctrine," or "FDD" *see* Pineiro Dep. (**Exh. B**) at 41:25, is a doctrine created and enforced by the *judiciary* by which a Court of Appeals will dismiss an appeal of a criminal case if the convicted defendant refuses to submit to law enforcement following a criminal conviction. *See, e.g., United States v. Hanzlicek*, 187 F.3d 1219, 1220 (10th Cir. 1999). Federal courts reason that availing oneself of the appeal of a criminal conviction represents engagement in the criminal justice system—and that one who refuses to submit to the criminal justice system by evading law enforcement as a fugitive from the law may not simultaneously demand the rights afforded, under law, to appeal a conviction. *See generally Ortega-Rodriguez v. U.S.*, 507 U.S. 234, 240-41 (1993) (outlining history of fugitive disentitlement doctrine). In any event, the doctrine requires that there must be some connection between the defendant's fugitive status and the appellate process "sufficient to make appellate sanction a reasonable response." *Id.* at 244.

Whatever the merits of the "fugitive disentitlement doctrine" for purposes of criminal appeals, the FDD has no application whatsoever to FOIA. First, the FDD is a *judicial* doctrine,

and has never been recognized as a power that an executive agency might possess or exercise. More important, the plain language of FOIA explicitly states the *sole* exceptions under which an agency might withhold otherwise responsive documents under FOIA—and the FDD is not one of them. The United States Supreme Court affirms that the enumerated FOIA exceptions are the *sole* exceptions. "These exemptions are explicitly made exclusive, and must be narrowly construed." *Milner v. Dep't of the Navy*, 562 U.S. 562, 565 (2011); *see also Trentadue, supra*, 501 F.3d at 1226. And indeed, ICE admits that the FDD is not a lawful basis for denying or withholding documents under a FOIA request. Facts 23-24. Furthermore, the term "fugitive" never appears *anywhere* in FOIA, and Congress certainly does not delegate to ICE the authority to amend its statute by creating new definitions, such as its purported definition of a "fugitive for FOIA purposes." SOP (**Exh. A**) at p.2. There is no such thing as a "fugitive for FOIA purposes," and this Court should not permit ICE to amend acts of Congress for its own purposes, particularly in an internal SOP, which is not even available to the public. Pineiro Dep. (**Exh. B**) 41:1-7.

Nevertheless, despite ICE's concession and acknowledgement that the FDD is not a valid basis for denying or withholding documents under FOIA (Fact 31), according to the 30(b)(6) witness, the SOP explicitly relies on the FDD for these precise illegal purposes—which ICE claims it follows. Fact 14.

In previous filings with this Court, ICE attempted to downplay its reliance on the illegal FDD stated in its SOP, explaining that its SOP permitted "categorical withholding" (discussed below) on the basis of the fugitive disentitlement doctrine AND the b(7)(A) exception. *See, e.g.,* Response to Revised Motion for Leave to Take Rule 30(b)(6) Deposition of ICE (Doc. #72) at pp.17-18 ("under the plain language of the SOP, there is *no instance* in which ICE may rely on the

fugitive disentitlement doctrine "versus" exemption 7(A)") (italics original); *see also* Facts 14, 16; Pineiro Declaration (Doc. #72-1) ¶5 ("As the SOP makes clear, there is never a situation in which ICE FOIA would deny a fugitive alien's FOIA request on the basis [of] the fugitive disentitlement doctrine but not FOIA Exemption 7(A)"). Relying on the use of the conjunctive "and," ICE implies that it never relies *only* on the FDD, but whenever it denies or withholds, it *also* relies on the b(7)(A) exception—the implication being that the FDD is either meaningless, or is precisely coextensive with the b(7)(A) exception, such that it is indistinguishable. In either event, ICE suggests the Court may safely assume that ICE is not relying on the FDD, but instead bases its SOP withholdings on the legitimate b(7)(A) exception.

This Court should treat ICE's assertions with significant skepticism, particularly in light of the testimony of ICE's 30(b)(6) witness. In the first place, ICE has no need of a SOP, "categorical withholding," or any special procedures if all it is doing is complying with exception b(7)(A)—let alone an SOP that explicitly references, and cites as authority, the "fugitive disentitlement doctrine." Indeed, as shown below, indiscriminate withholding of *all* records based on the identity of the subject of the records is *not* a lawful application of *any* provision of FOIA, particularly exception b(7)(A). But more to the point, ICE's witness (the same Mr. Pineiro who submitted the Declaration filed as Doc. #72-1) repeatedly indicates that ICE rests its application of the SOP on the identity of the subject of the request as a "fugitive"—an overbroad term that does not appear anywhere in FOIA—rather than consideration of whether the release of records will compromise ongoing law enforcement activities, as exception b(7)(A) provides. This is evident from Mr. Pineiro's repeated testimony about how being a "fugitive" creates a different "context," which, he claims, permits "categorical withholding," (*see, e.g.,* Pineiro Dep. [**Exh. B**] at 32:25-33:6; *see also*

*id.* 34:21-25 (if someone is a "fugitive," then "any information within that record would help that requester evade law enforcement")).

Moreover, Mr. Pineiro's explanation that a person's "fugitive" status *expands* exception b(7)(A) is incorrect, and indeed, nonsensical. Exemption b(7)(A) looks to law enforcement activity, and whether information contained in documents subject to a FOIA request would compromise those law enforcement activities. Nothing about the classification of a FOIA requester as a "fugitive" (or by any other label) has anything to do with this exception. Exemption b(7)(A) directs its gaze at law enforcement and its activities—and ICE subverts this by instead focusing on its self-defined classification of the subject of the FOIA request, and then refusing to release records on that basis. *See generally* 5 U.S.C. 552(b)(7)(A). Indeed, when confronted with records released by ICE related to Ms. Sanchez—whose denial of "access to the FOIA process" because of her "fugitive" prompted this lawsuit—Mr. Pineiro admitted that the b(7)(A) exemption was completely inapplicable to Ms. Sanchez's records, and that not so much as a single comma was redacted or withheld under that exemption. Pineiro Dep. [**Exh. B**] at 32:25-33:6; *see also id.* 34:21-25.

The SOP's "Appeal Procedures," appearing in Section III of the SOP, both double down on the illegal consideration of the subject's "fugitive" status, and also demonstrate the facial illegality of the procedures prescribed for ICE's initial response. Specifically, step 4 of the Appeal Procedure of the SOP (**Exh. A** §III) directs the Office of the Principal Legal Advisor ("OPLA") considering the appeal to "review the alien's immigration history," paying particular attention to whether the subject's "fugitive" status might be justified. As discussed above, this is illegal, because the status of the subject of a FOIA request being a "fugitive" (as determined by ICE,

according to an overbroad definition ICE itself invented) is not a lawful criterion for applying any FOIA exception. But more to the point, the SOP continues, and directs the OPLA attorney to "ensure there is a connection between the documents requested and the alien's continued evasion of law enforcement efforts." SOP (**Exh. A**) §III(6). This is exactly what Exception b(7)(A) requires as an *initial* matter, to withhold or redact any responsive documents in the first place. 5 U.S.C. § 552(b)(7)(A). But here, the SOP not only defers the required analysis unless and until the requester files an appeal, but it also specifically contemplates that no justification for withholding documents under the FDD or Exception b(7)(A) might exist *at all*. SOP (**Exh. A**) p.3 (directing the OPLA attorney how to handle an appeal where she finds no connection between the "requested documents and the alien's continued evasion of law enforcement"). Indeed, this is exactly what happened to Melody Poole and Daniel Harris—whose respective FOIA requests were initially denied because they pertained to "fugitives," only to be remanded for processing after a "complete review of the administrative record." Facts 19, 21. ICE is required to undertake a "complete review of the administrative record" in response to the *original* FOIA request—not for the first time in response to an administrative appeal.

In sum, the SOP is facially illegal because it improperly relies on a judicially-created doctrine—the fugitive disentitlement doctrine—that cannot be exercised by an executive agency, and which cannot override the plain-language requirements of FOIA in any event. If *Congress* wishes to deny FOIA access to "fugitives," it may amend FOIA to define "fugitives" and deny FOIA access to that class of people under a new exception. But *ICE* has no authority to invent new exceptions, or to co-opt a judicial doctrine to exempt itself from the obligations imposed on it under the laws of the United States. The court must declare the SOP illegal and enjoin ICE from

further withholding or delay of the release of any documents under the "fugitive disentitlement doctrine," which is impermissible under FOIA's plain language.

### C. "Categorically" withholding documents that FOIA requires ICE to release is illegal.

The SOP violates FOIA on its face by permitting ICE to "categorically" withhold *all* responsive documents where ICE deems the subject of the request a "fugitive." SOP (**Exh. A**) at Section II.

FOIA provides that that government agencies "shall" make records available to requesting members of the public, 5 U.S.C. 552(1), (2) and (3), and allows redactions or withholdings only under "nine specific exemptions allowing agencies to withhold otherwise responsive documents. *Id.* §552(b)). "Unless the requested material falls within one of these nine statutory exemptions, FOIA requires that records and material in the possession of federal agencies be made available on demand to any member of the general public." *N.L.R.B. v. Robbins Tire & Rubber Co.*, *supra,* 437 at 221. "Any reasonably, segregable portion of a record *shall* be provided to any person requesting such record after deletion of the portions which are exempt." *Trentadue, supra*, 501 F.3d at 1226 (citing FOIA § 552(b)) (emphasis added); *see also* 5 U.S.C. §552(a)(8)(A) (requiring agencies to take all reasonable steps to segregate and release nonexempt information).

The SOP directs ICE to violate these requirements. As this Court already observed, "'categorical' means 'absolute' or 'unqualified' *Categorical, Merriam-Webster* (2018)," Order (Doc. #73) at p.9. To withhold *all* documents in ICE's possession, absolutely and without qualification, whenever the ERO decides the subject of a FOIA request is a "fugitive," violates FOIA's explicit requirements. FOIA requires ICE to produce *all* responsive records, except as *narrowly* redacted under specifically-applicable exceptions. This requires an analysis of each part

of each document to see which, if any, exception might apply to any particular information, and flatly precludes any sort of "categorical," "absolute," or "unqualified" withholding of responsive records.

The Court must declare the SOP illegal and permanently enjoin "categorical" withholding of documents responsive to a FOIA request. FOIA requires narrow, tailored application of any exception, not "categorical" treatment.

### D.    ICE's *de facto* elimination of the FOIA administrative appeal process is illegal.

To make matters worse, by deferring the correct application of legitimate FOIA exceptions—including b(7)(A)—until a FOIA requester appeals the initial "categorical" withholding, ICE effectively eliminates the administrative right of appeal granted to all FOIA requesters. 5 U.S.C. §552(a)(6)(A).

A FOIA requester's appeal is intended by Congress to be a substantive right, pursuant to which a requester seeks redress of errors made by the agency in its initial FOIA response. But by directing ICE to deliberately misapply FOIA in its initial response (as discussed above), and then directing the *correct* application of FOIA on appeal, the SOP collapses the FOIA process into a single step. By deferring substantive compliance with FOIA until the appeal, this means that if the FOIA requester believes information—which was not received until her appeal—was erroneously redacted or withheld, this means the requester's sole recourse is to file a federal lawsuit—an expensive and complicated undertaking. Indeed, the court might imagine how the federal judiciary might work if, say, the District of Colorado adopted a rule to "categorically" dismiss every case involving a litigant named "Johnson," expecting the Tenth Circuit to analyze the merits of the case on appeal to determine whether dismissal was actually warranted.

ICE's policy, which deliberately violates FOIA, cannot be salvaged by a provision directing its staff to properly apply FOIA on appeal. Rather than adding a safety valve to ensure compliance with FOIA—which is the purpose of the administrative appeal FOIA requires—the policy *deprives* a FOIA requester of the appeal process, by forcing the appellate authority to make the initial response, and then leaving the requester without recourse to the statutory appeals process to challenge an incorrect response.

**E.      ICE's refusal to refer FOIA requests related to records for which ICE is not the "custodian" is illegal.**

Finally, in its zeal to prevent non-citizens access to FOIA, ICE illegally withholds documents for which ICE is not the custodian—such as the immigrant's A-file (for which USCIS is the FOIA custodian)—by refusing to transfer such documents to the custodial agency when ICE determines the record relates to a "fugitive." Fact 27. This is flatly illegal. Agencies who hold records, even those generated by sister agencies—or for which a sister agency is the official "custodian"—may not simple pretend they have no records subject to a FOIA request. Rather, as one court that considered a similar case ordered,

> An agency "cannot simply refuse to act on the ground that the documents originated elsewhere," however, the "agency may acquit itself [of a FOIA request] through a referral, provided the referral does not lead to improper withholding under the *McGehee* test." *Sussman v. United States Marshals Serv.,* 494 F.3d 1106, 1118 (D.C.Cir.2007) (citing *McGehee v. CIA,* 697 F.2d 1095, 1110 (D.C.Cir.1983)).

*Gahagan v. U.S. Citizenship & Immigration Servs.*, 111 F. Supp. 3d 754, 762 (E.D. La. 2015).

The "*McGehee* test" referred to above simply states that an agency *may* satisfy its FOIA obligations by "referring" responsive documents to a sister agency *if and only if* the referral does not substantially increase the burden on the FOIA requester, including by introducing improper

delay into the FOIA process. *Gahagan*, 111 F.Supp.3d at 762; *see also McGehee*, 697 F.2d at 1110.

There is *no* provision by which ICE may comply by FOIA by *refusing* to "refer" records responsive to a FOIA request originating from a sister agency. ICE must either release the records itself—which it would have to do, since there is no conceivable basis for withholding non-law-enforcement-related records (such as A-files) under b(7)(A), nor under the fugitive disentitlement doctrine, which ICE admits is not a lawful exemption in any event. Fact 23.

This Court must declare illegal ICE's stated practice of refusing to release *or* refer records originating from sister agencies on the grounds that the records relate to a "fugitive," and permanently enjoin ICE from continuing this flatly illegal practice.

## CONCLUSION

For the foregoing reasons, the Court must declare illegal ICE's "deny-access-to-FOIA" policy—which continues to this day despite ICE's insistence it is no longer in use—as well as its SOP, which is facially illegal in many respects. Plaintiff respectfully requests the entry of an order (a) declaring the original "deny-access-to-FOIA" practice illegal, (b) declaring the SOP illegal; (c) declaring the practice of "categorical withholding" of FOIA documents illegal, irrespective of whether undertaken under the SOP or otherwise, (d) enjoining ICE from denying any applicant access to the FOIA process, (e) enjoining defendant ICE from "categorical withholding" of records in response to FOIA requests from or on behalf of those it deems fugitives, and (f) enjoining ICE from refusing to transfer FOIA requests on behalf of those it deems "fugitives" to sister agencies who may have responsive documents.

//

DATED:  March 26, 2019                    Respectfully Submitted,

DANIEL J. CULHANE LLC

*s/* Daniel J. Culhane

_____
Daniel J. Culhane
1600 Broadway, Suite 1600
Denver, CO 80202
Telephone: 303.945.2070
Facsimile: 720.420.5998
Dan@CulhaneLaw.com
*AS COOPERATING ATTORNEY FOR
THE ACLU FOUNDATION OF
COLORADO*

Mark Silverstein
Sara R. Neel

AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF COLORADO
303 E. 17th Avenue, Suite 350
Denver, CO 80203
Telephone: 720.402.3107
Facsimile: 303.777.1773
msilverstein@aclu-co.org
sneel@aclu-co.org

**Attorneys for Plaintiff**

## CERTIFICATE OF SERVICE

I certify that on March 26, 2019, I served a copy of the foregoing Motion for Partial Summary Judgment, together with all exhibits and attachments thereto on defendants' counsel of record via electronic service.


_____
          s/ Daniel J. Culhane