# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 16-cv-02137-WJM-KLM

JENNIFER M. SMITH,

      Plaintiff,

v.

U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT,

      Defendant.

---

## OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [85]

---

      Plaintiff originally challenged ICE's practice to "deny fugitive alien FOIA requesters access to the FOIA process when the records requested could assist the alien in continuing to evade immigration enforcement efforts."   In July 2017, ICE's Office of the Principal Legal Advisor ("OPLA") adopted and issued a Standard Operating Procedure ("SOP") governing FOIA requests made by, or on behalf of, fugitive aliens, to replace the challenged practice.   The SOP applies only to FOIA requests made directly to ICE, for law enforcement records in the databases of ICE's Office of Enforcement and Removal Operations ("ERO"), the subjects of which requests ERO determines are fugitives.   For such requests, the SOP provides that "ICE FOIA may categorically withhold the fugitive's law enforcement records or information pursuant to FOIA Exemption (b)(7)(A), 5 U.S.C. § 552(b)(7)(A), which permits the withholding of records or information compiled for law enforcement purposes to the extent that production of law enforcement records or information could reasonably be expected to interfere with law

enforcement proceedings, and the fugitive disentitlement doctrine"; in the response letter, ICE is supposed to reference both Exemption 7(A) and the alien's fugitive status.

Plaintiff has moved for summary judgment and asks the Court to invalidate both the practice and the SOP and to permanently enjoin their application.   ECF No. 85.

Before turning to the merits of Plaintiff's claims, Defendant must address three issues.

First, Plaintiff contends that ICE continues to employ the practice and that, by maintaining that the practice has been discontinued and replaced by the SOP, Defendant has been making misrepresentations to Plaintiff and the Court throughout this litigation.   ECF No. 85 *passim*.   Plaintiff's arguments are premised on responses from ICE to two FOIA requests made by non-parties.   And the response letters from the ICE FOIA office *do* purport to invoke the "practice," using the same language that was used in the letter denying Plaintiff's original FOIA request.   But Plaintiff is mistaken that those letters mean that the practice does, in fact, continue, or that ICE has been "misleading" Plaintiff and the Court for nearly two years.

As explained below and in the attached declarations, these letters are the result not of malfeasance, but an administrative error in failing to update a template letter in the FOIAXpress system after the SOP was adopted.   Shortly after OPLA issued the SOP, ICE's FOIA Officer, Catrina Pavlik-Keenan, emailed a copy of the SOP to ICE FOIA personnel with the instructions to "FOLLOW IMMEDIATELY."   Pavlik-Keenan Decl. ¶ 11 & Ex. K.   Because the letters on which Plaintiff relies her summary judgment motion made it appear that this instruction may not have been followed, and that the practice may have continued to be applied, ICE FOIA immediately took steps to determine how these letters came to be issued.   ICE FOIA found no

indication that ICE FOIA personnel ignored the FOIA Officer's directive to apply the SOP, willfully or inadvertently, in those two or any other instances.   *Id.* ¶ 15.

Instead, ICE discovered that notwithstanding the adoption of the SOP, and the instruction to follow it immediately, ICE FOIA failed to update a letter template for "fugitive" responses in the FOIAXpress system after the SOP was adopted.   *Id.* ¶¶ 15-16; Pineiro Decl. ¶ 9.   As a result of this (admitted) error, when ICE FOIA responded to a FOIA request submitted on behalf of an individual determined by ERO to be a fugitive, ICE generated and sent the wrong letter in response to that request, which continued (erroneously) to cite the "practice" as grounds for withholding records.   Pavlik-Keenan Decl. ¶¶ 15-16; Pineiro Decl. ¶¶ 8-9.[1]   The failure to upload a new letter template was a mistake, and ICE has now remedied this mistake by uploading the new letter template contemplated by the SOP to FOIAXpress and deleting the old letter template from FOIAXpress.   Pavlik-Keenan Decl. ¶ 18 & Ex. L; Pineiro Decl. ¶ 9.

The letters cited by Plaintiff are evidence of ICE's admitted mistake in failing to upload a new letter template to FOIAXpress after the SOP was adopted.   But the letters do not "conclusively demonstrate" that ICE continues to apply the practice.   Nor are they part of a "cynical[] . . . [attempt] to avoid judicial scrutiny," evidence that ICE has acted in bad faith, ECF No. 85 at 19, or proof that ICE has made "misleading statements to the Court and to plaintiff, and . . . acted inconsistently with its representations to the Court," *id.* at 15.

The speculation on which Plaintiff's summary judgment motion is predicated—about the cause of, and ICE's motivation for, sending these letters—is mistaken.   Plaintiff did not raise

---

[1] ICE FOIA analysts use letter templates in FOIAXpress to auto-generate responses to FOIA requests.   Pavlik-Keenan Decl. ¶ 8.   The templates are one tool that ICE FOIA uses to help its analysts manage their workloads of processing thousands of requests per year.   *Id.*

the letters, or her claims of misconduct, before the summary judgment deadline.   Instead, two

minutes after Defendant filed its motion for summary judgment, Plaintiff's counsel emailed the

letters as part of "Plaintiff's Supplemental Disclosures," made "pursuant to Rule[] 26(e)."[2]

Plaintiff did not ask about the letters during the Rule 30(b)(6) deposition that she sought and

received leave from the Court to conduct.   (Both ICE FOIA response letters pre-date the

deposition.)   Plaintiff did not seek leave from the Court to conduct additional discovery into the

letters, her contention that they "conclusively demonstrate[]" that the practice continues, or her

claim that they show that Defendant acted to mislead the Court.   Nor did Plaintiff otherwise

raise the letters, or her concerns based thereupon that Defendant "has made inconsistent and

misleading statements to the Court and to plaintiff," before the summary judgment deadline.

ICE's failure to upload the correct letter template was admittedly a mistake, but it does not show

that the practice continues, or that ICE has been "misleading" Plaintiff and the Court.

Second, in its motion for summary judgment, ICE stated that the SOP had only been

applied to withhold records from fugitive FOIA requesters eight times since July 21, 2017.

ECF No. 84 at 1, 4 & ¶ 33; ECF No. 84-11 ¶¶ 12-13.   This was incorrect.   Pavlik-Keenan Decl.

¶ 19; Pineiro Decl. ¶¶ 11-12.   Based on its inquiry prompted by the letters attached to

Plaintiff's supplemental disclosures, ICE currently believes that the SOP was actually applied to

withhold records in response to direct requests to ICE from fugitive alien FOIA requesters 333

times between July 21, 2017 and April 4, 2019.   Pavlik-Keenan Decl. ¶ 22.   Defendant

sincerely apologizes for this error.

---

[2] True and correct copies of the cover email transmitting Plaintiff's Supplemental Disclosures,
and Plaintiff's Supplemental Disclosures (excluding the letters, which were attached to
Plaintiff's motion), are attached hereto as Exhibit M.

Defendant's erroneous belief that the SOP had only been applied eight times was based on the Department of Homeland Security ("DHS"), 2018 FOIA Report to the Attorney General of the United States and the Director of the Office of Government Information Services,[3] and a coding error in FOIAXpress.   Pavlik-Keenan Decl. ¶¶ 20-21; Pineiro Decl. ¶¶ 13-14.   The DHS Report reflects that "fugitive disentitlement" was cited by ICE to deny FOIA requests eight times in fiscal year 2018.   Pineiro Decl. ¶ 13; Pavlik-Keenan Decl. ¶ 20; DHS FOIA Report at 7.   To determine whether the SOP had been applied (and the subject of a request's fugitive status invoked as a basis for withholding records) beyond those eight instances, ICE queried FOIAXpress for any additional FOIA requests with the final disposition code, "Other – Fugitive Status."   Pavlik-Keenan Decl. ¶ 20; Pineiro Decl. ¶ 13.   (ICE FOIA is required to select final action disposition codes in FOIAXpress for each FOIA request.   Pavlik-Keenan Decl. ¶ 9.) Those searches did not yield any results, leading ICE's Deputy FOIA Officer to conclude that the SOP had only been applied eight times.   Pineiro Decl. ¶ 13; Pavlik-Keenan Decl. ¶ 20.

Unbeknownst to ICE's Deputy FOIA Officer, a technical problem that occurred when DHS upgraded to a new version of FOIAXpress, which had disabled the "Other – Fugitive Status" code and left ICE FOIA analysts unable to select that code, had not been fixed.   Pineiro Decl. ¶ 14; Pavlik-Keenan Decl. ¶ 21.   Accordingly, when ICE FOIA withheld records in response to a FOIA request submitted by or on behalf of a fugitive alien, those instances were not accurately coded in FOIAXpress using the "Other – Fugitive Status" designation for tracking

---

[3] DHS, 2018 Freedom of Information Act Report to the Attorney General of the United States and the Director of the Office of Government Information Services March 2019 (Mar. 2019), *available at* https://www.dhs.gov/foia-annual-reports (last visited Apr. 17, 2019).

purposes, were not reflected in the data used for to the DHS FOIA Report, and did not show up in queries for that disposition code.   Pavlik-Keenan Decl. ¶ 21; Pineiro Decl. ¶¶ 13-14.

Once this problem was discovered (the code selection issue has since been fixed), ICE FOIA took several steps to determine how many times it had actually invoked an alien's fugitive status in withholding records in response to a FOIA request, including running searches in FOIAXpress and manually reviewing records.   Pavlik-Keenan Decl. ¶¶ 21-22.   As a result of those inquiries, ICE FOIA believes "fugitive" letters that reflect the withholding of records under the SOP were sent in response to 333 of the 111,793 FOIA requests processed by ICE between July 21, 2017, and April 4, 2019.   *Id.* ¶ 22.   Again, Defendant apologizes for this error.

Third, in trying to determine the frequency of the use of the erroneous letter template, ICE FOIA discovered one occasion on which ICE FOIA withheld records in response to a FOIA request that was referred to ICE from USCIS and sent the erroneous letter template referencing the practice and invoking an alien's fugitive status as the basis for withholding.   *Id.* ¶ 23.   This was a mistake, as fugitive checks are not supposed to be conducted on referrals from USCIS. *Id.* & Ex. K; ECF No. 84-5 at ICE-1.   As explained in Ms. Pavlik-Keenan's declaration, this error appears to have been the result of a timing issue:   the underlying request, from September 2016, was referred to ICE on July 25, 2017, shortly after the SOP was adopted, but before the FOIA Officer informed her staff to immediately follow the SOP.   Pavlik-Keenan ¶ 23.   The error on this FOIA request has been corrected, the request has been re-processed, a corrective letter (with new time for appeal) issued, and responsive records released.   *Id.*[4]

---

[4] ICE FOIA also discovered three other instances in which "fugitive" response letters were sent to requesters in response to requests that originated with USCIS and were referred to ICE, but no records were withheld from those requests.   *Id.* ¶ 24.   In other words, those three instances are

Turning to the merits:   The SOP has never been applied to any FOIA request submitted by Plaintiff, so Plaintiff has suffered no past harm from the SOP.   Nor has Plaintiff presented any evidence that she faces an imminent risk of harm by having a FOIA request she submits in the future denied under the SOP.   She therefore lacks standing to obtain prospective relief invalidating and permanently enjoining the SOP.   *Infra* Part I; ECF No. 84 at 14-16.

Nor has Plaintiff shown that the SOP is facially invalid.   Plaintiff argues that "categorical" withholding under FOIA is "illegal," but the Supreme Court approved categorical withholding of law enforcement records under FOIA Exemption 7(A)—withholding the category of documents that might reasonably be expected to interfere with law enforcement proceedings—more than 40 years ago.   *Infra* Part I.B.1.   Plaintiff takes issue with the inclusion of the phrase "fugitive disentitlement doctrine" in the SOP, but she has not shown that the SOP always results in the wrongful withholding of records under FOIA Exemption 7(A), whatever else ICE may choose to call it.   *Infra* Part I.B.2.   Plaintiff's remaining challenges to the SOP are not ripe and fail on the merits.   *Infra* Part I.B.3-4.

As to the claims asking the Court to invalidate the practice and enter a permanent injunction prohibiting its application, Plaintiff continues to lack standing for this relief.   In ruling on Defendant's motion to dismiss, the Court found it "concerning" that Plaintiff "'regularly' submits FOIA requests but has alleged only three instances of denial based on the Fugitive Practice."   ECF No. 45 at 11.   Now, after two more years of "regularly" submitting FOIA requests, Plaintiff is down to two instances, not three; but only one of those was a request that she herself submitted that was administratively exhausted before the operative complaint

---

attributable to the selection of the wrong letter template, not a misapplication of the SOP.   *Id.*

filed.    But whether Plaintiff's case for standing is based on one past request, or two (or three),

past harm is not enough.    It was Plaintiff's burden to come forward with evidence showing a

substantial risk of imminent harm from the practice.    She did not, and her claims to invalidate

and enjoin the practice should be dismissed for lack of jurisdiction.    *Infra* Part II.A.

On the merits, Plaintiff is mistaken that the letter she received from ICE on September 3,

2015, demonstrates that, under the prior practice, ICE denied fugitives access to the FOIA

process entirely.    Plaintiff asked about the "deny . . . access to the FOIA process" language on

which she relies in making this argument during ICE's deposition.    In response, ICE stated that

this portion of the letter was improperly worded, but pointed out that the letter itself reflected

access to "the FOIA process."    Plaintiff has not shown that the discontinued practice resulted in

the wrongful withholding of records under FOIA whenever it was applied.    *Infra* Part II.B.

The Court should deny Plaintiff's motion for summary judgment and enter judgment in

favor of Defendant on Plaintiff's putative pattern and practice claims.

### RESPONSE TO MOVANT'S STATEMENT OF MATERIAL FACTS[5]

1.        Admit.

2.        The material cited to support these allegations—about Plaintiff's "aware[ness] of

policy changes implemented by the Trump Administration," ICE's "significant[] and

aggressive[] increase" in enforcement efforts, and the "chilling effect on non-citizens"—cannot

be presented in a form that would be admissible at trial.    Fed. R. Civ. P. 56(c)(2); WJM Revised

---

[5] Most of Plaintiff's statement of material facts is set forth in multi-sentence paragraphs.    *But see* WJM Revised Practice Standards § III.E.3 (requiring facts to be set forth "in simple, declarative sentences, all of which are separately numbered and paragraphed").    Where Defendant is unable to admit or deny multi-sentence paragraphs in their entirety, Defendant will respond on a sentence-by-sentence or group-of-sentences basis.

Practice Standards § III.E.4(c).   These allegations are not relevant or material to the resolution of this case, in which Plaintiff seeks to prove that the SOP and practice are facially invalid and asks the Court to invalidate and permanently enjoin them.   Fed. R. Ev. 401, 402; *McFadden v. Meeker Housing Auth.*, No. 16-cv-2304-WJM-GPG, 2019 WL 652598, at *1 (D. Colo. Feb. 15, 2019) (explaining that facts are "material" if they are "essential to proper disposition of the claim" "under the relevant substantive law"); Fed. R. Civ. P. 56(a) (referring to "material" facts); WJM Revised Practice Standards § III.E.3 (same).   Plaintiff is not competent to testify about government policy, ICE's enforcement efforts (including whether they "significantly and aggressively increased"), or the alleged "chilling effect on non-citizens," and any testimony from Plaintiff on these topics would be impermissible hearsay.   Fed. R. Ev. 602, 801, 802.   As to the substance of the allegations in the first and third sentences, Defendant lacks knowledge or information sufficient to form a belief about the truth of Plaintiff's awareness of policy changes or chilling effects on non-citizens.   Plaintiff has not been deposed in this FOIA case, in which only limited discovery permitted by the Court was conducted; Plaintiff did not seek leave to inquire about administration policy changes or ICE enforcement efforts; and no chilled non-citizens have been offered or deposed as witnesses; a deposition of the Plaintiff would be required to determine the policies to which this allegation is directed and the level of Plaintiff's awareness thereof, and an identification and deposition of non-citizens who have been chilled would be required to determine any chilling they experienced and the cause(s) thereof.   *See* WJM Revised Practice Standards § III.E.4(d).   *However*, because these allegations are irrelevant and immaterial to the resolution of this FOIA case, and cannot be presented in admissible form, Defendant is not seeking any additional discovery concerning these allegations.

Defendant denies the allegations in the second sentence.    Statistics about ICE enforcement on a year-by-year basis, including relative levels of enforcement and criminal violations associated with various enforcement practices, are publicly available on ICE's website and do not support Plaintiff's sweeping characterizations.[6]

3.    Admit.

4.    Admit.

5.    Deny.    USCIS identified 52 pages of responsive records, which it released to Plaintiff subject to applicable FOIA exemptions; in addition, USCIS located potentially responsive records that may have originated with ICE, which USCIS referred to ICE FOIA, with a copy of Plaintiff's request, for consideration and a response.    ECF No. 84-2.

6.    Admit.    *See* ECF No. 84 at 7 ¶ 9 and ECF No. 84-3 at 1 (addressing the letter excerpted by Plaintiff).

7.    Admit.

8.    Admit.

9.    Admit.

10.    These allegations cannot be presented in a form that would be admissible at trial, Fed. R. Civ. P. 56(c)(2); WJM Revised Practice Standards § III.E.4(c), as they are neither relevant nor material to the resolution of Plaintiff's facial challenge, Fed. R. Ev. 401, 402; Fed. R. Civ. P. 56(a).    First clause: deny; the "government" did not adjudicate Plaintiff's FOIA appeal, ICE did, and the letter cited by Plaintiff "explain[s]" that ICE is responding to the

---

[6] *Available via* https://www.ice.gov/features/ERO-2018 (last visited May 2, 2019).    These statistics do not cover the relative "aggressive[ness]" of enforcement efforts across administrations.

referred portion of Plaintiff's original FOIA request and producing records subject to certain withholdings.   Second clause: admit, except for "the government," which is denied as above.

11.   Admit.   *See* ECF No. 19-2 (containing the letter to "Ms. Brown").

12.   These allegations cannot be presented in a form that would be admissible at trial, Fed. R. Civ. P. 56(c)(2); WJM Revised Practice Standards § III.E.4(c), as the procedural history is not a material fact relevant to the resolution of Plaintiff's claims, Fed. R. Ev. 401, 402.   First sentence:   Admit that ICE moved to dismiss and that mootness was one of the bases for dismissal.   Deny that mootness was the only basis for dismissal "claim[ed]"; ICE also moved to dismiss for lack of standing and the absence of a live case or controversy; in addition, USCIS moved to dismiss Plaintiff's claims against it for lack of standing and failure to state a claim. ECF No. 15.   Second sentence: Deny.   Plaintiff amended her complaint to withdraw her claims against USCIS, drop her claim for release of records, and add additional allegations concerning standing to seek pattern and practice relief.   ECF No. 31 & 31-1.   Third sentence: Admit that ICE moved to dismiss on the grounds that plaintiff lacks standing.   Deny Plaintiff's characterization of ICE's argument as based on Plaintiff's lack of standing "to challenge ICE's illegal policy."   *See* ECF No. 35 (arguing that Plaintiff lacks standing to seek prospective relief because she cannot demonstrate an ongoing or certainly impending future injury redressable by the requested relief).

13.   Admit.

14.   Admit.

15.   First sentence: deny.   The SOP does not "provide[] for 'categorical withholding' of records related to a 'fugitive' alien."   The SOP provides that, for FOIA requests submitted

directly to ICE for ERO law enforcement records, the subject of which is identified by ERO to be a fugitive as defined in the SOP, "ICE FOIA may categorically withhold the fugitive's law enforcement records or information pursuant to FOIA Exemption (b)(7)(A), . . . which permits the withholding of records or information compiled for law enforcement purposes to the extent that production of law enforcement records or information could reasonably be expected to interfere with law enforcement proceedings, and the fugitive disentitlement doctrine."   ECF No. 84-7 at ICE-2; Pavlik-Keenan Decl. ¶¶ 12-13.   Remaining sentences: admit.

16.     Admit.

17.     First two sentences: deny.   ICE no longer applies and does not continue the practice.   Pavlik-Keenan Decl. ¶¶ 11, 15-16; Pineiro Decl. ¶¶ 4-9; ECF No. 84-6 ¶ 4; ECF No. 84-4 at 2 & n.1; *see also supra* at 2-3.   The October 5, 2018, letter sent to Mr. Harris was not an application of the practice, but the result of ICE FOIA's failure to update the letter template for responses sent to fugitive alien FOIA requesters in FOIAXpress.   Pavlik-Keenan Decl. ¶¶ 11-16; Pineiro Decl. ¶¶ 4-9; *see also supra* at 2-3.   Third and fourth sentences: admit.

18.     Deny.   The statement in the letter template concerning not processing the FOIA request is improperly worded.   ECF No. 84-5 (Exhibit E) at 49:7-8, 50:3-8.   The letter was generated as result of ICE FOIA's failure to upload a new letter template, *supra* at 2-3 & ¶ 17, and in any event reflects that FOIA requests of persons who received the letter were "process[ed]."   *Id.* at 49:19-50:1 (They "were afforded access to the FOIA because we received a FOIA request, we performed intake on the FOIA request, we sent a search for records to the program office, the program office informed us that the individual was a fugitive, and we sent a

letter informing the individual in response to their FOIA request that they were a fugitive."); *see also* ECF No. 85-6 at 1 (describing the "practice").

19.     Admit.   *See* ECF No. 85-7 (complete copy of the selectively-quoted-from letter).

20.     Admit.   *Supra* at 2-3 & ¶ 17 (discussing erroneous letter template).

21.     Deny.     The letter does not indicate a refusal to process the request, *supra* ¶ 18, nor does it "restate[] ICE's 'deny-access-to-FOIA' practice," but rather repeats what the ICE FOIA letter indicated and advises the requester that the request is being remanded to the ICE FOIA office "with instructions to release records pertaining to your client, subject to any applicable exemptions under the FOIA," ECF No. 85-10.

22.     The material cited to support these allegations—about what other immigration attorneys have "indicated," what "[m]any" other lawyers told Plaintiff, and Plaintiff's "understand[ing]" of what "some of the lawyers may be concerned about"—cannot be presented in a form that would be admissible at trial.    Fed. R. Civ. P. 56(c)(2); WJM Revised Practice Standards § III.E.4(c).    These allegations are not relevant or material to this putative FOIA pattern and practice case.    Fed. R. Ev. 401, 402; Fed. R. Civ. P. 56(a).    Other, many, or some other immigration lawyers are not parties to, or witnesses in, this case; Plaintiff is not competent to testify about their experiences, actions, or "concern[s]," and any testimony Plaintiff would attempt to offer on these topics would be impermissible hearsay (or hearsay within hearsay in the case of testimony about the contents of correspondence received by those lawyers).    Fed. R. Ev. 602, 801, 802.    As to the substance of the allegations, Defendant lacks knowledge or information sufficient to form a belief about the truth.    Neither Plaintiff, nor "other immigration attorneys" with whom Plaintiff has communicated, have been deposed in this FOIA case; a

deposition of Plaintiff and identification and depositions of other immigration attorneys with whom Plaintiff has communicated would be required to determine the truth of these allegations. *See* WJM Revised Practice Standards § III.E.4(d).   *However*, because these allegations are irrelevant and immaterial to the resolution of this case, and cannot otherwise be presented in admissible form, Defendant is not seeking any additional discovery.

23.     The material cited to support these allegations—an opinion about "provision[s] of law"—cannot be presented in a form that would be admissible at trial.   Fed. R. Civ. P. 56(c)(2); WJM Revised Practice Standards § III.E.4(c).   The allegation states an opinion on what the law is, which is for the Court to decide, *infra* ¶ 31 (collecting authority), and the testimony was beyond the scope of the topics on which the Court granted Plaintiff leave to conduct a Rule 30(b)(6) deposition, *see* ECF No. 73 10-11.   As to the substance of the allegations, Defendants admit that ICE so-testified, but deny that this accurately reflects the law.   *See* 5 U.S.C. § 552(c)(1)-(3) (providing statutory exclusions permitting an agency, in certain circumstances, to "treat the records as not subject to the requirements of [FOIA]").

24.     Admit.

25.     Deny.   The SOP applies only to requests by fugitives for records within the ERO's law enforcement databases, and "categorical" withholding refers to the withholding of the category of law enforcement records regarding the fugitive.   Pavlik-Keenan Decl. ¶¶ 12-13; ECF No. 84-7 at ICE-1-2; ECF No. 84-5 at 33:12-34:25, 69:13-17 (explaining categorical withholding).

26.     The material cited to support these allegations cannot be presented in a form that would be admissible at trial.   Fed. R. Civ. P. 56(c)(2); WJM Revised Practice Standards

§ III.E.4(c).     The allegations are neither relevant nor material to the Court's determination of whether the SOP is facially invalid.     Fed. R. Ev. 401, 402.     As to the substance: Admit.

27.     Deny.     When ICE receives a FOIA request for records of which it is not the custodian, it will refer (or "transfer") the request to the custodial agency, even if the requester is a fugitive.     Pavlik-Keenan Decl. ¶ 25 & Ex. N (examples of FOIA responses to fugitives withholding ICE records and referring to other components for release of their records).     With respect to A-Files, ICE is not the custodian of a non-citizen's A-File, and if it receives a request for an A-File, it "transfer[s] that request to the USCIS because they're the custodian of the A-file."     ECF No. 84-5 at 11:1-7; *see also id.* at 14:20-22 ("[W]e would transfer that [request] to USCIS for processing because we're not the custodian of the A-file.").     A non-citizen's A-File of which USCIS is the custodian and law enforcement records maintained by ERO are not the same records.     *See id.* at 14:2-14 (explaining that ICE's records and A-files are not mirror images of one another); *id.* at 55:13-20 ("So now we're talking about two totally different sets of records. . . .     The records that are residing in the A-file at USCIS are not the same records that ICE has."); *id.* at 14:9-12 ("So A-file records have a more historical view on the individual's immigration status, et cetera, but they wouldn't have anything that's currently operational which would reside at ICE."); *see also id.* at 65:20-67:1 (further explaining that the records are different).     ICE will decline to refer records to sister agencies only in response to a direct request to ICE for records in its law enforcement databases.     *See id.* at 54:16-18 (explaining that only "records that are residing at ICE which are current records, active records, live records, they would be subject to that doctrine"); *id.* at 35:8-16 (Q. Okay. What if there are additional records *in ICE's file **like the materials** that would be in the A-File*, what would you do with those?     A.

So, again, it's the categorical denial of the records. . . . If they are compiled for law enforcement

purposes, it would also be included in the 7(A) exclusion or exemption.") (emphasis added).

28.     The material cited to support the allegations in the first sentence—about

Plaintiff's available means to represent her clients in "many" situations—cannot be presented in

a form that would be admissible at trial.    Fed. R. Civ. P. 56(c)(2); WJM Revised Practice

Standards § III.E.4(c).    These allegations are neither relevant nor material to the Court's

determination of whether ICE's practice and SOP are facially invalid.    Fed. R. Ev. 401, 402;

Fed. R. Civ. P. 56(a).    As to the substance of the allegations:    Deny.    *See* Smith Immigration,

*Areas of Practice*, available at http://glenwoodimmigration.com/areas-of-practice/ (listing 7 areas

of practice, of which Freedom of Information Act Requests is one) (last visited Apr. 30, 2019).

Second sentence:    admit that only one FOIA request is at issue in this case; admit that Plaintiff,

or others at her law firm, made approximately 63 FOIA requests to ICE in the years between

April 6, 2012, and March 21, 2019.    ECF No. 84-10; ECF No. 84-11 ¶¶ 8-9.

29.     First sentence: admit, except for Plaintiff's characterization of "numerous," which

is not a fact; the actual number of requests she has submitted would be a fact.    *See* ECF No. 84-

10; ECF No. 84-11 ¶¶ 8-9.    Second sentence:    deny.    The SOP defines "fugitive," ECF No.

84-7 at 2, and applies only to direct requests to ICE for records in the ERO's law enforcement

databases the subjects of which are determined by ERO to be fugitives as defined, *id.* at 1-2;

Pavlik-Keenan Decl. ¶¶ 11-13; ECF No. 84-6 ¶ 5.    The prior practice has been discontinued.

Pavlik-Keenan Decl. ¶ 15; Pineiro Decl. ¶¶ 4-9; ECF No. 84-6 ¶ 4; ECF No. 84-11 ¶ 6.

30.     First sentence: admit that plaintiff had 11 FOIA requests pending with ICE at the

time this case was filed; otherwise, deny.    No FOIA request submitted by Plaintiff that was

pending at the time she initiated this lawsuit was denied based on the fugitive status of the subject of a request or were "susceptible" to being denied on this basis.   ECF No. 84-11 ¶ 7. As to the practice, the response template states that only certain requests were susceptible to denial under the challenged practice, where the requested records could assist the alien in continuing to evade immigration enforcement efforts.   ECF No. 84-3.   As to the SOP, only FOIA requests submitted directly to ICE for records in ERO's law enforcement databases, the subjects of which are determined by ERO to be fugitives as defined by the SOP, are susceptible to denial under the SOP.   *Supra* ¶ 29 (containing a brief factual explanation and specific references to supporting evidence).   Second sentence: Admit that ICE initially denied a second FOIA request under the challenged practice on this date.   Deny that the FOIA request was made by Plaintiff and further deny that this initial response, which was reversed on appeal within the statutory time period for administrative appeals, was the agency's final response, or resulted in the withholding of any records.   ECF No. 19-2; ECF No. 35 at 4-5 & nn.2, 3; ECF No. 41 at 8 n.6.   Deny that no explanation was given, *supra* ¶ 10 (providing factual explanation and specific reference to supporting evidence); admit that the release of the requested records did moot Plaintiff's claim seeking the release of those records, *supra* ¶ 12 (providing factual explanation and specific references to supporting evidence).

31.   Deny.   *Supra* ¶¶ 29-30 (providing factual explanation and specific references to supporting evidence).   In addition, the material cited to support the allegations in the first sentence—Plaintiff's opinion about a risk of imminent harm—cannot be presented in a form that would be admissible at trial.   Fed. R. Civ. P. 56(c)(2); WJM Revised Practice Standards § III.E.4(c).   Plaintiff's standing is a legal question for resolution by the Court.   *Cf., e.g.,*

*Fidelity National Title Insurance Company v. Woody Creek Ventures, LLC*, 830 F.3d 1209, 1214 n.7 (10th Cir. 2016) (affirming decision to disregard a statement of opinion on an ultimate legal issue to be determined by the court in ruling on summary judgment); *Wildearth Guardians v. Public Service Co. of Colo.*, 853 F. Supp. 2d 1086, 1090 (D. Colo. 2012) (holding that expert opinion on the law was inadmissible, reasoning that "interpretation of the law is a matter for the Court"); *Hoeck v. Miklich*, No. 13-cv-00206-PAB-KLM, 2015 WL 13730079, at *1 n.4 (D. Colo. Oct. 26, 2015) (noting that the Court "disregards all statements consisting of legal conclusions" in evaluating motions for summary judgment") (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)), *recommendation adopted*, 2016 WL 806749 (D. Colo. Mar. 1, 2016).

32.     The material cited to support these allegations—that Plaintiff has suffered "actual harm" and been "deprive[ed] [of] her rights protected by and under FOIA"—cannot be presented in a form that would be admissible at trial.    Fed. R. Civ. P. 56(c)(2); WJM Revised Practice Standards § III.E.4(c).    These are legal questions for the Court, and Plaintiff's opinions on these issues are inadmissible.    *Supra* ¶ 31 (collecting authority).    As to the substance of the allegations:   Deny.   Plaintiff has not suffered any actual harm, as the records she requested have been released, ECF No. 15 at 1 & 15-4, and she was not the requester for the second request, did not complete the administrative appeals process before filing the operative complaint, did not seek the release of those records in this (or any other) lawsuit, and the requested records were released, ECF No. 35 at 4-5 & nn. 2-3.

33.     The material cited to support these allegations—that Plaintiff is "subject to the risk of imminent harm"—cannot be presented in a form that would be admissible at trial.    Fed. R. Civ. P. 56(c)(2); WJM Revised Practice Standards § III.E.4(c).    Plaintiff's standing is a legal

question for the Court, and Plaintiff's opinion on this issue is inadmissible.   *Supra* ¶ 31

(collecting authority).   As to the substance of the allegations: Deny.   The practice has been

discontinued, *supra* ¶ 17 (factual explanation and specific reference to supporting evidence), and

the SOP has never been applied to Plaintiff, ECF No. 84-11 ¶ 10; Pineiro Decl. ¶ 17.

     34.     The material cited to support these allegations—about Plaintiff's clients'

"understanding," or "lack" of, "critical information related to their immigration status," and

Plaintiff's inability "to adequately understand the issues in her client's cases and represent her

clients under applicable law" without obtaining ICE documents through a FOIA request —

cannot be presented in a form that would be admissible at trial.   Fed. R. Civ. P. 56(c)(2); WJM

Revised Practice Standards § III.E.4(c).   Plaintiffs' clients are not parties or witnesses to this

FOIA case, their understanding of information is not relevant to the facial validity of ICE's

practice and SOP, and any testimony Plaintiff might attempt to offer concerning her unidentified

clients' information "and/or understanding" would be impermissible hearsay.   Fed. R. Ev. 401,

402, 802.   Plaintiff's inability to adequately understand issues and represent her clients without

obtaining ICE documents through a FOIA request is similarly irrelevant and immaterial;

Plaintiff's clients' case files are not part of the summary judgment record before the Court (nor

has Plaintiff indicated that her clients have agreed to waive the attorney-client privilege), and no

expert testimony concerning adequate representation has been offered in this case.   Fed. R. Ev.

401, 402, 501, 502, 702, 703, 705; Fed. R. Civ. P. 26(a)(2) (governing disclosure of expert

testimony); Fed. R. Civ. P. 26(b)(1) (limiting discovery to nonprivileged matters).   As to the

substance of the allegations, Defendant lacks knowledge or information sufficient to form a

belief as to the truth about allegations.   Neither Plaintiff nor her clients have been deposed in

this FOIA case, Plaintiff's client files are not part of the summary judgment record, and no expert testimony concerning a lawyer's (in)ability to understand the issues her clients' cases and provide adequate representation based on the records in Plaintiff's clients' files (and the absence of additional ICE documents that might be available through FOIA requests) has been offered; production of Plaintiff's clients' files, identification and depositions of Plaintiff's clients, a deposition of Plaintiff, and expert testimony concerning the ability to understand issues and represent clients based on records available without obtaining ICE documents through a FOIA request would be required to determine the truth of these allegations.   *See* WJM Revised Practice Standards § III.E.4(d).   *However*, because these issues are irrelevant and immaterial to the resolution of this case, Defendant is not seeking any additional discovery.

35.   The material cited to support these allegations—concerning what the "law provides"—cannot be presented in a form that would be admissible at trial.   Fed. R. Civ. P. 56(c)(2); WJM Revised Practice Standards § III.E.4(c).   Legal questions are for the Court, and Plaintiff's opinions are inadmissible, irrelevant, and immaterial.   *See supra* ¶ 31 (collecting authority); Fed. R. Ev. 401, 402.   No non-citizens are parties to or witnesses in this FOIA case, Plaintiff is not competent to testify as to non-citizens' experiences, and any testimony she would seek to offer would be impermissible hearsay.   Fed. R. Ev. 602, 802.   As to the substance of the allegations:   Admit.

36.   The material cited to support these allegations—concerning whether "defenses and legal avenues to remain in the country are generally unavailing to a non-citizen," what "generally" happens to fugitives who surrender to ICE, or what defenses and legal rights immigration attorneys are generally unable to present—cannot be presented in a form that would

be admissible at trial.    Fed. R. Civ. P. 56(c)(2); WJM Revised Practice Standards § III.E.4(c).

These matters are not relevant or material.    Fed. R. Ev. 401, 402; Fed. R. Civ. P. 56(a).    No

non-citizen to whom defenses and legal avenues are "generally unavailing" is a party to or

witness in this FOIA case, nor are any attorneys representing such unidentified person(s),

Plaintiff is not competent to testify on the experiences of "a non-citizen" or "the attorney," and

any testimony she attempted to offer would be inadmissible hearsay.    Fed. R. Ev. 602, 802.

As to the substance of the allegations, Defendant denies that non-citizens do not have access to

their "immigration files."    *See, e.g.*, ECF No. 15-2 (providing A-File to Plaintiff); ECF No. 85-3

(immigration records released to Plaintiff); ECF No. 85-2 at 14:9-10 (explaining that "A-file

records have a more historical view on the individual's immigration status").    Defendant lacks

knowledge or information sufficient to form a belief as to the truth about allegations concerning

the what non-citizens "generally" experience in certain situations, or what defenses or legal

rights those non-citizens' attorneys are, or are not, able to present.    No non-citizens or their

attorneys have been offered or deposed as witnesses in this FOIA case to testify about what their

experiences generally are; an identification and depositions of such non-citizens and their

attorneys would be required to discover this information and determine the truth of these

allegations.    *See* WJM Revised Practice Standards § III.E.4(d).    *However*, because these

matters are irrelevant and immaterial to the resolution of this case, based on hearsay and not

otherwise able to be presented in admissible form, Defendant is not seeking any additional

discovery into these allegations.

     37.    Admit.    The SOP provides that, with respect to FOIA requests submitted directly

to ICE, the subject of which is identified by ERO to be a fugitive as defined in the SOP, "ICE

FOIA may categorically withhold the fugitive's law enforcement records or information pursuant to FOIA Exemption (b)(7)(A), 5 U.S.C. § 552(b)(7)(A), which permits the withholding of records or information compiled for law enforcement purposes to the extent that production of law enforcement records or information could reasonably be expected to interfere with law enforcement proceedings, and the fugitive disentitlement doctrine."   ECF No. 80-7 at ICE-2.

38.    The material cited to support these allegations—opinion testimony by ICE's Rule 30(b)(6) deponent beyond the scope of topics allowed by the Court about the "legal basis for withholding records responsive to a FOIA request"—cannot be presented in a form that would be admissible at trial.   Fed. R. Civ. P. 56(c)(2); WJM Revised Practice Standards § III.E.4(c). ICE's 30(b)(6) witness is not competent to testify (nor did Plaintiff ask ICE to provide a representative competent to testify) about what the law is, which is a legal determination for the Court.   *Supra* ¶¶ 31, 23.   As to the substance of the allegations:   Deny.   The testimony cited by Plaintiff reflects that ICE acknowledged that the fugitive disentitlement is not a FOIA exemption; it did not address legality, which is Plaintiff's impermissible legal opinion:

> **Q. Okay.   All right.   So do you agree that the Fugitive Disentitlement Doctrine is not an exemption recognized under FOIA?**
>
> A. So, correct, the Fugitive Disentitlement Doctrine is not an exemption. 7(A) would be the exemption.

ECF No. 84-5 at 39:14-19.

> **Q Okay. You told me earlier that Fugitive Disentitlement Doctrine is not a FOIA exception, right?**
>
> A The fugitive -- so if we're applying a FOIA exemption, just saying FDD would not be a proper exemption, correct.

ECF No. 84-5 at 73:17-22.

39.     Admit, with the exception of the last phrase, "*i.e.*, without 'categorical withholding,'" which is denied.   "Categorical withholding" is appropriate under Exemption 7(A) and therefore could apply in the ordinary course.   *NLRB v. Robbins Tire and Rubber Co.*, 437 U.S. 214, 224 (1978); *DOJ v. Reporters Committee for Freedom of Press*, 489 U.S. 749, 776-77 (1989).

40.     Admit.

41.     Admit.   *But see* ECF Nos. 60-2, 84-7, 85-1 (publicly filing the SOP).

## ARGUMENT

Plaintiff seeks various forms of injunctive and declaratory relief: (1) a declaration that the SOP is invalid; (2) a permanent injunction enjoining the application of the SOP, including (a) "categorically" withholding records, (b) "deferring" FOIA compliance until an administrative appeal is filed, and (c) refusing to refer requests to other agencies; (3) a declaration that ICE's prior practice is invalid; and (4) a permanent injunction prohibiting ICE from "denying any applicant access to the FOIA process."   ECF No. 85 at 5.

Plaintiff lacks standing to obtain the requested relief.   At this stage, it was Plaintiff's burden to present specific facts to prove by a preponderance of the evidence that she meets each element of standing.   *N. Laramie Range All. v. F.E.R.C.*, 733 F.3d 1030, 1034 (10th Cir. 2013); ECF No. 45 at 4-5.   And Plaintiff "must demonstrate standing separately for each form of relief sought."   *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006); *see also Davis v. Federal Election Comm'n*, 554 U. S. 724, 733-34 (2008) ("[S]tanding is not dispensed in gross.   Rather, a plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought.") (internal quotations and citations omitted).   In other words, for each form of

23

requested relief, Plaintiff had to show that it is more likely than not that she will imminently be injured by the complained of policy, that her injury is traceable to that policy, and that the specific requested relief will remedy her specific injury.    She has not done so.

The SOP has never been applied to withhold records in response to a FOIA request submitted by Plaintiff, and she has presented no evidence that she faces a substantial risk of imminent harm from the SOP.    *Infra* Part I.A.    As to the practice, Plaintiff likewise has not shown that she faces a substantial risk of imminent harm from the practice being applied to a FOIA request she may submit in the future.    *Infra* Part II.A.    Plaintiff concedes as much, averring that she has "no way of knowing" if the SOP or practice will be applied to deny a FOIA request she may submit in the future.    ECF No. 85 ¶ 29.    That should be the end of this case.

On the merits, the SOP's reliance on categorical withholding under FOIA Exemption 7(A)—withholding the category of records that might reasonably be expected to interfere with law enforcement proceedings—was approved by the Supreme Court over 40 years ago.    *Infra* Part I.B.1.    Plaintiff has not proven that the SOP is facially invalid and results in the wrongful withholding of documents under Exemption 7(A) whenever it is applied.    *Infra* Parts I.B.2-4.

As to the practice, Plaintiff is mistaken that the letter she received in 2015 shows a denial of "access to the FOIA process"; nor, in any event, has she proven that the practice resulted in the wrongful withholding of records whenever it was applied.    *Infra* Part II.B.

**I.    The Court Should Enter Judgment for Defendant on Plaintiffs' Challenges to the SOP.**

**A.    Plaintiff does not have standing to challenge the SOP.**

The SOP has never been applied to withhold records in response to a FOIA request submitted by Plaintiff.    ECF No. 84 ¶ 31; *supra* ¶ 33.    Accordingly, Plaintiff has suffered no

past harm from the SOP that could be remedied by the requested relief.    Nor has Plaintiff

presented evidence demonstrating a substantial risk of imminent harm from the SOP being

applied to a FOIA request she may submit in the future.    ECF No. 84 at 14-16 (addressing lack

of evidence to support standing); *see also* ECF No. 45 ("MTD Order") at 4-10 (discussing a

plaintiff's burden to establish standing).    Plaintiff has conceded as much, averring that she "has

no way of knowing" whether the SOP will apply to her FOIA requests.    ECF No. 85 ¶ 29.

Because Plaintiff has not carried her burden to demonstrate standing to seek the requested relief,

the Court should deny Plaintiff's motion for summary judgment and dismiss Plaintiff's claims to

invalidate and permanently enjoin the SOP for lack of jurisdiction.

### B. Plaintiff's challenges to the facial validity of the SOP fail on the merits.

#### 1. "Categorical" withholding of law enforcement records pursuant to FOIA Exemption 7(A) is not "illegal."

Plaintiff is mistaken that the SOP is facially invalid because it provides for "categorical"

withholding of law enforcement records.    *See* ECF No. 85 at 27-28 (seeking summary judgment

on this basis).    The Supreme Court endorsed categorical withholding of law enforcement

records under FOIA Exemption 7(A) as early as 1978.    *NLRB v. Robbins Tire and Rubber Co.*,

437 U.S. 214, 224 (1978) (holding that Exemption 7(A) contemplates that "certain generic

determinations might be made").    The Court explained that Exemption 7(A) reflects Congress's

recognition that "law enforcement agencies ha[ve] legitimate needs to keep certain records

confidential, lest the agencies be hindered in their investigations or placed at a disadvantage

when it [comes] time to present their case."    *Id.* at 224.    In light of those legitimate needs,

law enforcement agencies may withhold the *category* of law enforcement records that could

reasonably be expected to interfere with enforcement proceedings (*i.e.*, may withhold

"categorically"):   "Congress did not intend to prevent the federal courts from determining that, with respect to particular kinds of enforcement proceedings, disclosure of particular kinds of investigatory records while a case is pending would generally interfere with enforcement proceedings." *Id.* at 236 (internal quotation omitted).

The Supreme Court has since expanded on this reasoning, explaining that "[o]ur cases provide support for the proposition that *categorical decisions may be appropriate and individual circumstances disregarded when a case fits into a genus in which the balance characteristically tips in one direction*." *DOJ v. Reporters Committee for Freedom of Press*, 489 U.S. 749, 776 (1989) (emphasis added).   The Court explained that its decision in *Robbins Tire* "encompassed the entire *category* of NLRB witness statements, and a concurring opinion pointed out that the *category* embraced enforcement proceedings by other agencies as well." *Reporters Committee*, 489 U.S. at 776-77 (emphases added).   Indeed, the Court noted that even the partial dissent in *Robbins Tire* "endorsed the 'generic' approach to the issue, . . . agree[ing] that 'the congressional requirement of a specific showing of harm *does not prevent determinations of likely harm with respect to prehearing release of particular categories of documents*.'" *Id.* at 777 (emphasis added) (quoting *Robbins Tire*, 437 U.S. at 249 (Powell, J.)).   Ultimately, the Court expanded categorical withholding beyond Exemption 7(A), holding "that for an appropriate class of law enforcement records or information a categorical balance may be undertaken [under Exemption 7(C)] as well." *Id.* at 777.

The SOP is consistent with the approach to categorical withholding endorsed by the Supreme Court in *Robbins Tire* and *Reports Committee*.   The SOP provides that, for FOIA requests made directly to ICE, the subjects of which are determined by ERO to be fugitives,

26

"ICE FOIA may categorically withhold the fugitive's law enforcement records or information pursuant to FOIA Exemption (b)(7)(A), . . . which permits the withholding of records or information compiled for law enforcement purposes to the extent that production of law enforcement records or information could reasonably be expected to interfere with law enforcement proceedings, and the fugitive disentitlement doctrine."   ECF No. 84-7 at ICE-2. The SOP applies only to direct requests to ICE for records within ERO's law enforcement databases.   *Supra* ¶¶ 15, 25 (citing Pavlik-Keenan Decl. ¶¶ 12-13); *see also* ECF No. 84-7 at ICE-2 ("ICE FOIA may categorically withhold *the fugitive's law enforcement records or information . . .*") (emphasis added).   As ICE explained in its deposition, "on a direct request where we're searching for ICE records, under our domain active investigative files are more likely to contain information that would allow a fugitive or an absconder to evade law enforcement activities. . . ."   ECF No. 84-5 at 10:13-17.

"Categorical," in the context of withholding records in response to a FOIA request for ERO law enforcement records, means "all of these records were compiled for law enforcement purposes and can be used to evade law enforcement action."   ECF No. 84-5 at 72:22-24; *see also id.* at 33:3-6 ("If the person is a fugitive and the records could be used to evade law enforcement actions, then, yes, we would categorically deny those records."); *id.* at 34:11-25 (If ERO determines that the subject of a FOIA request "is an absconder or they're a fugitive . . . that would make that record, that category of records exemptible under FOIA law under 7(A) because any information within that record would help that requester evade law enforcement."); *id.* at 69:13-17 ("We determine if the person is a fugitive.   Anything we provide that person is

27

going to help them evade law enforcement activities . . .   So the category of law enforcement records within that direct request is now denied under 7(A).").

Plaintiff argues that the Court has "already observed [that] 'categorical' means 'absolute' or 'unqualified.'"   ECF No. 85 at 27 (citing ECF No. 73 at 9, in turn citing *Categorical*, Merriam-Webster (2018)); *see also* ECF No. 73 at 9 (permitting Plaintiff to explore the meaning of "categorical" in the Rule 30(b)(6) deposition because, based on the dictionary definition of "categorical," "it appears to the Court that there may be inconsistency between Mr. Pineiro's affidavit and the language of the SOP").   Plaintiff's reliance on the dictionary definition of categorical ignores the meaning of "categorical" in the FOIA context after *Robbins Tire*, and the testimony Plaintiff elicited at ICE's deposition:

> **Q:   And 'categorical' means absolute or unqualified. Do you agree with that?**
>
> A:   Not in the context that we use it in our SOP or in my declaration.
>
> **Q:   Okay. So what does the word 'categorical' mean in the SOP and your declaration?**
>
> A:   *It means the category of records compiled for law enforcement purposes that can be used by an individual to evade law enforcement activity or to hinder law enforcement activity. So 'categorical' means exactly that, it's a category of records* compiled for law enforcement purposes, not as in absolute . . .

ECF No. 84-5 at 71:25-72:12 (emphasis in second response added).[7]

Plaintiff is not entitled to a declaration that the SOP is illegal, or a permanent injunction enjoining its application, because the SOP provides for "categorical" withholding.

---

[7] Plaintiff also appears to argue that categorical withholding is impermissible under FOIA because FOIA provides that segregable portions of non-exempt records should be released.   *See* ECF No. 85 at 27.   The Supreme Court rejected that argument in *Robbins Tire*, 437 U.S. at 224, and again in *Reporters Committee*, 489 U.S. at 778.

**2. Exemption 7(A) by any other name is not illegal.**

Plaintiff also takes issue with the use of the phrase "fugitive disentitlement doctrine" in the SOP.   ECF No. 84 at 22-27.   But Plaintiff does not claim that the SOP provides for ICE to withhold documents under the fugitive disentitlement doctrine that are not already being withheld under Exemption 7(A).   The SOP provides that, in response to direct requests to ICE, the subjects of which ERO determines to be fugitives, "ICE FOIA may categorically withhold the fugitive's law enforcement records or information pursuant to FOIA Exemption (b)(7)(A), . . . and the fugitive disentitlement doctrine."   ECF No. 84-7 at ICE-2; *see also* ECF No. 84-6 ¶ 5 ("[T]here is never a situation in which ICE FOIA would deny a fugitive alien's FOIA request on the basis [of] the fugitive disentitlement doctrine but not FOIA Exemption 7(A).").   As Magistrate Judge Mix found, "from the plain language of the SOP and Mr. Pineiro's supporting statement, it appears that the agency applies *both* the (b)(7)(A) exception *and* the fugitive alien doctrine to justify withholding certain documents."   ECF No. 73 at 8.[8]

Nor is Plaintiff correct that ICE has claimed that "a person's 'fugitive' status *expands* exception [7(A)]."   ECF No. 85 at 25.   The actual testimony elicited in response to Plaintiff's questions was just the opposite, stating that while Exemption 7(A) does encompass documents on which a fugitive might rely to continue to avoid law enforcement, it also covers more than that:   "So if the person is a fugitive -- well, all right, so 7(A) is way more than just the Fugitive Disentitlement Doctrine . . . .   So we're talking about a large amount of other types of records that would be withheld under 7(A)."   ECF No. 84-5 at 25:18-22; *see also id.* at 74:4-5 ("7(A)

---

[8] As discussed above, even after the SOP was adopted, ICE continued—in error—to send out letters using an old letter template that—erroneously—did not explicitly state that documents were being withheld under Exemption 7(A).   *Supra* at 2-3.

encompasses way more than just the Fugitive Disentitlement Doctrine."); *id.* at 74:20-75:12

("[T]he Fugitive Disentitlement Doctrine would be -- would -- when we apply it, we apply

Exemption 7(A), which is that they're records compiled for law enforcement purposes that

would be used to evade law enforcement action.    But 7(A) -- it doesn't have to be a Fugitive

Disentitlement Doctrine for it to be a 7(A). . . .    I could apply 7(A) exemptions to more than just

a fugitive requesting their records. . . .    So if a reporter asked me for records that are part of a

current and active investigation, I can apply 7(A). It's not because the reporter is a fugitive.").

        At bottom, Plaintiff's argument is that the Court should invalidate the SOP, and enter a

permanent injunction prohibiting its application, because the SOP includes the phrase "fugitive

disentitlement doctrine."    But Plaintiff is not entitled to judicial line-editing of the SOP, or a

permanent injunction enjoining the SOP on this ground.    It was Plaintiff's burden to show that

the SOP is invalid in all its applications, and this, she has not done.

        As an initial matter, Plaintiff is mistaken that the fugitive disentitlement doctrine

(1) applies only to criminal appeals and (2) "has no application whatsoever to FOIA."    ECF No.

85 at 22.    On the first point, the Courts of Appeals have consistently and unanimously held that

the fugitive disentitlement doctrine applies outside of the criminal appellate context, including to

immigration proceedings.    *See, e.g.*, *Martin v. Mukasey*, 517 F.3d 1201, 1202 (10th Cir. 2008)

(dismissing petition for review of final order of removal based on the fugitive disentitlement

doctrine); *Sapoundjiev v. Ashcroft*, 376 F.3d 72, 728 (7th Cir. 2004) ("Every circuit that has

considered the issue has concluded that the fugitive-disentitlement doctrine applies to

immigration cases, and that aliens who avoid lawful custody forfeit judicial review.").    On the

second point, courts have also held that the fugitive disentitlement doctrine applies to FOIA

cases.   *See, e.g.*, *Maydak v. U.S. Dep't of Educ.*, 150 F. App'x 136, 138 (3d Cir. 2005)

(affirming dismissal of FOIA case under the fugitive disentitlement doctrine); *Doyle v. Dep't of*

*Justice*, 668 F.2d 1365, 1365-66 (D.C. Cir. 1981) (same)[9]; *Meddah v. Reno*, No. 98-1444, 1998

U.S. Dist. LEXIS 23620 (E.D. Pa. Dec. 3, 1998) (applying fugitive disentitlement doctrine and

dismissing FOIA complaint); *but see Lazaridis v. DOJ*, 713 F. Supp. 2d 64, 70 (D.D.C. 2010)

(declining to dismiss FOIA case under the fugitive disentitlement doctrine).

More fundamentally, in considering the facial validity or invalidity of the SOP, as long as

documents are properly withheld under a FOIA Exemption (here, Exemption 7(A)), then the

invocation of an incorrect basis for withholding records by the agency would not amount to a

FOIA violation.   District courts determine "de novo" whether an agency has (im)properly

withheld documents from a complainant in response to a FOIA request.   5 U.S.C.

§ 552(a)(4)(B).   And "an agency does not waive FOIA exemptions by not raising them during

the administrative process."   *Young v. CIA*, 972 F.2d 536, 538 (4th Cir. 1992); *see also, e.g.*,

*Living Rivers, Inc. v. U.S. Bureau of Reclamation*, 272 F. Supp. 2d 1313, 1318 (D. Utah 2003)

(citing *Young* and *Ford v. West*, No. 97-1342, 1998 WL 317561, at *1 (10th Cir. June 12, 1998));

*Sinito v. DOJ*, No. 87-0814, 2000 U.S. Dist. LEXIS 22504, at *25 (D.D.C. July 12, 2000) ("The

FOIA clearly directs district courts to review agency actions de novo. Therefore, an agency is not

---

[9]  *Superseded in part by Ortega-Rodriguez v. United States*, 507 U.S. 234 (1993), as recognized
by *Daccarett-Ghia v. C.I.R.*, 70 F.3d 621, 626 (D.C. Cir. 1995).   *Daccarett-Ghia* recognized,
and reaffirmed, the dismissal of the FOIA suit in *Doyle* under the fugitive disentitlement doctrine
"because the fugitive's civil suit sought records that were 'not devoid of a relationship' to the
criminal charges pending against him, *i.e.*, the subject matters of the civil and criminal cases
were not completely divorced from each other."   70 F.3d at 626 n.4 (citing and quoting *Doyle*,
668 F.2d at 1365); *id.* ("Our holding in this case does not disturb that aspect of *Doyle*.").

barred from invoking a particular exemption in litigation merely because that exemption was not cited in responding to the request at the administrative level.").

As long ICE properly withholds documents under FOIA Exemption 7(A) when it applies the SOP, the additional name that ICE appends to its decision at the agency level—be it the "fugitive disentitlement doctrine," or anything else—does not affect a court's de novo determination of whether the agency has (im)properly withheld records in response to a FOIA request.  *Cf. Shannahan v. IRS*, 672 F.3d 1142, 1144, 1151 (9th Cir. 2012) (affirming the decision to withhold certain records under FOIA Exemptions 3 and 7(A), declining to reach the question of whether requester had no right to disclosure under FOIA based on the fugitive disentitlement doctrine).

In this putative pattern and practice case, of course, there is no specific FOIA request in response to which Plaintiff is asking the Court to determine de novo whether agency records have been improperly withheld.   Rather, Plaintiff argues that the SOP is facially invalid.   But Plaintiff has not shown that, notwithstanding its inclusion of the phrase "fugitive disentitlement doctrine," the SOP results in the wrongful withholding of records under Exemption 7(A) in all (or even most) of its applications.   *See* ECF No. 84 at (discussing Plaintiff's burden in seeking to hold the Policy facially invalid).   If, in the future, a FOIA request is improperly denied under the SOP, and the agency affirms the withholding on appeal (or does not decide the appeal within 20 days), then that requester can seek relief from the court, which will determine the issue de novo.   5 U.S.C. § 552(a)(4)(B).   But Plaintiff is not entitled to a declaration that the SOP is facially invalid, or a permanent injunction barring the SOP's application, in this case.

### 3.   ICE does not refuse to refer FOIA requests for which ICE is not the custodian to the custodial agency.

ICE does not, in response to FOIA requests seeking documents for which ICE is not the custodian, refuse to refer such requests to the custodial agency when the subject of the request is a fugitive.   *See* ECF No. 85 at 29-30 (seeking summary judgment on this basis).   Plaintiff has not identified any instance in which such an alleged refusal to transfer occurred, and her speculative claim that this might occur is not ripe.   *See* ECF No. 84 at 25-26 (addressing ripeness based on hypotheticals).   Nor does she have standing to bring such claim, as she has never been injured by this hypothetical action, and does not face any imminent injury.

Moreover, ICE *does* in fact refer requests for documents for which is not the custodian to its sister components, even when ERO identifies the subject of the request as a fugitive.   *Supra* ¶ 27; Pavlik-Keenan Decl. ¶ 25 & Ex. N.   The Court should deny Plaintiff's request for relief on this basis and enter judgment in favor of Defendant on Plaintiff's claim based on (mistaken) speculation that ICE would refuse to refer or transfer requests to other DHS components in response to FOIA requests submitted by or on behalf of fugitives.

### 4.   The SOP does not eliminate the statutory right to administrative appeal.

Plaintiff also argues that, under the SOP, ICE defers its obligation to release records in response to FOIA request until an administrative appeal is filed, thereby effectively eliminating the administrative right of appeal.   ECF No. 85 at 21, 25-26, 28-29.   But the SOP has never been applied to Plaintiff, and her challenge to how appeals are handled under the SOP is not ripe. *See* ECF No. 84 at 25-26.

Moreover, Plaintiff's argument is premised on her mistaken belief that categorical withholding is impermissible under FOIA:   Plaintiff argues that ICE defers "the correct

application of legitimate FOIA exceptions . . . until a FOIA requester appeals the initial

'categorical' withholding," thereby "effectively eliminat[ing] the administrative right of appeal."

*Id.* at 28.    As explained above, the premise for this argument is incorrect; categorical

withholding under Exemption 7(A) is permissible.    *Supra* Part I.B.1.

Because Plaintiff's premise that categorical withholding is *per se* impermissible is

incorrect, the responses to FOIA requests submitted by two non-parties show not that the SOP is

facially invalid, but that the administrative appeals process works.    *See* ECF No. 85 at 26

(relying on responses to FOIA requests submitted by Melody Poole and Daniel Harris).    Both of

those requesters received responses based on the erroneous letter templates stating that ICE's

now-discontinued fugitive "practice" was the basis for withholding.    ECF Nos. 85-6, 85-9; *see*

*also supra* at 2-3 & ¶ 17.    But, when those requesters appealed, OPLA reversed the original

decisions, and directed ICE FOIA to re-process the requests and release responsive, non-exempt

documents.    ECF Nos. 85-7, 85-8.    This is how the administrative-appeals process is supposed

to work.    A FOIA requester is required to exhaust her claim by filing an administrative appeal

with the agency before she can file suit.    5 U.S.C. § 552(a)(6)(A)(ii); *see also, e.g.*, *Hidalgo v.*

*FBI*, 344 F.3d 1256, 1259 (D.C. Cir. 2003) ("[T]his statutory scheme requires each requestor to

exhaust administrative remedies.") (internal quotation omitted).    Administrative exhaustion is

required to permit an agency "to correct or rethink initial misjudgments or errors," *Hidalgo*, 344

F.3d at 1260 (internal quotation omitted), "prevent[] premature interference with agency

processes," and to afford "the parties and the courts the benefit of [the agency's] experience and

expertise . . . . ," *id.* at 1259 (internal quotations omitted).    If either Ms. Poole or Mr. Harris

remains dissatisfied with the agency's final action on their appeals, they can challenge the

agency's decision in court.    5 U.S.C. § 552(a)(4)(B), (6)(A)(ii).    But Plaintiff cannot rely on

harm that she speculates Mr. Harris or Ms. Poole may suffer under FOIA, depending on the

responses to their appeals, as grounds to find the SOP facially invalid.[10]

Because categorical withholding under Exemption 7(A) is permissible under FOIA, the

SOP does not "defer[] substantive compliance with FOIA until the appeal," ECF No. 85 at 28, or

"eliminate[] the administrative right of appeal," *id.*, and Plaintiff's challenge on this score

amounts to a desire to make line edits to the SOP to incorporate the steps set out in the appellate

procedures into the prior section of the SOP, *see id.* at 25-26.    Plaintiff is not entitled to a

finding of facial invalidity or a permanent injunction on this basis.

## II.    The Court Should Reject Plaintiff's Challenges to the Practice and Enter Summary Judgment in Favor of Defendant.

### A.    Plaintiff lacks standing to invalidate and permanently enjoin the practice.

In ruling on Defendant's motion to dismiss, the Court opined that Plaintiff's case for

standing to challenge the practice was "not overwhelming," and found it "concerning" that

---

[10] Nor is this argument advanced by Plaintiff's reliance on a response she received to a FOIA request that pre-dated the SOP.    *See* ECF No. 85 at 21 (relying on same).    Plaintiff argues that the response letter does not rely on Exemption 7(A) as a basis for withholding or redacting records.    *Id.*    But that letter was issued before the SOP was adopted.    And, in any event, Exemption 7(A) is temporal in nature, and once a law enforcement proceeding is no longer pending or reasonably anticipated, then the records must be released unless subject to another exemption.    As the corrected letter template explains, "once all pending matters are resolved and FOIA Exemption 7(A) is no longer applicable, there may be other exemptions which could protect certain information from disclosure . . . ."  Ex. L at 1; *accord Poitras v. DHS*, 303 F. Supp. 3d 136, 157 (D.D.C. 2018) ("Exemption 7(A) is temporal in nature, and an agency seeking to invoke the exception must show that the material withheld relates to a concrete prospective law enforcement proceeding.    Thus, reliance on Exemption 7(A) may become outdated when the proceeding at issue comes to a close.") (internal quotations and citations omitted).    The fact that a response letter issued before the SOP was adopted did not cite Exemption 7(A) has no bearing on Plaintiff's claim that the SOP is facially invalid.

Plaintiff "'regularly' submits FOIA requests but has alleged only three instances of denial based on the Fugitive Practice." ECF No. 45 at 11 (Apr. 5, 2017). Now, after an additional two years of regularly submitting FOIA requests, Plaintiff's case for standing to invalidate the practice is even less overwhelming. It is now based on two, not three, alleged instances of denial based on the practice. *See* ECF No. 85 ¶¶ 6, 11 (relying on two FOIA requests pursuant to which documents were originally withheld under the practice). However, for only one of those two requests was Plaintiff herself the requester and the mandatory administrative appeal process completed. *Id.* ¶¶ 6-7 (referring to the request for Ms. Sanchez's records); *see also supra* ¶¶ 11, 30, 32.[11] "[S]tanding under FOIA is limited to the person who made the initial request," *Feinman v. FBI*, 680 F. Supp. 2d 169, 172 (D.D.C. 2010), and administrative exhaustion is a pre-requisite to suit, *supra* Part I.B.4.

But whether Plaintiff's case for standing seeking to invalidate and permanently enjoin the practice is based on a single FOIA request, or two, past harm alone is not enough to warrant prospective declaratory and injunctive relief. ECF No. 45 at 8-9. Plaintiff was required to come forward with evidence demonstrating that she faces a substantial risk of imminent harm from the practice, *i.e.*, that ICE will invoke the practice to deny one of her future FOIA requests.

---

[11] The other request was submitted by a Ms. Brown. ECF No. 19-2. And, although Magistrate Judge Mix gave Plaintiff until February 13, 2017 to file her amended complaint so that the administrative appeals process could be completed for Ms. Brown's request, *see* ECF No. 30 (Jan. 9, 2017), Plaintiff elected to file her amended complaint a month before the deadline, and before the administrative appeal period ended, ECF No. 31 (Jan. 12, 2017). Records were released in response to this request on appeal. *Supra* ¶¶ 11, 30, 32. Ms. Brown would not have had standing to bring a FOIA suit based on the initial denial of this request, and it does not advance Plaintiff's case for standing, either.

*Id.* at 10.   She did not do so, and again, conceded that she has no evidence that the practice will apply to her in the future, averring that she "has no way of knowing."   ECF No. 85 ¶ 29.

Plaintiff lacks standing to obtain invalidate and permanently enjoin the practice, and her claims seeking this relief should be dismissed for lack of jurisdiction.

### B.  The practice has been discontinued, and Plaintiff has not shown that the practice was illegal in all of its applications.

Plaintiff argues that the practice should be invalidated and permanently enjoined because FOIA does not permit an agency to "deny access to the FOIA process."   ECF No. 84 at 18-20.

First, Plaintiff is mistaken that ICE continues to employ the practice.   As discussed above, ICE erroneously failed to update its "fugitive" letter template in FOIAXpress following the adoption of the SOP.   *Supra* at 2-3 & ¶ 17.   But notwithstanding this admitted error, the SOP was adopted, and it was sent by the ICE FOIA Officer to ICE FOIA employees with the instruction to "FOLLOW IMMEDIATELY."   *Supra* at 2-3; Pavlik-Keenan Decl. ¶ 11 & Ex. K. The ICE FOIA Officer's email instructions, including that a fugitive status check will only be applied to direct requests to ICE, are consistent with the SOP.   Ex. K.   ICE no longer employs the practice set out in the September 3, 2015, letter responding to Plaintiff's request for Ms. Sanchez's records.   *Supra* at 2-3 & ¶ 17.

Second, notwithstanding the "deny access" language—which ICE admitted in its deposition was improperly worded—the letter referencing the practice does not reflect a denial of access to the FOIA "process."   The letter states that it "is ICE's practice to deny fugitive alien FOIA requesters access to the FOIA process *when the records requested could assist the alien in continuing to evade immigration enforcement efforts*.   *The agency has reviewed the information sought in your request and has determined that there is a connection between that*

*information and the subject of the request's status as a fugitive*." ECF No. 85-6 at 1 (emphasis added); *supra* ¶ 18. ICE testified that the letter is consistent with access to (not a denial of) the FOIA process: persons who received the letter "were afforded access to the FOIA because we received a FOIA request, we performed intake on the FOIA request, we sent a search for records to the program office, the program office informed us that the individual was a fugitive, and we sent a letter informing the individual in response to their FOIA request that they were a fugitive . . . . ." ECF No. 84-5 at 49:19-50:1.

Plaintiff alleged that the practice "is illegal under FOIA, and results in the illegal withholding of documents under FOIA whenever it is applied." ECF No. 32 ¶ 45. It was her burden to prove this to prevail on her facial challenge. ECF No. 84 at 19-20 (discussing the burden in a facial challenge). Plaintiff has not done so. Notwithstanding the admittedly erroneous "deny access" language, Plaintiff has not shown that the practice results in the wrongful withholding of records under FOIA whenever it was (though is no longer) applied.

### III.   The Scope of the Requested Remedies Is Too Broad.

Plaintiff is not entitled to the injunctive and declaratory relief that she seeks in this case. *Supra* Parts I, II. Even if Plaintiff had standing (she does not), and even if she had proven her claim(s) of invalidity (she has not), she still would not be entitled to the relief that she requested. Jennifer Smith is the only plaintiff in this case, and only FOIA requests that she herself made (or will make in the future) are at issue. (Plaintiff objected to "discovery requests to the extent that they seek information regarding persons other than Plaintiff." ECF No. 84-9 at 1.) Available relief is limited to ICE's conduct *vis-à-vis* Jennifer Smith. *ACLU v. U.S. Dep't of State*, 249 F. Supp. 3d 275, 286 (D.D.C. 2017) ("The D.C. Circuit has recently held that, in a FOIA case, the

Court likely has no power to enjoin the government from engaging in a policy or practice . . .

writ large, but can only order the agency to cease any actions vis-à-vis the plaintiffs in the

lawsuit.") (citing *Citizens for Responsibility and Ethics in Washington v. DOJ*, 846 F.3d 1235,

1243-44 (D.C. Cir. 2017) (holding that courts have "no authority under FOIA" to remedy "an

injury suffered by the general public," but instead are limited "relieving the injury suffered by

the individual complainant") (internal quotations omitted)).

The requirement that injunctive relief be limited to Plaintiff herself follows from Article

III standing requirements.   The Supreme Court recently reaffirmed that "standing is not

dispensed in gross: *A plaintiff's remedy must be tailored to redress the plaintiff's particular*

*injury*."   *Gill v. Whitford*, 138 S. Ct. 1916, 1934 (2018) (emphasis added) (internal quotation

omitted).   It is the scope of Plaintiff's injury, not the scope of the challenged policy or practice,

that governs the permissible scope of an injunction.   Fundamental principles of equity dictate

the same result.   Injunctions "should be no more burdensome to the defendant than necessary to

provide complete relief to the plaintiffs."   *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753,

765 (1994) (internal quotation omitted).

Plaintiff's request for a declaration that the prior practice is illegal suffers from an

additional problem.   The records initially withheld from Plaintiff based on the practice have

been released, and the practice is no longer applied.   *Supra* at 2-3 & ¶¶ 9, 17, 32.   A

declaration that the practice is invalid would not remedy any harm suffered by Plaintiff.   *Cf.*

*Hewitt v. Helms*, 482 U.S. 755, 761 (1987) ("The real value of the judicial pronouncement-what

makes it a proper judicial resolution of a 'case or controversy' rather than an advisory opinion-is

in the settling of some dispute *which affects the behavior of the defendant towards the plaintiff*.")

If the Court finds that Plaintiff is entitled to relief, the relief should be limited to Plaintiff,

and no broader than necessary to remedy the harm the Court finds that Plaintiff herself suffered.

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the Court deny Plaintiff's

motion for summary judgment, and enter judgment in favor of Defendant.


DATED:   May 3, 2019                            Respectfully Submitted,

                                                JASON R. DUNN
                                                United States Attorney

                                                *s/ Ian J. Kellogg*
                                                Ian J. Kellogg
                                                Assistant United States Attorney
                                                1801 California Street, Suite 1600
                                                Denver, Colorado 80202
                                                Telephone:(303) 454-0100
                                                Fax: (303) 454-0407
                                                ian.kellogg@usoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on May 3, 2019, I electronically filed the foregoing with the Clerk of Court using the ECF system which will send notification of such filing to the following e-mail addresses:

Dan@CulhaneLaw.com
msilverstein@aclu−co.org
sneel@aclu−co.org

*s/ Ian J. Kellogg*
U.S. Attorney's Office