# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 16-cv-02137 WJM-KLM

JENNIFER M. SMITH,

    Plaintiff,

v.

U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT,

    Defendant.

_____

### PLAINTIFF'S REPLY IN SUPPORT OF
### MOTION FOR SUMMARY JUDGMENT (DOC #85)
_____

Plaintiff Jennifer M. Smith, through counsel, respectfully submits this reply in support of her motion for summary judgment (Doc. #85). The opposition of defendant U.S. Immigration and Customs Enforcement (ICE) (Doc. #88) is referred to herein as the "Opposition."

## INTRODUCTION

ICE's Opposition, and its entire legal position, is legally and factually untenable. The bulk of ICE's Opposition retracts, qualifies and attempts to excuse ICE's statement of facts, which is materially false. ICE retracts and qualifies not only its assertion that it discontinued the "deny-access-to-FOIA" process, but also retracts its assertion that it applied the SOP only eight times from July 21, 2017 through March 21, 2019—and admits that in fact, its assertion was off by a factor of 40, and actually "categorically" withheld all documents from "fugitives" 333 times from July 21, 2017 to April 4, 2019.

Otherwise, ICE affirms in its Opposition that its practice of illegally withholding documents FOIA requires it to release, which started with the "deny-access-to-FOIA" practice, continues—both under the original practice and in the SOP. And ICE's Opposition confirms that ICE illegally denies FOIA requesters a proper administrative appeal, since the SOP appeal process accomplishes what the SOP prevents ICE from doing in the first place—reviewing the actual records and applying only the exemptions permitted by law.

Finally, ICE's Opposition affirms that Ms. Smith established standing, examined at the commencement of the case, to challenge the ongoing illegal FOIA practice, and also undermines any conceivable claim of mootness.

This Court has already received extensive briefing, and many of the issues raised in the Opposition have been briefed in plaintiff's original motion (Doc. #84) and her opposition to ICE's cross motion (Doc. #89). In this Reply, Ms. Smith will address three dispositive issues that plaintiff believes will assist the Court, and which demonstrate that this Court must enter summary judgment in her favor, and enter declaratory judgment against ICE and permanently enjoin its ongoing illegal FOIA practices.

**ARGUMENT**

**I.  ICE HAS NO CREDIBILITY.**

The bulk of ICE's legal argument rests on two assertions of fact: (1) that ICE has "halted" the "deny-access-to-FOIA" practice; and (2) that ICE's new SOP is applied infrequently. Both of these assertions are false.

ICE submits the affidavit of Catrina Pavlik-Keenan (Doc. #88-1) in support of its Opposition (Doc. #88). In this affidavit, ICE explains that it *meant* to discontinue its "deny-access-to-FOIA" practice, but despite a staff of more than 40 (Pavlik-Keenan Aff., Doc. #88-1 ¶2), ICE

is unable to properly use a computer system called FOIAXpress, such that a "rogue" template letter implementing the "deny-access-to-FOIA" practice was repeatedly sent out. *Id.* ¶¶15-16.

This excuse is unsatisfactory in numerous ways:

- There is no such thing as a "hard-to-work software" FOIA exemption. There is also no such thing as a "serious staffing shortage" FOIA exemption. Pavlik-Keenan Decl. (Doc. #88-1) at ¶17.

- Not just one, but *two* ICE FOIA personnel review every letter generated by FOIAXpress before it is sent—the ICE FOIA analyst responsible for the request, and an ICE FOIA supervisor who signs the letter. *Id.* ¶8. ICE personnel, not software, send out the "rogue" letters. Ms. Pavlik-Keenan's statement that "We did not find that anyone ignored my instruction to follow the SOP, on purpose or by mistake, or that they continued to apply the 'practice'" referred to in the old letter template" (*id.* ¶15) can only be the result of refusing to look very hard, since at least two of Ms. Pavlik-Keenan's staff reviewed and signed every "deny-access-to-FOIA" letter before ICE sent it out.

- The "corrected" SOP template letter Ms. Pavlik-Keenan states (Doc. #88-1 ¶18) that ICE started using once the plaintiff in this lawsuit alerted ICE that it was still using the "deny-access-to-FOIA" practice is not the actual template that ICE uses. *Compare* Doc. #88-4 (alleged template letter) *with* Faison Decl. Exh. A (Doc. #89-4). These are not the same letters, and the difference is material. In the *actual* letter that ICE sent to Mr. Faison, ICE advises "It is ICE practice to categorically withhold records or information related to fugitive aliens *in their entirety* pursuant to [Exemption 7(A)] and the fugitive disentitlement doctrine." Doc. #89-4 (emphasis added). Likewise, the *actual* letter states "It is ICE's practice to, under both Exemption 7(A) and the fugitive disentitlement doctrine, deny fugitive alien FOIA requesters access to their records under FOIA when those records could assist the alien in continuing to evade immigration enforcement efforts, including ICE's ongoing efforts to locate the fugitives." *Id.* The "template" letter, by contrast, is a sanitized version that does not contain the quoted language, and appears to give the court the misleading impression that ICE is solely applying Exemption 7(A), instead of denying "fugitives" access to FOIA.

- While attempting to rebut an unrelated argument, Ms. Pavlik-Keenan, apparently without awareness of their significance, submits *additional* "deny-access-to-FOIA" letters, **which were sent under Ms. Pavlik-Keenan's own signature**. Doc. #88-6 at pp.3-4, 7-8, 10-11. The earliest of these letters was sent September, 2018 (*id.* pp.3-4), and the latest in *February, 2019* (*id.* 10-11). All of them contain the identical "deny-access-to-FOIA" language that ICE repeatedly swears was halted back in August, 2017. Pavlik-Keenan Decl. (Doc. #88-1) ¶15-17.

3

ICE also retracts its previous sworn statement that the SOP had only been used eight times since July, 2017, and now states that it has been applied 40 times more frequently—333 times. Opposition (Doc. #88 p.4); Pavlik-Keenan Decl. (Doc. #88-1) ¶22. Once again, ICE chalks this up to its inability to use its computer system. Opposition (Doc. #88 pp. 5-6); Pavlik-Keenan Decl. (Doc. #88-1) ¶21; Declaration of Fernando Pineiro (Doc. #88-2) ¶14.

Next, Ms. Pavlik-Keenan's Declaration (Doc. #88-1 ¶25) contradicts testimony of ICE's 30(b)(6) witness, Mr. Pineiro. Ms. Pavlik-Keenan says ICE *does* refer "fugitive" FOIA requests to sister agencies; Mr. Pineiro says not. Doc. #85-2 at 78:22-79:15; 11:1-7; 35:8-12; 57:13-24.

Finally, even though ICE's "deny-access-to-FOIA" letters plainly state that ICE denies access to "fugitive" FOIA requesters, ICE argues that these letters somehow instead demonstrate that ICE *provides* "fugitive" requesters access to the FOIA practice. *See* Opposition (Doc. #88 §II-B.) This is a misstatement of fact, wrapped in a contradiction, inside a pile of nonsense. No litigant, especially an agency of the United States Government, should be permitted to brazenly assert that black is white.

Despite innumerable and material misstatements of fact, confessions to submitting incorrect sworn statements to this court, and new contradictions, ICE nevertheless contends that the Court should enter summary judgment in *ICE*'s favor. Opposition §II. This is flatly impermissible. A party moving for summary judgment bears the burden of establishing the absence of a genuine issue of material fact. *Anderson v. Liberty Lobby*, 477 U.S. 242, 247-50 (1986). ICE has fallen far, far short of carrying this burden, and instead has established that the salient facts it asserts are false, and that summary judgment in ICE's favor is accordingly unavailable, as a matter of law.

**II.     ICE's "FUGITIVE" FOIA PRACTICES ARE ILLEGAL AND MUST BE ENJOINED.**

Turning to the merits, ICE's arguments fare no better than its statement of "facts."

At the outset, as ICE's Opposition makes abundantly clear, the SOP is nothing more than a continuation of the "deny-access-to-FOIA" practice. Most telling is Ms. Pavlik-Keenan's Declaration, which asserts that since August, 2017, ICE ceased using the "deny-access-to-FOIA" practice, and began applying only the SOP. Yet somehow nobody in Ms. Pavlik-Keenan's 40-member staff—including Ms. Keenan herself—noticed that ICE kept on sending out the old "deny-access-to-FOIA" letters. The only way this is possible is that the alleged transition from one practice to another made no difference whatsoever to the *substance* of ICE's practice. Quite simply, from the first letter Ms. Smith received (September, 2015) to this very day, if ICE decides someone is a fugitive, pursuant to an overbroad definition that has no basis in FOIA or any other law, it is ICE's *practice* to refuse to provide responsive FOIA documents. Period.

Given this simple reality, the Court's task is simple: determine whether this practice is legal, by reviewing the FOIA statute. Since there is no such thing as a "fugitive" exception, ICE's practice is facially illegal, and it must be declared illegal and enjoined. ICE provides no grounds or basis for the Court to rule any other way.

**A.     Ms. Smith has standing to challenge ICE's fugitive FOIA practices.**

ICE argues, once again, that since ICE has never applied the *SOP* to Ms. Smith, she lacks standing to challenge the *SOP*. This argument is rebutted in detail in Ms. Smith's opposition to ICE's motion for summary judgment (Doc. #89 at pp.9-24), which Ms. Smith incorporates herein without repeating it in full. But ICE's "standing" argument is actually a mootness argument, which ICE cannot sustain because it has never halted its illegal practice (Ms. Pavlik-Keenan signed a

letter applying the practice in February, 2019, just three months ago), and because the SOP is nothing more than a continuation of the fundamental illegal conduct employed in the "deny-access-to-FOIA" practice. *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 174 (2000) (to establish mootness, government bears "formidable burden" of proving there is "no reasonable chance" that an allegedly discontinued practice will not be started up again); *Northeast Florida Assoc. Gen'l Contractors v. City of Jacksonville*, 508 U.S. 656, 662 (1993) (government's amendment of illegal practice that maintains original harms "in the same fundamental way" is a continuation of the original practice and does not moot a challenge). ICE's mootness challenge fails for these reasons.

      **B.    The "deny-access-to-FOIA" and the SOP are facially illegal.**

ICE apparently concedes that the "deny-access-to-FOIA" practice is illegal, and it offers no defense of that practice other than (falsely) asserting that ICE no longer employs it. Since Ms. Smith has amply (and irrefutably) demonstrated that ICE continues the illegal "deny-access-to-FOIA" practice to this day, this Court should declare the practice illegal and permanently enjoin ICE from further application of that illegal practice.

ICE's attempted defense of the SOP is equally flawed.

      **1.    "Categorical" withholding of all documents related to non-citizens ICE unilaterally classifies as "fugitives" is illegal.**

ICE attempts to transmute the allowable practice of withholding "categories of documents" into the illegal withholding of *all* documents from categories of *requesters*. ICE's attempt to transform withholding "categories of records" in to "categorical withholding from "fugitives" is as follows:

> In light of those legitimate needs, law enforcement agencies may withhold the *category* of law enforcement records that could reasonably be expected to interfere with enforcement proceedings (*i.e.*, may withhold "categorically").

Opposition (Doc. #88) pp. 25-26 (italics in original).

This is sleight of hand. Contrary to ICE's suggestion (Response [Doc. #84] at p.25), *NLRB v. Robbins Tire and Rubber Co.*, 437 U.S. 214 (1978) *never* uses the word "categorical," "categorically," or any variation of the word "categorical." Rather, in that case, the Supreme Court determines that when applying a 7(A) exemption, rather than examine every responsive document one by one, the NLRB may instead apply the 7(A) exemption to *categories* of records. Specifically, in *NLRB*, the Court held that "the entire category of NLRB witness statements"—a specific category of *documents*—could be withheld, instead of reviewed (and potentially withheld under the 7(A) exemption) one at a time. 437 U.S. at 243. ICE's other case, *DOJ v. Reporters Committee for Freedom of Press*, 489 U.S. 749 (1989) does not even address the proposition that sometimes agencies may withhold categories of documents instead of withholding/redacting them one by one. Rather, *DOJ* considers whether a *specific type* of document—rap sheets—may be withheld under Exemption 7(C) (which protects privacy interests) as a *category*, rather than requiring government agencies (and courts) to balance the privacy interest of the subject of the rap sheet against the public interest in disclosure on a case-by-case basis. 489 U.S. at 776-80.

Neither of these cases remotely endorses ICE's practice—which is to withhold *every* document in its possession, without even reviewing it first, related to a "fugitive" requester. As used in the SOP, ICE does *not* mean that it may withhold certain categories of records (like witness statements, as in the NLRB). Rather, ICE means that it refuses to release records *outright*—it "categorically" refuses to release any records at all—related to someone the agency deems a

"fugitive." This is stated clearly in ICE's March 28, 2019 letter to Mr. Faison (Doc. #89-4): "It is ICE's practice to *categorically* withhold records or information related to fugitive aliens *in their entirety* pursuant to 5 U.S.C. §552(b)(7)(A) and the fugitive disentitlement doctrine." (Emphasis added.) Indeed, as the SOP itself makes clear, at the "administrative level," (i.e., in ICE's initial response to a FOIA request) ICE does not review a single *document* before "categorically" withholding the records, but instead, makes the determination to withhold *all* of the documents based *solely* on the requester's status as a "fugitive." SOP (Doc. #85-1) §II. ICE has never identified any "category" of document it might "categorically" withhold—and its purported "template" letter applying the SOP, Doc. #88-4, does not even have a field to identify any "category" of records being withheld. Only upon an administrative appeal of the "categorical" denial of the FOIA request does someone actually look at the records to see if Exemption 7(A) might *actually* apply. SOP (Doc. #85-1) §III.

Both of ICE's fugitive FOIA practices—the "deny-access-to-FOIA" and the SOP—are flatly illegal. FOIA itself *requires* ICE to provide responsive documents, withholding only the records or portions of records that are explicitly exempt from release under an enumerated exemption. 5 U.S.C. §552(1), (2) and (3); *Trentadue v. Integrity Committee*, 501 F.3d 1215, 1225 (10th Cir. 2007); *NLRB, supra*, 437 U.S. at 221.

Moreover, ICE has demonstrated beyond the shadow of a doubt that ICE will not comply with the law of its own volition, absent intervention by this Court. For reasons unjustified by FOIA or any case interpreting FOIA, ICE has decided that those it deems "fugitives" will be denied disclosure of records to which they are entitled under law. This Court must act to require this government agency to comply with its legal duties.

### 2. ICE's illegal practices are not lawful applications of Exemption 7(A).

Not a single case or authority allows ICE, an executive agency, to apply the "fugitive disentitlement doctrine" as a basis for denying FOIA requests. Neither the plain language of FOIA, nor any other authority, permits ICE to use its own, self-determined classification of a FOIA request as related to a "fugitive" as a basis for denying FOIA requests. ICE is permitted, by the plain language of FOIA, to withhold "investigatory records compiled for law enforcement purposes, but only to the extent that the production of such records . . . would interfere with enforcement proceedings." *N.L.R.B.*, *supra,* 437 U.S. at 223 (quoting 5 U.S.C. §552(b)(7)(A)). If ICE wants to apply this exemption lawfully, it must review the *records* responsive to the FOIA request. Only by reviewing the records themselves may ICE properly apply Exemption 7(A) (or any other lawful exemption). Relying solely on the status of the requester and without reviewing the responsive records, there is simply no way for ICE to lawfully determine whether and to what extent Exemption 7(A) applies. In the SOP's *appeal* process, ICE provides for the proper review of the responsive records, including an examination of whether disclosure will impair legitimate law enforcement activities—but this is too late, because FOIA requires ICE to make this examination in its *initial* response. ICE's assertion that Exemption 7(A) permits it to withhold all records from "fugitives" without even reviewing the responsive documents is flatly incorrect, and must be rejected.

### 3. ICE's fugitive practices violate FOIA in other ways, too.

ICE halfheartedly argues that (a) it does, in fact, refer FOIA requests to sister agencies, and (b) that its fugitive practices do not eliminate the statutory administrative appeal. Opposition (Doc. #85) at pp. 33-34. ICE is wrong on both counts.

First, ICE's 30(b)(6) witness, Mr. Pineiro, stated in his deposition that ICE does not "help fugitives" by referring their FOIA requests to sister agencies. *See* Plaintiff's Motion for Summary Judgment (Doc. #85) at Fact #27. Now ICE has a new witness and a new story, namely, that ICE *does* refer FOIA requests related to "fugitives" to sister agencies (Pavlik-Keenan Decl. [Doc. #88-1] at ¶25), which contradicts the agency's previous testimony on the same issue. This is gamesmanship at its worst. The entire purpose of discovery is to develop the factual record. ICE should not be permitted to create a "sham facts issue" by giving one version of evidence during discovery, and then submitting contradictory affidavits to forestall summary judgment. *See Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 973 (10th Cir. 2001) (district court may exercise discretion to disregard affidavit submitted to avoid summary judgment that contradicted previous testimony). This court may, in its discretion, disregard the subsequent, contradictory testimony of Ms. Pavlik-Keenan (Doc. #88-1), and enter summary judgment based on the facts recounted in the original 30(b)(6) deposition. *Ralston*.

Second, ICE argues that its fugitive FOIA practices do not eliminate the statutory FOIA administrative appeal, since (according to ICE), on various occasions the administrative appeal under the SOP reversed the original "deny-access-to-FOIA" or SOP "categorical withholding" decision. ICE's argument first rests on the notion that "categorical withholding" from a "fugitive" requester is permissible; it is not, as plaintiff has shown repeatedly. Second, ICE argues that its SOP's administrative appeal process works as designed: "[W]hen those requesters [whose request was illegally withheld under ICE's fugitive practice] appealed, OPLA reversed the original decisions, and directed ICE FOIA to re-process and release responsive, non-exempt documents…This is how the administrative appeals process is supposed to work." Opposition

(Doc. #85) at p.34. Wrong. The administrative appeals process is supposed to correct *errors* made by the agency; here, the administrative appeals process does not correct *errors*, but deliberate illegal withholdings pursuant to ICE's official SOP. If the administrative appeal process follows the law, *every single FOIA denial* under the SOP (and the "deny-access-to-FOIA" process) will be reversed, and OPLA will remand to ICE to attempt to apply *lawful* FOIA exemptions instead of the illegal ones. But what if ICE makes a mistake in applying Exemption 7(A) in this post-appeal remand? The requester has already exhausted her administrative remedies, just to correct the application of the illegal SOP, and the requester's sole recourse is to file an expensive federal lawsuit. Opposition at 34. ICE is obligated to follow FOIA as written; instead, its two-step process *mandates* an illegal initial response, followed by an administrative appeal to correct the illegal mandate. This practice effectively eliminates the administrative appeal, in direct violation of FOIA.

### III. THIS COURT MUST DECLARE ICE's FUGITIVE PRACTICES ILLEGAL AND PERMANENTLY ENJOIN THEM.

Last, ICE argues that this Court lacks authority to enjoin the illegal fugitive practices outright, and may only enjoin ICE from applying the illegal practices to Ms. Smith. Thus, ICE contends it is free to continue those illegal practices as to any other similarly-situated requester, and every requester subjected to ICE's illegal practices must obtain an individualized injunction. ICE is flatly wrong. This Court has broad authority to declare ICE's practices illegal and permanently enjoin them altogether.

ICE's argument relies on dicta from cases that are easily distinguishable from this one. First, ICE cites *American Center for Law and Justice v. U.S. Dept. of State*, 249 F.Supp.3d 275

(D.D.C. 2017).[1] Far from holding that courts lack power to permanently enjoin illegal FOIA practices, this case explores the contours of "policy-or-practice" claims, which originated with *Payne Enters., Inc. v. U.S.*, 827 F.2d 486 (D.C. Cir. 1988). *See generally American Center*, 249 F.Supp.3d at 281. *American Center* does not in any way hold or imply that courts lack authority to enjoin illegal FOIA practices outright. Instead, *American Center* discusses the evolution of the requirements for a "policy and practice" claim since *Payne*, and concludes that "a plaintiff must plead (1) some policy or practice that (2) results in a repeated violation of FOIA." 249 F.Supp.3d at 282. Ms. Smith plainly satisfies this requirement—and ICE admits that its "deny-access-to-FOIA" and the SOP are both "practices." The plaintiff in *American Center,* however, failed to allege a "policy or practice" sufficient to sustain a *Payne* claim. *American Center*'s discussion of courts' authority to enjoin practices is dictum, since there is no practice alleged sufficient to sustain a claim.

Nevertheless, ICE hangs its hat on language from *Citizens for Responsibility & Ethics in Wash. v. DOJ*, 856 F.3d 1235 (D.C. Cir. 2017) ("*CREW*"), which it confusingly breaks up in its parenthetical for that case appearing at page 39 of its Opposition. The full sentence is as follows: "Relief for such claims, however, is limited to relieving the injury suffered by the complainant, as opposed to remedy[ing] any injury suffered by the general public." But this quote has no application here. *CREW* included a claim for an injunction "mandating that an agency 'make available for public inspection' documents subject to the reading-room provision." *CREW*, 846

---

[1] ICE incorrectly cites this case as ***ACLU*** *v. U.S. Dep't of State,* Opposition (Doc. #88) at p. 38. The plaintiff, American Center for Law and Justice (ACLJ), is a different organization from the American Civil Liberties Union (ACLU), a non-party to the case.

F.3d 1235 at 1243. This is the claim referred to as "such claims" in the quote from the case. This form of relief did not redress an injury to CREW, but instead sought to confer a benefit on the general public, namely a *public* right to inspect certain documents. Ms. Smith makes no such claim, and seeks no form of relief benefitting the general public, but instead seeks only to enjoin the illegal practices—which harmed her directly.

Moreover, as *CREW* itself holds, district courts may issue injunctions[2] that benefit non-party FOIA requesters as well as the plaintiff: "Following *Renegotiation Board [v. Bannercraft Clothing Co.*, 415 U.S. 1 (1974)], *Payne*, and these other decisions, we have little trouble concluding that a district court possesses authority to grant the first two categories of relief CREW seeks—*a prospective injunction* with an affirmative duty to disclose." *CREW*, 846 at 1242. In *Payne*, *Long,* and numerous other authorities cited in plaintiff's Response (Doc. #89) at pp.10; 27-30, courts have the recognized authority to *permanently enjoin* illegal FOIA practices—not just as to the individual plaintiff, but outright.

Likewise, courts have long recognized that nationwide injunctions are appropriate where the government is engaged in a practice that violates the law. For example, in *Wirtz v. Baldor Elec. Co.*, 337 F.2d 518, 533–34 (D.C. Cir. 1963), the D.C. Circuit found that the Secretary of Labor's determination under the Walsh-Healey Act was without substantial evidence and therefore illegal. The Secretary made the same argument that ICE does here—that any injunctive relief should be applied solely to the individual plaintiffs who could demonstrate standing to bring claims, rather

---

[2] In arguing that the scope of the requested relief is too broad, ICE objects to a declaratory judgment about the deny-access-to-FOIA practice (Opposition at 39). ICE's argument is simply a repeat of its standing/mootness argument, which fails for the reasons already discussed at length.

than simply enjoining the Secretary from enforcing his illegal determination outright. Reasoning that *every* party who came before the Court would be entitled to the same relief, the Court determined that complete injunctive relief was appropriate—not the piecemeal approach ICE urges. 337 F.2d at 533-35. Indeed, the Supreme Court recently rejected arguments similar to the ones ICE makes here when it maintained in place, pending review on the merits, a nationwide preliminary injunction on the president's travel ban. Instead of narrowing the preliminary injunction so that it benefited only the parties before the court, it maintained a broader order that provided relief "with respect to parties similarly situated to [plaintiffs]." *Trump v. Int'l Refugee Assistance Project*, 137 S.Ct. 2080, 2088 (2017).

      Ms. Smith's case is not one whose facts and equities lend themselves to an injunction barring enforcement of ICE's illegal practices only against Ms. Smith. *Every* plaintiff to whom ICE applies its illegal practices will be entitled to the same relief, and ICE has no justification—other than the wish to continue its illegal practices—for its position that every single FOIA requester subjected to its practice must file an identical federal lawsuit. The courts are charged with upholding the rule of law without hearing the same case 333 times (as ICE's urging would have necessitated since July, 2017), and *Bannercraft* unmistakably empowers this Court to do just that. A declaration that ICE's fugitive practices, and permanent injunctions against ICE's "deny-access-to-FOIA" practice as well as "categorical withholding" under its SOP are appropriate and warranted under the circumstances of this case—and indeed, no other relief will sufficiently redress ICE's ongoing illegal practices.

## CONCLUSION

ICE's fugitive practices, both the "deny-access-to-FOIA" practice and the SOP, directly and materially violate FOIA, and must be declared illegal and permanently enjoined. ICE has demonstrated, through its repeated false statements and erroneous legal positions presented to this Court, that it will never comply with the law unless explicitly ordered to do so by this Court. Nothing in FOIA or anywhere else permits ICE to deny or categorically withhold records related to "fugitives," and unless permanently enjoined from its illegal practices, Ms. Smith will be at substantial risk that ICE will illegally deny her requests on behalf of virtually any of her non-citizen clients—any of whom might be labeled as a "fugitive" under ICE's overbroad and self-serving definition.

On the undisputed facts submitted to the Court, the Court must enter judgment in favor of Ms. Smith and against ICE, and order the relief requested in Ms. Smith's Motion for Summary Judgment (Doc. #85). Summary judgment may not enter in favor of ICE, as ICE has failed to carry its burden to show the absence of any genuine issue of material fact in its motion or the supporting materials it submitted—which show that ICE continues its illegal practice, both in its old "deny-access-to-FOIA" form and in its newly-worded, but identically effective, SOP. Fundamentally, ICE's fugitive practices are not legitimate applications of Exemption 7(A) (or any other lawful exemption), but illegal denials of FOIA rights assured by an Act of Congress. Since ICE will not halt these violations of law voluntarily, this Court must act instead.

//

//

//

DATED: May 17, 2019

Respectfully Submitted,

DANIEL J. CULHANE LLC

*s/* Daniel J. Culhane

---
Daniel J. Culhane
1600 Broadway, Suite 1600
Denver, CO 80202
Telephone: 303.945.2070
Facsimile: 720.420.5998
Dan@CulhaneLaw.com
*AS COOPERATING ATTORNEY FOR THE ACLU FOUNDATION OF COLORADO*

Mark Silverstein
Sara R. Neel

AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF COLORADO
303 E. 17th Avenue, Suite 350
Denver, CO 80203
Telephone: 720.402.3107
Facsimile: 303.777.1773
msilverstein@aclu-co.org
sneel@aclu-co.org

**Attorneys for Plaintiff**

## CERTIFICATE OF SERVICE

I certify that on May 17, 2019, I served a copy of the foregoing Motion for Partial Summary Judgment, together with all exhibits and attachments thereto on defendants' counsel of record via electronic service.

s/ Daniel J. Culhane