APPEAL,JD1,MJ CIV PP,NDISPO,TERMED

# U.S. District Court – District of Colorado
## District of Colorado (Denver)
## CIVIL DOCKET FOR CASE #: <u>1:16–cv–02137–WJM–KLM</u>

| | |
|---|---|
| Smith v. U.S. Immigration and Customs Enforcement et al | Date Filed: 08/24/2016 |
| Assigned to: Judge William J. Martinez | Date Terminated: 12/16/2019 |
| Referred to: Magistrate Judge Kristen L. Mix | Jury Demand: None |
| Cause: 05:552 Freedom of Information Act | Nature of Suit: 895 Freedom of Information Act of 1974 |
| | Jurisdiction: U.S. Government Defendant |

**Plaintiff**

**Jennifer M. Smith**             represented by   **Mark Silverstein**
American Civil Liberties Union–Denver
303 East 17th Street
Suite 350
Denver, CO 80203
303–777–5482
Fax: 303–777–1773
Email: <u>msilverstein@aclu–co.org</u>
*ATTORNEY TO BE NOTICED*

**Sara R. Neel**
American Civil Liberties Union–Denver
303 East 17th Street
Suite 350
Denver, CO 80203
303–777–5482
Fax: 303–777–1773
Email: <u>sneel@aclu–co.org</u>
*ATTORNEY TO BE NOTICED*

**Daniel James Culhane**
Daniel J. Culhane, LLC
1600 Broadway
#1400
Denver, CO 80202
303–945–2070
Fax: 303–333–7127
Email: <u>Dan@CulhaneLaw.com</u>
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**U.S. Immigration and Customs Enforcement**             represented by   **David Z. Moskowitz**
U.S. Attorney's Office–Denver
1801 California Street

Suite 1600
Denver, CO 80202
303−454−0328
Email: david.moskowitz@usdoj.gov
*ATTORNEY TO BE NOTICED*

**Ian J. Kellogg**
U.S. Attorney's Office−Denver
1801 California Street
Suite 1600
Denver, CO 80202
303−454−0100
Email: ian.kellogg@usdoj.gov
*ATTORNEY TO BE NOTICED*

**Defendant**

| | | |
|---|---|---|
| **U.S. Citizenship and Immigration Services** *TERMINATED: 01/12/2017* | represented by | **Ian J. Kellogg** (See above for address) *ATTORNEY TO BE NOTICED* |

| Date Filed | # | Page | Docket Text |
|---|---|---|---|
| 08/24/2016 | 1 | | COMPLAINT against U.S. Citizenship and Immigration Services, U.S. Immigration and Customs Enforcement (Filing fee $ 400,Receipt Number 1082−5125282)Attorney Daniel James Culhane added to party Jennifer M Smith(pty:pla), filed by Jennifer M Smith.(Culhane, Daniel) (Entered: 08/24/2016) |
| 08/24/2016 | 2 | | NOTICE re 1 Complaint, *Civil Cover Sheet* by Plaintiff Jennifer M Smith (Attachments: # 1 Attachment/Attorneys of Record)(Culhane, Daniel) (Entered: 08/24/2016) |
| 08/24/2016 | 3 | | SUMMONS REQUEST as to U.S. Immigration and Customs Enforcement re 1 Complaint, by Plaintiff Jennifer M Smith. (Culhane, Daniel) (Entered: 08/24/2016) |
| 08/24/2016 | 4 | | SUMMONS REQUEST as to U.S. Citizenship and Immigration Services re 1 Complaint, by Plaintiff Jennifer M Smith. (Culhane, Daniel) (Entered: 08/24/2016) |
| 08/24/2016 | 5 | | Case assigned to Magistrate Judge Kristen L. Mix.Text Only Entry.(amenz, ) (Entered: 08/24/2016) |
| 08/24/2016 | 6 | | SUMMONS issued by Clerk. (Attachments: # 1 Summons, # 2 Magistrate Judge Consent Form) (amenz, ) (Entered: 08/24/2016) |
| 08/24/2016 | 7 | | NOTICE of Entry of Appearance *for Mark Silverstein* by Mark Silverstein on behalf of Jennifer M. SmithAttorney Mark Silverstein added to party Jennifer M. Smith(pty:pla) (Silverstein, Mark) (Entered: 08/24/2016) |
| 08/24/2016 | 8 | | NOTICE of Entry of Appearance *for Sara R. Neel* by Sara R. Neel on behalf of Jennifer M. SmithAttorney Sara R. Neel added to party Jennifer M. Smith(pty:pla) (Neel, Sara) (Entered: 08/24/2016) |

| 09/13/2016 | 9 | | ORDER SETTING SCHEDULING/PLANNING CONFERENCE by Magistrate Judge Kristen L. Mix on 9/13/16. Scheduling Conference set for 1/9/2017 11:00 AM in Courtroom A401 before Magistrate Judge Kristen L. Mix. (Attachments: # 1 Attachment 1, # 2 Attachment 2) (lgale, ) (Entered: 09/13/2016) |
|---|---|---|---|
| 09/19/2016 | 10 | | NOTICE of Entry of Appearance by Ian J. Kellogg on behalf of All Defendants Attorney Ian J. Kellogg added to party U.S. Citizenship and Immigration Services(pty:dft), Attorney Ian J. Kellogg added to party U.S. Immigration and Customs Enforcement(pty:dft) (Kellogg, Ian) (Entered: 09/19/2016) |
| 09/19/2016 | 11 | | Unopposed MOTION for Extension of Time to File Answer or Otherwise Respond re 1 Complaint, by Defendants U.S. Citizenship and Immigration Services, U.S. Immigration and Customs Enforcement. (Kellogg, Ian) (Entered: 09/19/2016) |
| 09/30/2016 | 12 | | MINUTE ORDER granting 11 Motion for Extension of Time to Respond to Complaint. Defendants shall respond to Plaintiff's Complaint on or before October 17, 2016, by Magistrate Judge Kristen L. Mix on 9/30/16.(sgrim) (Entered: 09/30/2016) |
| 10/13/2016 | 13 | | Unopposed MOTION for Extension of Time to File Answer or Otherwise Respond re 1 Complaint, by Defendants U.S. Citizenship and Immigration Services, U.S. Immigration and Customs Enforcement. (Kellogg, Ian) (Entered: 10/13/2016) |
| 10/18/2016 | 14 | | MINUTE ORDER granting 13 Motion for Extension of Time to Answer or Otherwise Respond U.S. Citizenship and Immigration Services answer due 10/31/2016; U.S. Immigration and Customs Enforcement answer due 10/31/2016. by Magistrate Judge Kristen L. Mix on 10/18/2016.(jgonz, ) Modified to correct case caption on 10/19/2016 (jgonz, ). (Entered: 10/19/2016) |
| 10/31/2016 | 15 | | MOTION to Dismiss for Lack of Jurisdiction , MOTION to Dismiss for Failure to State a Claim by Defendants U.S. Citizenship and Immigration Services, U.S. Immigration and Customs Enforcement. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D)(Kellogg, Ian) (Entered: 10/31/2016) |
| 10/31/2016 | 16 | | Utility Setting/Resetting Deadlines/Hearings: Consent Form due by 12/15/2016 pursuant to the filing of 15 Motion to Dismiss. Text Only Entry. (jgonz, ) (Entered: 11/01/2016) |
| 11/21/2016 | 17 | | Unopposed MOTION for Extension of Time to File Response/Reply as to 15 MOTION to Dismiss for Lack of Jurisdiction MOTION to Dismiss for Failure to State a Claim by Plaintiff Jennifer M. Smith. (Culhane, Daniel) (Entered: 11/21/2016) |
| 11/22/2016 | 18 | | MINUTE ORDER by Magistrate Judge Kristen L. Mix on 11/22/16. Unopposed Motion for Extension of Time to File Response to Motion to Dismiss 17 is GRANTED.(lgale, ) (Entered: 11/22/2016) |
| 12/12/2016 | 19 | | RESPONSE to 15 MOTION to Dismiss for Lack of Jurisdiction MOTION to Dismiss for Failure to State a Claim filed by Plaintiff Jennifer M. Smith. (Attachments: # 1 Affidavit Declaration of Jennifer M. Smith, # 2 Exhibit Exh. A to Smith Declaration)(Culhane, Daniel) (Entered: 12/12/2016) |
| 12/15/2016 | 20 | | |

| | | | |
|---|---|---|---|
| | | | CONSENT to Jurisdiction of Magistrate Judge by Plaintiff Jennifer M. Smith All parties do not consent.. (Culhane, Daniel) (Entered: 12/15/2016) |
| 12/16/2016 | 21 | | MINUTE ORDER re: 20 Consent/Non–Consent to Jurisdiction of Magistrate Judge filed by Jennifer M. Smith. This case shall be assigned to a District Judge under D.C.COLO.LCivR 40.1(c)(8) and D.C.COLO.LCivR 40.1(a), by Magistrate Judge Kristen L. Mix on 12/16/2016. (jgonz, ) (Entered: 12/16/2016) |
| 12/16/2016 | 22 | | CASE REASSIGNED pursuant to 21 Minute Order, 20 Consent/Non–Consent to Jurisdiction of Magistrate Judge. All parties do not consent. This case is reassigned to Judge Wiley Y. Daniel. All future pleadings should be designated as 16–cv–02137–WYD. (Text Only Entry) (jgonz, ) (Entered: 12/16/2016) |
| 12/19/2016 | 23 | | Unopposed MOTION for Extension of Time to File Response/Reply as to 15 MOTION to Dismiss for Lack of Jurisdiction MOTION to Dismiss for Failure to State a Claim by Defendants U.S. Citizenship and Immigration Services, U.S. Immigration and Customs Enforcement. (Attachments: # 1 Proposed Order (PDF Only))(Kellogg, Ian) (Entered: 12/19/2016) |
| 12/20/2016 | 24 | | MEMORANDUM RETURNING CASE for Reassignment by Senior Judge Wiley Y. Daniel (evana, ) (Entered: 12/20/2016) |
| 12/20/2016 | 25 | | CASE REASSIGNED. pursuant to 24 Memorandum Returning Case. This case is reassigned to Judge William J. Martinez. All future pleadings should be designated as 16–cv–02137 WJM. (Text Only Entry) (evana, ) (Entered: 12/20/2016) |
| 12/20/2016 | 26 | | ORDER REFERRING CASE to Magistrate Judge Kristen L. Mix. Magistrate Judge Mix, or such other Magistrate Judge who may in the future be reassigned this case, is designated to conduct NDISPO proceedings pursuant to 28 U.S.C. § 636(b)(1)(A) and (B) and Fed.R.Civ.P. 72(a) and (b). Court sponsored alternative dispute resolution is governed by D.C.COLO.LCivR 16.6. On the recommendation or informal request of the Magistrate Judge or on the request of the parties by motion, the court may direct the parties to engage in an early neutral evaluation, a settlement conference, or another alternative dispute resolution proceeding. SO ORDERED by Judge William J. Martinez on 12/20/2016. Text Only Entry (wjmsec, ) Modified to correct judge association on 12/21/2016 (cthom, ). (Entered: 12/20/2016) |
| 12/21/2016 | 27 | | ORDER: This matter is before the Court on Defendants' Motion to Dismiss 15 . This Motion is STRICKEN for failure to comply with WJM Revised Practice Standard III.D.1 (as revised effective December 1, 2016), which requires counsel to confer prior to filing a motion pursuant to Rule 12(b)(6), in order to discuss whether the alleged deficiency in the operative complaint can be cured by amendment, and to exercise their **best efforts** to stipulate to such amendment. Because the Motion contains no statement with respect to whether such a conferral occurred in this case, it is stricken without prejudice to refiling no later than **December 30, 2016** in conformity with the Court's Revised Practice Standards. Defendants' Unopposed Motion for Extension of Time to File Reply in Support of Motion to Dismiss 23 is DENIED AS MOOT. SO ORDERED by Judge William J. Martinez on 12/21/2016. Text Only Entry (wjmsec, ) (Entered: 12/21/2016) |
| 12/21/2016 | 28 | | MINUTE ORDER by Magistrate Judge Kristen L. Mix on 12/21/2016. The parties shall appear for the Scheduling/Planning Conference set for January 9, |

| | | | |
|---|---|---|---|
| | | | 2017, at 11:00 a.m. as previously scheduled, and shall be prepared to discuss case management and discovery. However, the parties need not submit a proposed Scheduling Order. (jgonz, ) (Entered: 12/21/2016) |
| 12/23/2016 | 29 | | Joint STATUS REPORT by Defendants U.S. Citizenship and Immigration Services, U.S. Immigration and Customs Enforcement. (Kellogg, Ian) (Entered: 12/23/2016) |
| 01/09/2017 | 30 | | MINUTE ENTRY for Scheduling Conference held before Magistrate Judge Kristen L. Mix on 1/9/2017. FTR: KLM Courtroom A401. (lgale, ) (Entered: 01/09/2017) |
| 01/12/2017 | 31 | | NOTICE of Filing Amended Pleading –*First Amended Complaint*– by Plaintiff Jennifer M. Smith (Attachments: # 1 Exhibit First Amended Complaint Marked to Show Revisions)(Culhane, Daniel) (Entered: 01/12/2017) |
| 01/12/2017 | 32 | | AMENDED COMPLAINT *(First)* against U.S. Immigration and Customs Enforcement, filed by Jennifer M. Smith. (Attachments: # 1 Exhibit 1: September 3, 2015 ICE Letter, # 2 Exhibit 2: September 27, 2016 ICE Letter)(Culhane, Daniel) (Entered: 01/12/2017) |
| 01/12/2017 | 33 | | Party U.S. Citizenship and Immigration Services terminated pursuant to 32 Amended Complaint. Text Only Entry (cthom, ) (Entered: 01/12/2017) |
| 01/26/2017 | 34 | | NOTICE of Entry of Appearance by David Z. Moskowitz on behalf of U.S. Immigration and Customs EnforcementAttorney David Z. Moskowitz added to party U.S. Immigration and Customs Enforcement(pty:dft) (Moskowitz, David) (Entered: 01/26/2017) |
| 01/26/2017 | 35 | | MOTION to Dismiss for Lack of Jurisdiction *First Amended Complaint* by Defendant U.S. Immigration and Customs Enforcement. (Moskowitz, David) (Entered: 01/26/2017) |
| 02/01/2017 | 36 | | NOTICE of Change of Address/Contact Information by Ian J. Kellogg (Kellogg, Ian) (Entered: 02/01/2017) |
| 02/01/2017 | 37 | | NOTICE of Change of Address/Contact Information by David Z. Moskowitz (Moskowitz, David) (Entered: 02/01/2017) |
| 02/15/2017 | 38 | | Unopposed MOTION for Extension of Time to File Response/Reply as to 35 MOTION to Dismiss for Lack of Jurisdiction *First Amended Complaint* by Plaintiff Jennifer M. Smith. (Culhane, Daniel) (Entered: 02/15/2017) |
| 02/15/2017 | 39 | | ORDER granting Plaintiff's Unopposed Motion for Extension of Time to File Response to Motion to Dismiss 38 . Plaintiff is granted leave, for good cause shown, to file said Response on or before **February 22, 2017**. SO ORDERED by Judge William J. Martinez on 2/15/2017. Text Only Entry (wjmsec, ) (Entered: 02/15/2017) |
| 02/22/2017 | 40 | | RESPONSE to 35 MOTION to Dismiss for Lack of Jurisdiction *First Amended Complaint and Request for Oral Argument* filed by Plaintiff Jennifer M. Smith. (Culhane, Daniel) (Entered: 02/22/2017) |
| 03/08/2017 | 41 | | REPLY to Response to 35 MOTION to Dismiss for Lack of Jurisdiction *First Amended Complaint* filed by Defendant U.S. Immigration and Customs Enforcement. (Moskowitz, David) (Entered: 03/08/2017) |

| 03/13/2017 | 42 | | MOTION for Leave to *Take Limited Discovery* by Plaintiff Jennifer M. Smith. (Culhane, Daniel) (Entered: 03/13/2017) |
| 03/14/2017 | 43 | | ORDER: Before the Court is Plaintiff's Motion for Leave to Take Limited Discovery 42 . This motion is STRICKEN for failure to include a D.C.COLO.LCivR 7.1(a) certificate of conferral. In any event, this motion would have been denied without prejudice at this stage because the Court must first resolve Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction 35 before it can decide whether discovery is appropriate. The Court will resolve Defendant's Motion to Dismiss in due course, and, if that resolution favors Plaintiff, Plaintiff may re–file her motion for discovery, assuming compliance with D.C.COLO.LCivR 7.1(a). SO ORDERED by Judge William J. Martinez on 03/14/2017. Text Only Entry (wjmlc1) (Entered: 03/14/2017) |
| 03/20/2017 | 44 | | NOTICE OF DISCLOSURE by Judge Martinez. (cthom, ) (Entered: 03/20/2017) |
| 04/05/2017 | 45 | | ORDER denying 35 Motion to Dismiss for Lack of Subject Matter Jurisdiction. If Smith still wishes to take discovery, she must renew her motion in that regard(see ECF No. 42 ) no later than April 14, 2017, and must include a proper D.C.COLO.LCivR 7.1(a) certificate of conferral in that motion. ORDERED by Judge William J. Martinez on 4/5/2017. (cthom, ) (Entered: 04/05/2017) |
| 04/14/2017 | 46 | | MOTION for Discovery *Limited Jurisdictional Discovery* by Defendant U.S. Immigration and Customs Enforcement. (Kellogg, Ian) (Entered: 04/14/2017) |
| 04/14/2017 | 47 | | Renewed MOTION for Leave to *Take Limited Discovery* by Plaintiff Jennifer M. Smith. (Culhane, Daniel) (Entered: 04/14/2017) |
| 04/19/2017 | 48 | | ANSWER to 32 Amended Complaint by U.S. Immigration and Customs Enforcement.(Kellogg, Ian) (Entered: 04/19/2017) |
| 05/05/2017 | 49 | | RESPONSE to 46 MOTION for Discovery *Limited Jurisdictional Discovery* filed by Plaintiff Jennifer M. Smith. (Attachments: # 1 Affidavit Declaration of Jennifer M. Smith)(Culhane, Daniel) (Entered: 05/05/2017) |
| 05/05/2017 | 50 | | RESPONSE to 47 Renewed MOTION for Leave to *Take Limited Discovery* filed by Defendant U.S. Immigration and Customs Enforcement. (Moskowitz, David) (Entered: 05/05/2017) |
| 05/10/2017 | 51 | | ORDER Regarding Discovery Motions. Granting in part and denying in part 46 Motion for Discovery; granting in part and denying in part 47 Motion for Leave. ORDERED by Judge William J. Martinez on 5/10/2017. (angar, ) (Entered: 05/10/2017) |
| 05/19/2017 | 52 | | MINUTE ORDER by Magistrate Judge Kristen L. Mix on 5/19/17 re: 51 Order Regarding Discovery Motions. Scheduling Conference set for 6/8/2017 10:30 AM in Courtroom A401 before Magistrate Judge Kristen L. Mix. (lgale, ) (Entered: 05/19/2017) |
| 06/05/2017 | 53 | | Proposed Scheduling Order by Defendant U.S. Immigration and Customs Enforcement. (Kellogg, Ian) (Entered: 06/05/2017) |
| 06/08/2017 | 54 | | MINUTE ENTRY for Scheduling Conference held before Magistrate Judge Kristen L. Mix on 6/8/2017. Status Report due by 9/5/2017. FTR: KLM Courtroom A401. (Attachments: # 1 Discovery Procedures and Requirements |

| | | | |
|---|---|---|---|
| | | | of Practice) (lgale, ) (Entered: 06/08/2017) |
| 06/08/2017 | 55 | | ABBREVIATED SCHEDULING ORDER: by Magistrate Judge Kristen L. Mix on 6/8/17. (lgale, ) (Entered: 06/08/2017) |
| 06/12/2017 | 56 | | Stipulated MOTION for Discovery *Order under F.R.E. 502(d)* by Plaintiff Jennifer M. Smith. (Culhane, Daniel) (Entered: 06/12/2017) |
| 06/12/2017 | 57 | | MEMORANDUM regarding 56 Stipulated MOTION for Discovery *Order under F.R.E. 502(d)* filed by Jennifer M. Smith. Motions referred to Magistrate Judge Kristen L. Mix by Judge William J. Martinez on 6/12/2017. Text Only Entry (wjmsec, ) (Entered: 06/12/2017) |
| 06/13/2017 | 58 | | MINUTE ORDER by Magistrate Judge Kristen L. Mix on 6/13/17. 56 Stipulated Order Under F.R.E. 502(d) is GRANTED. (lgale, ) (Entered: 06/13/2017) |
| 06/13/2017 | 59 | | Stipulated Order Under F.R.E. 502(d) by Magistrate Judge Kristen L. Mix on 6/13/17. (lgale, ) (Entered: 06/13/2017) |
| 08/17/2017 | 60 | | Unopposed MOTION for Leave to *Amend Scheduling Order and (Opposed) Motion for Leave to Take 30(b)(6) Deposition of ICE* 55 Scheduling Order by Plaintiff Jennifer M. Smith. (Attachments: # 1 Exhibit A part 1––ICE Discovery responses, # 2 Exhibit A–2––ICE "new" SOP, # 3 Proposed Document Notice of 30(b)(6) deposition)(Culhane, Daniel) (Entered: 08/17/2017) |
| 08/18/2017 | 61 | | MEMORANDUM regarding 60 Unopposed MOTION for Leave to *Amend Scheduling Order and (Opposed) Motion for Leave to Take 30(b)(6) Deposition of ICE* 55 Scheduling Order filed by Jennifer M. Smith. Motions referred to Magistrate Judge Kristen L. Mix by Judge William J. Martinez on 8/18/2017. Text Only Entry (wjmsec, ) (Entered: 08/18/2017) |
| 08/29/2017 | 62 | | Joint MOTION to Amend/Correct/Modify 55 Scheduling Order by Plaintiff Jennifer M. Smith. (Culhane, Daniel) (Entered: 08/29/2017) |
| 08/29/2017 | 63 | | MEMORANDUM regarding 62 Joint MOTION to Amend/Correct/Modify 55 Scheduling Order filed by Jennifer M. Smith. Motions referred to Magistrate Judge Kristen L. Mix by Judge William J. Martinez on 8/29/2017. Text Only Entry (wjmsec, ) (Entered: 08/29/2017) |
| 08/31/2017 | 64 | | TRANSCRIPT of Rule 16(b) Scheduling Conference held on June 8, 2017 before Magistrate Judge Mix. Pages: 1–10. **NOTICE – REDACTION OF TRANSCRIPTS: Within seven calendar days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the party's intent to redact personal identifiers from the electronic transcript of the court proceeding. If a Notice of Intent to Redact is not filed within the allotted time, this transcript will be made electronically available after 90 days. Please see the Notice of Electronic Availability of Transcripts document at www.cod.uscourts.gov.** Transcript may only be viewed at the court public terminal or purchased through the Court Reporter/Transcriber prior to the 90 day deadline for electronic posting on PACER. (Stevens–Koenig Reporting, ) (Entered: 08/31/2017) |
| 09/05/2017 | 65 | | |

| | | | |
|---|---|---|---|
| | | | MINUTE ORDER by Magistrate Judge Kristen L. Mix on 9/5/17. Motion for Leave to Take 30(b)(6) Deposition of U.S. Immigration and Customs Enforcement; Unopposed Motion to Amend the Scheduling Order 60 is DENIED without prejudice in part, and DENIED as moot in part. (lgale, ) (Entered: 09/05/2017) |
| 09/05/2017 | 66 | | Joint STATUS REPORT *by Plaintiff Jennifer Smith and* by Defendant U.S. Immigration and Customs Enforcement. (Moskowitz, David) (Entered: 09/05/2017) |
| 09/06/2017 | 67 | | MINUTE ORDER by Magistrate Judge Kristen L. Mix on 9/6/17. A Telephonic Discovery Hearing set for 9/8/2017 11:30 AM in Courtroom A401 before Magistrate Judge Kristen L. Mix. (lgale, ) (Entered: 09/06/2017) |
| 09/08/2017 | 68 | | MINUTE ENTRY for Discovery Hearing held before Magistrate Judge Kristen L. Mix on 9/8/2017. Joint Motion to Amend Scheduling Order [#2] is granted. FTR: KLM Courtroom A401. (lgale, ) (Entered: 09/08/2017) |
| 09/22/2017 | 69 | | Amended MOTION for Discovery *for Leave to Take 30(b)(6) Deposition* by Plaintiff Jennifer M. Smith. (Attachments: # 1 Exhibit Plaintiff Discovery Responses, # 2 Exhibit Plaintiff Discovery Responses Attachment, # 3 Proposed Notice of 30(b)(6) Deposition)(Culhane, Daniel) (Entered: 09/22/2017) |
| 09/22/2017 | 70 | | MEMORANDUM regarding 69 Amended MOTION for Discovery *for Leave to Take 30(b)(6) Deposition* filed by Jennifer M. Smith. Motions referred to Magistrate Judge Kristen L. Mix by Judge William J. Martinez on 9/22/2017. Text Only Entry (wjmsec, ) (Entered: 09/22/2017) |
| 09/25/2017 | 71 | | TRANSCRIPT of Discovery Conference held on September 8, 2017 before Magistrate Judge Mix. Pages: 1–27. **NOTICE – REDACTION OF TRANSCRIPTS: Within seven calendar days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the party's intent to redact personal identifiers from the electronic transcript of the court proceeding. If a Notice of Intent to Redact is not filed within the allotted time, this transcript will be made electronically available after 90 days. Please see the Notice of Electronic Availability of Transcripts document at www.cod.uscourts.gov.** Transcript may only be viewed at the court public terminal or purchased through the Court Reporter/Transcriber prior to the 90 day deadline for electronic posting on PACER. (Patterson Transcription Company, ) (Entered: 09/25/2017) |
| 10/06/2017 | 72 | | RESPONSE to 69 Amended MOTION for Discovery *for Leave to Take 30(b)(6) Deposition* filed by Defendants U.S. Citizenship and Immigration Services, U.S. Immigration and Customs Enforcement. (Attachments: # 1 Declaration of Fernando Pineiro)(Kellogg, Ian) (Entered: 10/06/2017) |
| 06/21/2018 | 73 | | ORDER by Magistrate Judge Kristen L. Mix on 6/21/18. Revised Motion for Leave to Take 30(b)(6) Deposition of U.S. Immigration and Customs Enforcement 69 is GRANTED in part and DENIED in part. (lgale, ) (Entered: 06/21/2018) |
| 11/06/2018 | 74 | | Joint MOTION to Amend/Correct/Modify 55 Scheduling Order by Plaintiff Jennifer M. Smith. (Culhane, Daniel) (Entered: 11/06/2018) |

| | | |
|---|---|---|
| 11/06/2018 | 75 | MEMORANDUM regarding 74 Joint MOTION to Amend/Correct/Modify 55 Scheduling Order filed by Jennifer M. Smith. Motions referred to Magistrate Judge Kristen L. Mix by Judge William J. Martinez on 11/6/2018. Text Only Entry (wjmsec, ) (Entered: 11/06/2018) |
| 11/08/2018 | 76 | MINUTE ORDER by Magistrate Judge Kristen L. Mix on 11/8/18. Joint Motion to Amend Scheduling Order 74 is GRANTED. (lgale, ) (Entered: 11/08/2018) |
| 12/26/2018 | 77 | Joint MOTION to Amend/Correct/Modify 55 Scheduling Order *Due to Lapse in Congressional Appropriations* by Defendant U.S. Immigration and Customs Enforcement. (Kellogg, Ian) (Entered: 12/26/2018) |
| 12/26/2018 | 78 | MEMORANDUM regarding 77 Joint MOTION to Amend/Correct/Modify 55 Scheduling Order *Due to Lapse in Congressional Appropriations* filed by U.S. Immigration and Customs Enforcement. Motions referred to Magistrate Judge Kristen L. Mix By Judge William J. Martinez on 12/26/2018. Text Only Entry (wjmsec, ) (Entered: 12/26/2018) |
| 01/07/2019 | 79 | MINUTE ORDER granting 77 Joint MOTION to Amend/Correct/Modify 55 Scheduling Order Due to Lapse in Congressional Appropriations, by Magistrate Judge Kristen L. Mix on 1/7/2019. (tsher, ) (Entered: 01/07/2019) |
| 02/01/2019 | 80 | MOTION to Amend/Correct/Modify 55 Scheduling Order by Defendant U.S. Immigration and Customs Enforcement. (Moskowitz, David) (Entered: 02/01/2019) |
| 02/04/2019 | 81 | MEMORANDUM regarding 80 MOTION to Amend/Correct/Modify 55 Scheduling Order filed by U.S. Immigration and Customs Enforcement. Motions referred to Magistrate Judge Kristen L. Mix by Judge William J. Martinez on 2/4/2019. Text Only Entry (wjmsec, ) (Entered: 02/04/2019) |
| 02/07/2019 | 82 | RESPONSE to 80 MOTION to Amend/Correct/Modify 55 Scheduling Order filed by Plaintiff Jennifer M. Smith. (Culhane, Daniel) (Entered: 02/07/2019) |
| 02/07/2019 | 83 | MINUTE ORDER by Magistrate Judge Kristen L. Mix on 2/7/19. Motion to Amend Scheduling Order 80 is GRANTED. The parties' deadline to file motions for summary judgment is extended to March 26, 2019. (lgale, ) (Entered: 02/07/2019) |
| 03/26/2019 | 84 | MOTION for Summary Judgment by Defendant U.S. Immigration and Customs Enforcement. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I, # 10 Exhibit J, # 11 Affidavit Pineiro Declaration)(Kellogg, Ian) (Entered: 03/26/2019) |
| 03/26/2019 | 85 | MOTION for Summary Judgment by Plaintiff Jennifer M. Smith. (Attachments: # 1 Exhibit A: ICE SOP, # 2 Exhibit B: Deposition Transcript of Fernando Pineiro, # 3 Exhibit 5 to Pineiro Deposition, # 4 Exhibit C: Declaration of Jennifer Smith, # 5 Exhibit D: Declaration of Daniel Harris, # 6 Exhibit A to Harris Declaration, # 7 Exhibit B to Harris Declaration, # 8 Exhibit E: Declaration of Melody Poole, # 9 Exhibit A to Poole Declaration, # 10 Exhibit B to Poole Declaration, # 11 Exhibit F: ICE Discovery Responses)(Culhane, Daniel) (Entered: 03/26/2019) |
| 04/05/2019 | 86 | |

| | | | |
|---|---|---|---|
| | | | Unopposed MOTION for Extension of Time to File Response/Reply as to 84 MOTION for Summary Judgment , 85 MOTION for Summary Judgment by Defendant U.S. Immigration and Customs Enforcement. (Kellogg, Ian) (Entered: 04/05/2019) |
| 04/08/2019 | 87 | | ORDER granting Defendant's Unopposed Motion for Extension of Time for the Parties to File Responses to Summary Judgment Motions [84, 85] 86 . The parties are granted leave, for good cause shown, to file said Responses on or before **May 3, 2019**. SO ORDERED by Judge William J. Martinez on 4/8/2019. Text Only Entry (wjmsec, ) (Entered: 04/08/2019) |
| 05/03/2019 | 88 | | RESPONSE to 85 MOTION for Summary Judgment filed by Defendant U.S. Immigration and Customs Enforcement. (Attachments: # 1 Affidavit Declaration of Catrina Pavlik–Keenan, # 2 Affidavit Declaration of Fernando Pineiro, # 3 Exhibit K – Pavlik–Keenan email, # 4 Exhibit L – letter template, # 5 Exhibit M – Plaintiff's supplemental disclosures, # 6 Exhibit N – referrals to other DHS components)(Kellogg, Ian) (Entered: 05/03/2019) |
| 05/03/2019 | 89 | | RESPONSE to 84 MOTION for Summary Judgment filed by Plaintiff Jennifer M. Smith. (Attachments: # 1 Declaration of Jennifer M. Smith, # 2 Exhibit A to Smith Declaration, # 3 Declaration of John J Faison, # 4 Exhibit A to Faison Declaration)(Culhane, Daniel) (Entered: 05/03/2019) |
| 05/17/2019 | 90 | | REPLY to Response to 85 MOTION for Summary Judgment filed by Plaintiff Jennifer M. Smith. (Culhane, Daniel) (Entered: 05/17/2019) |
| 05/17/2019 | 91 | | REPLY to Response to 84 MOTION for Summary Judgment filed by Defendant U.S. Immigration and Customs Enforcement. (Kellogg, Ian) (Entered: 05/17/2019) |
| 12/16/2019 | 92 | 12 | ORDER Granting in part 85 Plaintiff's Motion for Summary Judgment, Denying 84 Defendant's Motion for Summary Judgment, and Permanently Enjoining Defendant. Entered by Judge William J. Martinez on 12/16/2019.(afran) (Entered: 12/16/2019) |
| 12/16/2019 | 93 | 56 | FINAL JUDGMENT in favor of Plaintiff, Jennifer M. Smith, and against Defendant, U.S. Immigration and Customs Enforcement, pursuant to 92 Order Granting Plaintiff's Motion for Summary Judgment in Part, Denying Defendant's Motion for Summary Judgment, and Permanently Enjoining Defendant. Entered by Clerk on 12/16/2019. (afran) (Entered: 12/16/2019) |
| 12/23/2019 | 94 | | Joint MOTION to Stay re 93 Judgment, 92 Order on Motion for Summary Judgment, *Related to Costs and Attorney Fees Pending Appeal* by Plaintiff Jennifer M. Smith. (Culhane, Daniel) (Entered: 12/23/2019) |
| 12/26/2019 | 95 | | ORDER: Before the Court is the parties' Joint Motion to Stay Proceedings Related to Costs and Attorney's Fees Pending Appeal 94 . The motion is GRANTED for good cause shown. Proceedings related to Plaintiffs' costs and attorneys' fees––including the filing of a bill of costs and a motion for fees, and any briefing or hearings related thereto––are STAYED until 30 days after: (i) the deadline to file a notice of appeal, if no notice of appeal is filed; or (ii) the mandate issues in any appeal, if an appeal is taken. SO ORDERED by Judge William J. Martinez on 12/26/2019. Text Only Entry (wjmlc1) (Entered: 12/26/2019) |

| 02/14/2020 | 96 | 58 | NOTICE OF APPEAL as to 93 Judgment, 92 Order on Motion for Summary Judgment, by Defendant U.S. Immigration and Customs Enforcement (Kellogg, Ian) (Entered: 02/14/2020) |

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO
**Judge William J. Martínez**

Civil Action No. 16-cv-2137-WJM-KLM

JENNIFER M. SMITH,

      Plaintiff,

v.

U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT,

      Defendant.

---

## ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT IN PART, DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, AND PERMANENTLY ENJOINING DEFENDANT

---

Plaintiff Jennifer M. Smith ("Smith") is an immigration attorney who frequently makes requests under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, for information regarding her clients in the files of Defendant U.S. Immigration and Customs Enforcement ("ICE"). ICE has a policy of denying any FOIA request when made by or on behalf of a non-citizen whom ICE deems to be a "fugitive" under the immigration laws. Smith contends that this policy is facially unlawful under FOIA.

Currently before the Court is ICE's Motion for Summary Judgment (ECF No. 84) and Smith's competing Motion for Summary Judgment (ECF No. 85). For the reasons explained below, the Court finds that Smith has standing to pursue this challenge and agrees with Smith that ICE's policy violates FOIA (although not always for precisely the same reasons that Smith advances). The Court will therefore grant Smith's motion to the extent stated in this order, deny ICE's motion, permanently enjoin ICE from applying

its policy to withhold records, and direct entry of final judgment.

## I. STATUTORY BACKGROUND

A brief review of FOIA sets the stage for the facts, law, and arguments discussed below.

When a party makes a FOIA request for federal agency records, the agency usually has twenty working days to "determine . . . whether to comply with such request," and then it must inform the requester of its decision "and the reasons therefor." 5 U.S.C. § 552(a)(6)(A)(i).[1] The agency may refuse to disclose otherwise responsive records if those records fall within certain enumerated categories. *See id.* § 552(b). As relevant to this lawsuit, one of those categories is "records or information compiled for law enforcement purposes." *Id.* § 552(b)(7). But the agency may only invoke this exception "to the extent that the production of such law enforcement records or information" might lead to certain consequences, including that disclosure "could reasonably be expected to interfere with enforcement proceedings." *Id.* § 552(b)(7)(A). As the parties normally do, the Court will refer to this exception as "Exemption 7(A)."

If a requesting party disagrees with the agency's withholding decision, the party may file an administrative appeal with the head of the agency. *Id.* § 552(a)(6)(A)(i)(III). If the appeal is unsuccessful, the party may file a lawsuit in federal district court. *Id.* § 552(a)(4)(B).[2] The district court

---

[1] Although the agency has twenty days to make a decision, there is no specific deadline to produce documents. *Citizens for Responsibility & Ethics in Wash. v. FEC*, 711 F.3d 180, 188 (D.C. Cir. 2013) ("Under the statutory scheme, a distinction exists between a 'determination' and subsequent production.").

[2] A party that receives no response from the agency, or no response within the twenty-day timeline, may file a lawsuit in district court without first filing an administrative appeal. *See id.* § 552(a)(6)(C)(i).

> has jurisdiction to enjoin the agency from withholding agency
> records and to order the production of any agency records
> improperly withheld from the complainant. In such a case
> the court shall determine the matter de novo, and may
> examine the contents of such agency records in camera to
> determine whether such records or any part thereof shall be
> withheld under any of the exemptions set forth in [§ 552(b)],
> and the burden is on the agency to sustain its action.

*Id.* The § 552(b) exemptions are "exclusive"—if the document is not properly withheld under one of them, it must be disclosed. *Milner v. Dep't of Navy*, 562 U.S. 562, 565 (2011).

## II. LEGAL STANDARD

"FOIA actions are typically decided on motions for summary judgment." *Info. Network for Responsible Min. v. BLM*, 611 F. Supp. 2d 1178, 1182 (D. Colo. 2009). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

In evaluating a FOIA summary judgment motion, "two guiding principles apply. First, FOIA is to be broadly construed in favor of disclosure. Second, its exemptions are to be narrowly circumscribed." *Trentadue v. Integrity Comm.*, 501 F.3d 1215, 1226 (10th Cir. 2007). In other words, "disclosure, not secrecy, is [FOIA's] dominant objective." *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001) (internal quotation marks omitted).

In the rare case where a FOIA summary judgment motion reveals a genuine dispute of material fact—"material" in this context meaning a dispute on which the propriety of an exemption turns—then the Court may hold a bench trial to resolve that dispute. *See Animal Legal Def. Fund v. U.S. Food & Drug Admin.*, 836 F.3d 987, 990

3

(9th Cir. 2016) (en banc); *Brown v. Perez*, 835 F.3d 1223, 1233 (10th Cir. 2016); *Brown
v. U.S. Dep't of Labor*, 342 F. Supp. 3d 1112, 1114 (D. Colo. 2018).

### III.  FACTS & PROCEDURAL HISTORY

In this matter, it is impossible to judge the significance of factual agreements and
disputes without setting them in their procedural context.  The Court will therefore
discuss the facts and procedural history together.  The facts recounted below are
undisputed unless attributed to a party or otherwise noted.  The procedural history is, of
course, a matter of record.

### A.    Smith's Original FOIA Request

Smith operates the Law Office of Jennifer M. Smith, P.C., in Glenwood Springs,
Colorado.  (ECF No. 84 at 6, ¶ 1; ECF No. 85-4 ¶ 2.)[3]  In May 2013, she submitted a
FOIA request to United States Citizenship and Immigration Services ("CIS") seeking the
"Complete Alien File (A-File)" for, and "any and all records you may have" regarding,
Marta Alicia del Carmen Orellana Sanchez ("Ms. Sanchez"), one of Smith's clients.
(ECF No. 84 at 6, ¶¶ 2–4.)  In August 2013, CIS responded that it had identified 52
pages of responsive records, some of which it released to Smith.  (*Id.* ¶¶ 5–6; ECF No.
89 at 2, ¶ 6.)

CIS's search efforts also located "potentially responsive records that may have
originated with ICE."  (ECF No. 84 at 6, ¶ 7.)  CIS asked ICE to determine whether
those records should be released, and it informed Smith of the referral to ICE.  (*Id.* ¶ 8.)

About two years later—in September 2015—ICE sent a letter to Smith

---

[3] All ECF page citations are to the page number in the CM/ECF header, which does not
always match the document's internal pagination, particularly in exhibits with unnumbered cover
pages.

announcing that it would not release any records because it deemed Ms. Sanchez to be a "fugitive":

> ICE's records indicate that as of September 03, 2015, the subject of your request is a fugitive under the Immigration and Nationality Act of the United States.  It is ICE's practice to deny fugitive alien FOIA requesters access to the FOIA process when the records requested could assist the alien in continuing to evade immigration enforcement efforts.  The agency has reviewed the information sought in your request and has determined that there is a connection between that information and the subject of the request's status as a fugitive.  The information you have requested and the fugitive status are both directly related to the Immigration and Nationality Act of the United States.

(*Id.* at 7, ¶ 9.)  The letter did not invoke any specific FOIA exemption.  (*See* ECF No. 15-3 at 2–3.)  The letter was signed by a certain Ms. Stoney on behalf of Catrina M. Pavlik-Keenan, whose title is "FOIA Officer."  (*Id.* at 3.)

The "practice to deny fugitive alien FOIA requesters access to the FOIA process" was not a written policy, but it was nonetheless an established ICE practice at the time. (ECF No. 84 at 7, ¶ 10.)  The Court will refer to this as the "Fugitive Practice."

## B.     Early Proceedings in this Lawsuit

### 1.     Original & Amended Complaints

Smith challenged the withholding under the Fugitive Practice through the required administrative channels and received no relief.  (ECF No. 85 at 6, ¶ 7.)  Smith then filed this lawsuit on August 24, 2016, arguing that FOIA contains no exception that would justify the Fugitive Practice.  (ECF No. 1 ¶ 17.)  Smith originally sought two forms of relief: (1) disclosure of Ms. Sanchez's records, and (2) a declaration "that defendant ICE's stated policy of denying access to records otherwise obtainable under the FOIA process pertaining to persons it deems to be 'fugitive alien FOIA requesters' is in

violation of the FOIA." (*See id.* at 7.)

By letter dated September 27, 2016, Ms. Pavlik-Keenan (through a subordinate) "sent another letter to [Smith's] law office in response to a FOIA request related to [her] representation of a different client." (ECF No. 85 at 7, ¶ 11 (emphasis removed).) The letter was addressed to "Ms. Brown" (*see* ECF No. 19-2 at 1), whose identity and role ICE has repeatedly questioned (*see* ECF No. 35 at 4–5, 9 & n.5; ECF No. 46 at 3 & n.1; ECF No. 84 at 14 n.8; ECF No. 88 at 36 & n.11) but Smith has never explained (*see generally* ECF Nos. 40, 49, 85-4, 89, 90)—except it is clear that Ms. Brown can be reached by mail at the Law Office of Jennifer M. Smith, P.C. Using materially the same language employed in the letter regarding Ms. Sanchez's records, the letter to Ms. Brown invoked the Fugitive Practice to refuse release of records relating to this other client. (ECF No. 19-2 at 1.)

The next day, September 28, 2016, Smith's attorney in this lawsuit "received an unannounced overnight delivery from an unfamiliar address in Maryland, which contained 20 pages of additional documents that were subsequently confirmed to be the missing portions of [Ms. Sanchez's] A-File." (ECF No. 85 at 7, ¶ 9.) ICE "provided no explanation for its decision to provide the documents it had previously withheld." (*Id.* ¶ 10.)

These events prompted Smith to file her First Amended Complaint (still the currently operative complaint), acknowledging that her claim specifically for Ms. Sanchez's records was moot. (ECF No. 32 ¶ 4.) Smith instead pleaded that ICE has a "pattern or practice" of violating FOIA, and she requested that the Court "[p]ermanently enjoin ICE's stated 'practice' of denying access to records otherwise

6

obtainable under the FOIA process pertaining to persons it deems to be 'fugitive alien FOIA requesters.'" (*Id.* at 8–9.) Smith also repeated her previous request for a declaratory judgment that the Fugitive Practice is unlawful. (*Id.* at 9.)

The First Amended Complaint contains the following principal allegations in support of a subsisting claim for injunctive relief:

- "Ms. Smith has made (and in the future will continue to make) FOIA requests on a regular basis to various agencies of the Department of Homeland Security . . . ."

- ". . . in July 2015, another of Ms. Smith's FOIA requests was also denied by ICE based on the challenged practice. Ms. Smith appealed that denial, and on July 31, 2015, ICE denied the appeal, affirming the practice challenged in this case."

- "Because Ms. Smith regularly submits FOIA requests to the government that are related to non-citizen clients who may be deemed 'fugitives' by ICE, and because she plans to continue to do so in the future, the government's illegal practice subjects Ms. Smith to substantial likelihood of ongoing and/or future injury, both by depriving Ms. Smith of her rights under FOIA and by impairing Ms. Smith's ability to fully and effectively represent her clients."

(*Id.* ¶¶ 31, 32, 35.) Smith did not amend her complaint to include the denial directed at Ms. Brown, nor the July 2015 denial.

2.    Motion to Dismiss the Amended Complaint

ICE moved to dismiss, claiming that Smith lacked Article III standing to seek an

injunction against future applications of the Fugitive Practice because Smith allegedly failed to show that such applications were "imminent." (*See* ECF No. 35.) *See also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (standing to sue in federal court requires, among other things, "an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical" (internal quotation marks omitted)). ICE specifically stated that it was not arguing for mootness through voluntary cessation of challenged conduct (*i.e.*, no longer invoking the Fugitive Practice to withhold Ms. Sanchez's A-File), but solely that Smith never had Article III standing to begin with. (ECF No. 41 at 9.)

In resolving ICE's motion, the Court began by noting the different standards for evaluating Article III standing at different stages of the case: "'[a]t the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice.' By the summary judgment phase, however, 'the plaintiff can no longer rest on such mere allegations, but must set forth by affidavit or other evidence specific facts.'" *Smith v. U.S. Immigration & Customs Enf't*, 249 F. Supp. 3d 1203, 1206 (D. Colo. 2017) (ECF No. 45) (quoting *Lujan*, 504 U.S. at 561) (alterations in original); *see also id.* at 1209 ("[T]he Court is mindful of *Lujan*'s instruction that there is a difference between the standing inquiry at the pleading phase as compared to later phases of the case. This case, of course, remains in the pleading phase." (citation omitted)). In that light, the Court reasoned that Smith's allegations were adequate, if not "overwhelming":

> Smith alleges that FOIA requests are an integral part of her practice as an immigration attorney because most of her clients are not legally savvy and therefore the client's A-File is often the only useful record of "[the] agency [the client] met with, and what type of interaction transpired, and what the legal issues may be." (ECF No. 32 ¶ 28.) Smith also

8

alleges that she "regularly submits FOIA requests to the government that are related to non-citizen clients who may be deemed to be 'fugitives' by ICE." (*Id.* ¶ 35.) Smith has also alleged three instances in which her FOIA requests have been denied based on the Fugitive Practice. (*Id.* ¶¶ 20, 29, 32.) Finally, ICE's own words establish that ICE indeed has a self-described "practice" denying FOIA requests that could assist a fugitive alien.

. . . The question is whether the allegations, taken together, establish a sufficient probability that Smith will have a future FOIA request rejected based on the Fugitive Practice.

Smith's case in this regard is not overwhelming. The fact that she "regularly" submits FOIA requests but has alleged only three instances of denial based on the Fugitive Practice is concerning. But again, there is no predetermined number of prior denials, combined with future intentions, that distinguishes a plaintiff with standing and one without. On this record at the pleading phase, the Court finds that Smith has presented a sufficiently "concrete" allegation of likely future harm based on the Fugitive Practice—sufficient, at least, to meaningfully "reduce the possibility of deciding a case in which no injury would have occurred at all." *Lujan*, 504 U.S. at 564 n.2. Smith accordingly possesses Article III standing to pursue this lawsuit beyond the pleading phase.

*Id.* at 1209–10.

## C.  Written Discovery

The Court permitted limited discovery regarding the Fugitive Practice and Smith's

likelihood that she would again be denied records on account of the Fugitive Practice.

(*See* ECF No. 51.)  On that latter topic, the Court permitted ICE to "inquire as to the

planned date of any request, and may require Smith to link that planned request to a

fictitious name corresponding to an actual or prospective client known to Smith (*e.g.*,

'Client A,' 'Prospective Client 1')."  (*Id.* at 1–2.)[4]

In June 2017, ICE propounded an interrogatory as follows:

---

[4] The Court allowed fictitious names due to Smith's concerns for client privacy.  (*Id.* at 1.)

9

> For all FOIA requests that Plaintiff or her law firm plan to
> submit to ICE or any other component of the Department of
> Homeland Security seeking records related to an actual or
> prospective non-citizen client, please provide a fictitious
> name (such as "Client A," or "Prospective Client 1") and the
> date of the planned request.

(ECF No. 84-8 at 2.) Smith's entire response was as follows: "Plaintiff anticipates filing

FOIA requests on behalf of approximately five (5) prospective non-citizen clients each

month from and after the date hereof, for the foreseeable future." (ECF No. 69-1 at 2.)

It is not clear how Smith reached her five-clients-per-month estimate, and other

discovery documents suggest a reasonable estimate would be lower. In particular, ICE

propounded the following interrogatory:

> For all FOIA requests submitted by Plaintiff or her law firm to
> ICE or any other component of the Department of Homeland
> Security seeking records related to a non-citizen client,
> please provide the date of the request, the name of the
> client, the client's A-File number, and the status of the
> request.

(ECF No. 69-1 at 1–2.) Smith responded with a chart that reports FOIA requests

submitted between January 2011 (*see* ECF No. 69-2 at 1) and June 2017 (*see id.* at

3, 5)—a span of 78 months. By the Court's count, the total number of clients for whom

FOIA requests were filed was 141,[5] for an average of 1.8 per month. Of those, only

three requests were denied on Fugitive Practice grounds. (*See id.* at 1 (entry for

06/01/2015), 2 (entry for 02/02/2016), and 4 (entry for 08/24/2015).) One of those

denials was that related to Ms. Sanchez. (*Id.* at 4 (entry for 08/24/2015).) The other

was that related to Ms. Brown's request. (*Id.* at 2 (entry for 02/02/2016).) The third was

---

[5] The two June 2017 requests (*id.* at 3, 5) may be same request listed twice. The Court's count assumes that neither the June 2017 requests nor any other requests are duplicates.

the July 2015 denial discussed in the amended complaint (*see* Part III.B.1, above), which turns out to have been a denial in name only.  Smith or someone in her office (she uses the pronoun "we") sent a FOIA request to CIS, which produced documents and then referred the rest to ICE, which also produced documents—but when Smith sent a FOIA request to ICE *directly*, ICE invoked the Fugitive Practice.  (ECF No. 69-1 at 1, 5.)  In other words, when asked directly, ICE refused to release records it had already released when asked indirectly.

## D.    Promulgation of the Standard Operating Procedure (SOP)

In July 2017, ICE disclosed to Smith a new written policy to govern its treatment of FOIA requests that may implicate "fugitive" status.  (ECF No. 84 at 7–8, ¶¶ 11, 15.)[6] The policy came from ICE's "Office of the Principal Legal Advisor," and was designated a "Standard Operating Procedure (SOP)" for "FOIA Requests Made By, or On Behalf of, Fugitive Aliens."  (ECF No. 60-2 at 1.)  The parties refer to this document simply as the "SOP," and the Court will as well.

The SOP begins by describing the two ways ICE usually receives a FOIA request:

> There are two types of FOIA requests routinely processed by ICE FOIA: FOIA requests submitted directly to ICE and requests originating from another DHS component and thereafter referred to ICE for its direct response (referrals). Requests submitted by individuals directly to ICE are typically for records that are kept in the agency's law enforcement databases.  Such records may include, but are not limited to, investigatory records, records of ICE encounters with an aliens [*sic*], attorney notes, and officers' investigatory notes.

---

[6] Certain evidence in the record suggests that the new policy was not distributed to ICE's FOIA employees until August 2017 (*see* ECF No. 88-3 at 2), but that is presently immaterial.

> By contrast, referrals from another DHS component are typically requests for an alien's A-file, which are initially received by United States Citizens and Immigration Services (USCIS). While processing those requests USCIS may encounter records created by or under the purview of ICE within an A-file. USCIS will then refer those records to ICE for processing and direct response to the requestor. ICE records in a referral typically include, but are not limited to, immigration court materials, records related to bonds, and records related to detention or alternatives to detention.

(*Id.*) The SOP then specifies that the policy it establishes "applies only to FOIA requests submitted directly to ICE, which are more likely to implicate law enforcement equities than requests for portions of A-files referred to ICE. Referrals [from other DHS components] are processed in the ordinary course and categorical withholding based on the alien's fugitive status does not apply." (*Id.*)

With this background in mind, the SOP establishes the following process:

> When a FOIA request is made directly to ICE and is received by the ICE FOIA Office, ICE FOIA consults with ICE's Office of Enforcement and Removal Operations (ERO), Information Disclosure Unit (IDU) to ascertain whether or not an alien is in fugitive status.

> For FOIA purposes, a fugitive is any subject, not in ICE custody, who:

> o Is an alien who received either a grant of voluntary departure or a removal order, and was instructed to depart or to report to ICE with proof of planned departure to his or her nation of citizenship, and failed to do so;

> o Is an alien who has failed to report to an ICE officer after receiving a legal order to do so;

> o Is an alien who has failed to comply with any conditions placed on him/her;

> o Is an alien who has failed to comply with the provisions of any program that requires him/her to report to ICE for any reason; or

> > o  Is wanted by ICE for criminal violations of the Titles 8,
> >    18, 19 and 21.
> >
> > ERO communicates to the ICE FOIA Office an alien's
> > fugitive status.  If ERO informs ICE FOIA that an alien is
> > classified as a fugitive for FOIA purposes, ICE FOIA may
> > categorically withhold the fugitive's law enforcement records
> > or information pursuant to FOIA Exemption (b)(7)(A),
> > 5 U.S.C. § 552(b)(7)(A), which permits the withholding of
> > records or information compiled for law enforcement
> > purposes to the extent that production of law enforcement
> > records or information could reasonably be expected to
> > interfere with law enforcement proceedings, and the fugitive
> > disentitlement doctrine.  In the response letter, the ICE FOIA
> > Office will expressly note the alien's fugitive status, as well
> > as Exemption 7(A), as the basis for the withholding.

(*Id.* at 1–2 (formatting in original).)

Dissatisfied requesters "have the ability to appeal the initial determination made

by the ICE FOIA Office to the Office of the Principal Legal Advisor (OPLA).  Any appeal

is reviewed *de novo.*"  (*Id.* at 2.)  "The OPLA attorney [assigned to the appeal] must

thoroughly evaluate the contents of the appeal, the alien's immigration history, and the

requested documentation to ensure that there is a connection between the documents

requested and the alien's continued evasion of law enforcement efforts."  (*Id.* at 3.)

"Should the OPLA attorney not find a connection between the requested documents

and the alien's fugitive status," the SOP directs the attorney to remand the matter "to the

ICE FOIA Office for processing" (*id.*), presumably leading to release of the records.

## E.     The Rule 30(b)(6) Deposition

On October 17, 2018, Smith deposed ICE's Rule 30(b)(6) witness, Mr. Fernando

Pineiro.  (*See* ECF No. 85-2.)  Mr. Pineiro testified about the operation of the new SOP,

including that if ICE (i) receives a FOIA request on behalf of a person it deems a fugitive

and (ii) finds records in its files for which ICE is *not* the custodian (in particular, the

A-File, for which CIS is the custodian), ICE will not forward the FOIA request to the

custodial agency.  (*Id.* at 21.)  When asked to explain, Pineiro responded,

> It's not part of our SOP or how we process.  We are
> saying—why would we forward—it would be counterintuitive
> to say, hey, you respond to this guy with records, when we
> already identified the individual as a fugitive, and, therefore,
> we're categorizing his records as being compiled for law
> enforcement purposes and we're not going to provide
> access.  Why would we tell another agency to provide
> access?

(*Id.*)

## F.  Developments During Summary Judgment Proceedings

### 1.  ICE's Summary Judgment Motion

ICE filed its summary judgment motion on the date of the dispositive motion

deadline, March 26, 2019.  (*See* ECF No. 83.)  ICE argued, among other things, that the

only relevant policy now is the SOP, and that Smith does not have standing to challenge

it.  (ECF No. 84 at 13–16.)  Among the facts ICE asserted in support of this argument

were that it has applied the SOP only eight times out of about 110,000 FOIA requests

processed between July 21, 2017, and March 21, 2019.  (*Id.* at 11, ¶¶ 32–33.)

As will be seen below, it turns out that ICE has invoked the SOP more than eight

times since July 2017.  It remains undisputed, however, that ICE has never invoked the

SOP to deny one of Smith's FOIA requests during that timeframe.  (*Id.* ¶ 31.)

### 2.  Smith's Supplemental Rule 26 Disclosure

ICE filed its summary judgment motion at 2:54 PM (MDT).[7]  Two minutes later,

Smith's counsel e-mailed to ICE's counsel a supplemental Rule 26 disclosure with four

---

[7] The permanent record of the filing time is linked to the filing (ECF No. 84) but is only
accessible to Court personnel.  The Court has reviewed this record and confirmed the 2:54 PM
filing time.

new documents (ECF No. 88-5), including

- an August 16, 2018 letter from ICE to Melody Poole, a Texas attorney, which used the language of the same Fugitive Practice letter Smith had received (with no reference to the SOP) to deny FOIA request for Ms. Poole's client's immigration records ("Poole Letter") (ECF No. 85-9);

- an October 5, 2018 letter to Daniel Harris, a New York attorney, which also used the language of the Fugitive Practice letter (with no reference to the SOP) to deny Mr. Harris's FOIA request for his client's immigration records ("Harris Letter") (ECF No. 85-6).

### 3. Smith's Summary Judgment Motion

Not quite thirty minutes after transmitting the supplemental Rule 26 disclosure, Smith filed her own summary judgment motion.[8]  Smith argued, among other things, that the Fugitive Practice is still in effect, as evidenced by the Poole and Harris Letters. (ECF No. 85 at 16–17, 19–20.)

### 4. ICE's Response to Smith's Motion

In due course, the parties filed response and reply briefs.  For present purposes, the most significant is ICE's response to Smith's motion.  (ECF No. 88.)  ICE attached a ten-page declaration from Ms. Pavlik-Keenan (the signatory of the original Fugitive Practice letters), who supervises "more than 40 individuals" who work for "the ICE FOIA office."  (ECF No. 88-1 ¶ 2.)  The declaration's main purpose is to explain the Poole and Harris Letters, which she claims were a surprise to her when she first became aware of them on March 27, 2019 (*id.* ¶¶ 14–15)—presumably when ICE's counsel informed her

---

[8] Again, the Court has reviewed the permanent record of the filing time, which was 3:23 PM (MDT).

of Smith's supplemental disclosures.

Ms. Pavlik-Keenan asserts that she informed her staff about the SOP on August 1, 2017, including with a directive to begin following it "immediately." (*Id.* ¶ 11; *see also* ECF No. 88-3 (Ms. Pavlik-Keenan's August 1, 2017 e-mail, with the subject line "Fugitive Disentitlement Doctrine SOP - PLEASE FOLLOW IMMEDIATELY").) But ICE, like many federal agencies, uses a system called "FOIAXpress" to "manage FOIA requests, from the intake of request to final response, including correspondence, document management, redaction, and reporting." (ECF No. 88-1 ¶ 4.) Because ICE FOIA analysts must process about ten FOIA requests per business day, Ms. Pavlik-Keenan's office relies on FOIAXpress templates for response letters. (*Id.* ¶ 8.) Upon learning of the Poole and Harris Letters, Ms. Pavlik-Keenan discovered that "the old letter template in the FOIAXpress system for responses to fugitive FOIA requesters . . . was never removed and replaced with a new letter template consistent with the SOP." (*Id.* ¶ 15.) She further represents,

> The failure to update the letter template in FOIAXpress was an administrative oversight. Once the SOP was adopted, it was the intention of the ICE FOIA Office to upload into FOIAXpress a new letter template consistent with the SOP and to delete any old letter template that referenced fugitive status. This did not happen, due in part to the staffing challenges the ICE FOIA Office was facing at the time . . . . Because a new letter template was not uploaded into FOIAXpress, on those occasions when ICE issued responses to FOIA requests submitted by or on behalf of fugitives, the responses used an incorrect letter template.

(*Id.* ¶ 16.) The template invoking the SOP has since replaced the old template. (*Id.* ¶ 18.)

But this was not all. ICE further discovered that it had incorrectly calculated the number of times it had invoked the SOP in the more-than-110,000 FOIA requests

16

processed since July 2017.  According to Ms. Pavlik-Keenan, the calculation error resulted from a software upgrade in April 2017 which prevented FOIA analysts from closing cases in FOIAXpress with the "Fugitive Status" code.  (*Id.* ¶ 21.)  Unable to select the relevant code, "ICE FOIA analysts had to select from the other available codes to close out cases.  As a result, when an ICE FOIA analyst applied the SOP and withheld records from a fugitive requester, those instances were not accurately coded in FOIAXpress for tracking purposes."  (*Id.*)  Ms. Pavlik-Keenan thought the problem had been fixed shortly after the upgrade, but "learned recently" that it had persisted.  (*Id.*)  The problem has now been fixed, she says.  (*Id.* ¶¶ 21–22.)

To calculate correctly the number of fugitive-based FOIA denials between July 21, 2017, and April 4, 2019 (apparently the date the coding problem was fixed), Ms. Pavlik-Keenan directed the "FOIAXpress support personnel" to run keyword searches designed to ferret out instances in which the old Fugitive Practice letter had been sent.  (*Id.* ¶ 22.)[9]  As a result of those efforts, "ICE FOIA currently believes that the SOP was applied to FOIA requests submitted directly to ICE by or on behalf of fugitive aliens 333 times between July 21, 2017 and April 4, 2019," out of a total of 111,793 FOIA requests processed.  (*Id.*)

Finally, Ms. Pavlik-Keenan asserts that ICE *will* refer FOIA requests to other agencies when it deems the subject of the request to be a fugitive but it also discovers records for which it is not the custodian.  (*Id.* ¶ 25.)  This assertion contradicts Mr. Pineiro's Rule 30(b)(6) deposition testimony.  (*See* Part III.E, above.)  Ms. Pavlik-

---

[9] Again, sending the Fugitive Practice letter, instead of a template tailored to the SOP, was itself erroneous.

Keenan does not mention Mr. Pineiro's testimony and provides no explanation for the contradiction.

## IV. ANALYSIS

### A. Does Smith Have Article III Standing?

ICE's summary judgment brief (which ICE filed without knowledge of the Poole and Harris Letters) primarily argues that Smith has never had standing to seek prospective relief against the SOP, which was promulgated many months after this lawsuit started and which ICE has never applied to deny one of her FOIA requests. (ECF No. 84 at 14–16.) Smith counters that: (i) she has always had standing to challenge the Fugitive Practice; (ii) the Fugitive Practice is still in force (as evidenced by the Poole and Harris Letters); and (iii) even if the Fugitive Practice is not still in force in its original form, the SOP is merely its latest iteration, not a new or separate policy that "resets" the standing analysis. (ECF No. 89 at 9–24.) Thus, Smith says, her standing for prospective relief existed at the beginning of the lawsuit and continues to this day. (*Id.*)

The parties' arguments raise a tangle of questions. The Court finds it most helpful to first explain the standing inquiry applicable here. The Court will then address whether the Fugitive Practice remains in force, and whether the Fugitive Practice and SOP may be considered a single continuing policy. Finally, the Court reaches the basic question of whether Smith has standing to seek prospective relief.

### 1. Standing to Seek Prospective Relief

Article III, section 2, of the United State Constitution restricts federal court jurisdiction to "Cases" and "Controversies." The "irreducible constitutional minimum" of a properly presented case or controversy is as follows:

18

> First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) "actual or imminent, not 'conjectural' or 'hypothetical.'" Second, there must be a causal connection between the injury and the conduct complained of . . . . Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

*Lujan*, 504 U.S. at 560–61 (citations omitted; alterations in original). "[E]ach [of these three] element[s] must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation." *Id.* at 561. Thus, "[a]t the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice." *Id.* (internal quotation marks omitted). By the summary judgment phase, however, "the plaintiff can no longer rest on such mere allegations, but must set forth by affidavit or other evidence specific facts." *Id.* (internal quotation marks omitted); *see also id.* at 566 ("Standing . . . requires, at the summary judgment stage, a factual showing of perceptible harm.").

In addition, "a plaintiff must demonstrate standing separately for each form of relief sought." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000) ("*Laidlaw*"). Thus, standing to seek redress for already-inflicted harm differs from standing to seek prospective relief (an injunction, usually) against anticipated future harm. *See id.* "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974). Rather, past exposure is "evidence bearing on whether there is a real and immediate threat of repeated injury." *Id.* at 496.

19

Nonetheless, standing—for prospective relief or otherwise—is judged by the state of facts as they existed when the plaintiff files the complaint. *See Laidlaw*, 528 U.S. at 184–88; *Tandy v. City of Wichita*, 380 F.3d 1277, 1284 (10th Cir. 2004). If standing for prospective relief exists when the complaint is filed, later events that appear to moot such relief (such as repeal of a challenged policy) do not automatically defeat standing. The effect of those later events is analyzed under separate principles and burdens that apply specifically to mootness. *See, e.g.*, *Davis v. FEC*, 554 U.S. 724, 733–36 (2008) (plaintiff had standing because the prospective relief he sought would have remedied an injury that existed at the time he filed suit; mootness analyzed separately based on "capable of repetition yet evading review" exception).

2. <u>Does ICE Still Enforce the Fugitive Practice?</u>

If the Fugitive Practice remains in force, then the standing inquiry turns on whether Smith, at the time she filed the First Amended Complaint (the first complaint to seek an injunction), had standing to seek an injunction against further applications of the Fugitive Practice. Smith argues that the Fugitive Practice indeed remains in force, or at least there is a genuine dispute of fact preventing summary judgment on this question. (ECF No. 85 at 18–20; ECF No. 89 at 6–8.)

The Court disagrees. On this point, Smith chose gamesmanship over substantive discovery, and it has left her with inadequate evidence to sustain her burden of persuasion at any trial the Court might hold.

The Court will first address Smith's gamesmanship. ICE's response to Smith's summary judgment motion makes the case that Smith intentionally timed the disclosure of the Poole and Harris Letters to blindside ICE:

> Plaintiff did not raise the letters, or her claims of misconduct,

> before the summary judgment deadline. Instead, two
> minutes after Defendant filed its motion for summary
> judgment, Plaintiff's counsel emailed the letters as part of
> "Plaintiff's Supplemental Disclosures," made "pursuant to
> Rule[] 26(e)." Plaintiff did not ask about the letters during the
> Rule 30(b)(6) deposition that she sought and received leave
> from the Court to conduct. (Both ICE FOIA response letters
> pre-date the [October 17, 2018] deposition.) Plaintiff did not
> seek leave from the Court to conduct additional discovery
> into the letters, her contention that they "conclusively
> demonstrate[]" that the practice continues, or her claim that
> they show that Defendant acted to mislead the Court. Nor
> did Plaintiff otherwise raise the letters, or her concerns
> based thereupon that Defendant "has made inconsistent and
> misleading statements to the Court and to plaintiff" [quoting
> Smith's summary judgment motion, ECF No. 85 at 15],
> before the summary judgment deadline.

(ECF No. 88 at 3–4 (footnote omitted; alterations in original, save for insertion of the

Rule 30(b)(6) deposition date and the citation to Smith's summary judgment motion);

*see also* ECF No. 91 at 3–4 (similar argument in ICE's reply in support of its summary

judgment motion).)

An obvious response, if it were true, would be to assert that the Poole and Harris

Letters are dated August 16 and October 5, 2018, respectively, but Smith (or her

counsel) only learned of them just before the parties began filing their summary

judgment motions. But Smith does not offer such a response. Indeed, she entirely

ignores ICE's accusations. (*See generally* ECF No. 90.) And the record is against her

in any event. Ms. Poole's declaration authenticating the Poole Letter, which uses the

caption for this lawsuit, is dated March 21, 2019. (ECF No. 85-8 at 3.) Mr. Harris's

declaration authenticating the Harris Letter, also using the caption for this lawsuit, is

dated March 22, 2019. (ECF No. 85-5 at 3.) The parties filed their summary judgment

motions on the dispositive motion deadline, March 26, 2019.

Properly captioned declarations do not come together unsolicited. Similarly, a

summary judgment motion in which the Poole and Harris Letters are the centerpiece does not come together in a few days. (*See generally* ECF No. 85.) Accordingly, it is beyond dispute that Smith's counsel knew of the Poole and Harris Letters at least a week ahead of the summary judgment deadline, and probably much earlier. In such a circumstance, and considering the import of the letters, waiting until two minutes *after* the opposing party files its summary judgment motion to disclose them is far from supplementing "in a timely manner." Fed. R. Civ. P. 26(e)(1)(A). It is gamesmanship contrary to the letter and spirit of the Federal Rules of Civil Procedure.

The Court could order Smith to show cause why the Poole and Harris Letters should not be excluded under Rule 37(c)(1). But the Court need not do so. Even accepting them into evidence, no reasonable factfinder could find that the Fugitive Practice continues (in its original form, at least). On Smith's side of the ledger are the Poole and Harris Letters, and nothing else.[10] On ICE's side of the ledger is the detailed and forthright account from Ms. Pavlik-Keenan explaining how the Fugitive Practice letter continued to be sent out by mistake when ICE was actually invoking the SOP—and, to be clear, the Court would allow Ms. Pavlik-Keenan to testify on this matter to cure the prejudice created by Smith's strategically-timed late disclosure. Because Smith chose not to seek discovery based on the Poole and Harris Letters, she has nothing but rhetoric to impeach Ms. Pavlik-Keenan's account. (*See* ECF No. 90 at 3.)

---

[10] In a declaration, Smith reports that she has "communicated with at least 2 other immigration attorneys [*i.e.*, besides Poole and Harris] in the last 2 months who have indicated to me that they have received denials of FOIA requests based on ICE deeming their immigrant clients to be 'fugitives.'" (ECF No. 85-4 ¶ 15.) This is inadmissible hearsay, and not obviously relevant in any event. Whatever these "at least 2 other immigration attorneys" received from ICE, it predated ICE's investigation and remedial measures after learning of the Poole and Harris Letters.

Smith also never explains why the ICE FOIA office, with its obvious administrative shortcomings, would ever even *try* to administer two policies, one written and one unwritten, related to non-citizen "fugitives." Faced with this record, a reasonable factfinder could only conclude that ICE now proceeds under the SOP alone.

For these reasons, the Court rejects Smith's argument that "ICE has *two* illegal FOIA practices that must be enjoined, not just one" (ECF No. 85 at 5 (emphasis in original)), or that there is a genuine dispute of fact on this question. The SOP is the only operative policy.

### 3. Is the SOP a New Policy, or a Continuation of the Fugitive Practice?

Just because the SOP is the only operative policy does not mean that Smith's pre-SOP standing to challenge the Fugitive Practice is irrelevant. If the substance of the Fugitive Practice persists under the SOP, then Smith possesses standing to seek an injunction against the SOP to the same extent she had standing when she filed the First Amended Complaint to seek an injunction against the Fugitive Practice. *See, e.g.*, *Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 661–63 & n.3 (1993) ("*Florida Contractors*") (changes made to a challenged ordinance while appeal was pending did not deprive the challengers of standing because the amended ordinance "disadvantage[d] [the challengers] in the same fundamental way" as the original ordinance, or in other words, "the ordinance ha[d] not been sufficiently altered" to create a new dispute (internal quotation marks omitted)); *id.* at 670 (O'Connor, J., dissenting) (agreeing with the majority that "a defendant cannot moot the case simply by altering the law in some insignificant respect" (internal quotation marks omitted)); *Naturist Soc'y, Inc. v. Fillyaw*, 958 F.2d 1515, 1520 (11th Cir. 1992) ("*Fillyaw*") ("Thus, a superseding statute or regulation moots a case only to the

extent that it removes challenged features of the prior law. To the extent that those features remain in place, and changes in the law have not so fundamentally altered the statutory framework as to render the original controversy a mere abstraction, the case is not moot.").[11] The Court therefore must compare the Fugitive Practice to the SOP.

Smith received no discovery about the substance of the Fugitive Practice because the Court—having no idea that the Fugitive Practice was entirely unwritten, nor that the SOP would soon be promulgated—ruled that Smith's document requests regarding the Fugitive Practice would be limited to "ICE's most current version of its written policy or policies with regard to the challenged practice; or, if the challenged practice itself has not been formally reduced to writing, any ICE documents regarding the administration and/or implementation of the challenged practice." (ECF No. 51 at 2.)[12] ICE interpreted this order as allowing it to respond to Smith's discovery requests with only the SOP, which was newly promulgated as of the July 2017 date that ICE's discovery responses were due. (*See* ECF No. 84 at 8, ¶ 15; ECF No. 91 at 17.)

Regardless, Smith argues—and ICE nowhere disputes—that ICE's proposed interrogatories in an April 2017 "Motion for Limited Jurisdictional Discovery" reveal the substance of the Fugitive Practice. (*See* ECF No. 89 at 12 (citing ECF No. 46);

---

[11] *Florida Contractors* and *Fillyaw* both analyze this matter in terms of "mootness." Under the circumstances of those cases, however, each court's finding that the controversy was not moot was, in substance, a finding that the plaintiffs continued to have the same standing they possessed at the beginning of their respective lawsuits. Such analysis contrasts with a strict mootness analysis in which the originally requested injunctive relief is no longer available (*e.g.*, the election in which the plaintiff hoped to run as a candidate has passed) or a challenged statute has been completely repealed, and the question is whether the court should resolve the dispute anyway.

[12] This ruling was motivated by the Court's finding in the same order "that [the] history and purpose [of the Fugitive Practice] are irrelevant to what the Court will eventually be asked to decide." (*Id.*)

*compare* ECF No. 91.)  ICE proposed asking Smith to identify all pending and planned

FOIA requests on behalf of non-citizen clients, and, for each such request, to provide

certain details regarding the client.  (ECF No. 46 at 2–3.)  Among those details were

"whether the non-citizen client whose records are being sought has been issued (a) a

final order of removal and (b) a 'bag and baggage' letter or other documentation

directing the non-citizen to report to ICE with proof of departure to his or her country of

origin, or an order of supervision."  (*Id.* at 3.)[13]  "Through these requests," ICE

explained, "Defendant seeks to discover whether there is any evidence to support

Plaintiff's allegations that she herself faces imminent future harm by having a future

FOIA request rejected based on the challenged practice."  (*Id.* (footnote omitted).)  It is

therefore beyond dispute that the Fugitive Practice applied to FOIA requests made by or

on behalf of a non-citizen who had been issued a final order of removal and either (1) a

bag and baggage letter, or (2) "other documentation directing the non-citizen to report to

ICE with proof of departure to his or her country of origin," or (3) an order of supervision.

The SOP is not a wholesale repeal of the Fugitive Practice.  Rather, the SOP

defines "fugitive" more specifically:

> For FOIA purposes, a fugitive is any subject, not in ICE
> custody, who:
>
> o [1] Is an alien who received either a grant of voluntary
> departure or a removal order, and was instructed to
> depart or to report to ICE with proof of planned
> departure to his or her nation of citizenship, and failed

---

[13] A "bag and baggage letter" is "a notice to surrender for deportation."  *Gao v. Gonzales*, 481 F.3d 173, 175 (2d Cir. 2007).  It refers specifically to ICE Form I-166.  An "order of supervision" refers to ICE Form I-220B, which is issued to non-citizens who are ordered removed but are allowed to remain in the community pending removal.  *See* 8 C.F.R. §§ 241.4 & 241.5.  Similar to pretrial release, an order of supervision requires the non-citizen to report periodically to an ICE officer, to obtain pre-authorization for travel beyond certain boundaries, and so forth.  *See id.* § 241.5(a).

    to do so;

o  [2] Is an alien who has failed to report to an ICE officer after receiving a legal order to do so;

o  [3] Is an alien who has failed to comply with any conditions placed on him/her;

o  [4] Is an alien who has failed to comply with the provisions of any program that requires him/her to report to ICE for any reason; or

o  [5] Is wanted by ICE for criminal violations of the Titles 8, 18, 19 and 21.

(ECF No. 60-2 at 2 (bracketed numerals inserted for ease of reference).) Item 5 from this list has no obvious overlap with the previous Fugitive Practice. Items 1–4, however, are only minor variations on the Fugitive Practice's definition of "fugitive." The single notable difference is that the Fugitive Practice applied to non-citizens who were under a removal order and (among other things) an order of supervision, regardless of compliance with the order of supervision, whereas items 2–4 of the SOP definition appear to require some sort of non-compliance with the order of supervision. In that sense, the SOP is narrower than the Fugitive Practice.

    ICE points out three other supposedly "fundamental" differences. (ECF No. 91 at 17.) First, ICE notes that the SOP constrains ICE to consider fugitive status only when ICE receives a FOIA request directly, as opposed to a referral from another agency. (*Id.*; *see also* ECF No. 60-2 at 1.) This is somewhat narrower than the Fugitive Practice, but it is materially no different when applied to requests submitted directly to ICE.

    Second, ICE emphasizes the SOP's "applicability only to requests for records in ERO's law enforcement databases." (ECF No. 91 at 17.) But the evidence does not

support this characterization of the SOP.  When ICE invoked the Fugitive Practice, it

told requesters,

> It is ICE's practice to deny fugitive alien FOIA requesters
> access to the FOIA process when the records requested
> could assist the alien in continuing to evade immigration
> enforcement efforts.  The agency has reviewed the
> information sought in your request and has determined that
> there is a connection between that information and the
> subject of the request's status as a fugitive.

(ECF No. 84 at 7, ¶ 9.)  Although this potentially embraces records outside of "ERO's

law enforcement databases," ICE submits no evidence of other databases or

repositories where it finds responsive records that "could assist the alien in continuing to

evade immigration enforcement efforts."  At most, then, this aspect of the SOP narrows

the Fugitive Practice to an undetermined degree.  Given that the SOP itself states that

"[r]equests submitted by individuals directly to ICE are typically for records that are kept

in the agency's law enforcement databases" (ECF No. 60-2 at 1), the narrowing—to

whatever degree—cannot be deemed substantial.

Third, ICE highlights the SOP's "express reliance on Exemption 7(A)."  (ECF

No. 91 at 17.)  But ICE has never explained the basis for the Fugitive Practice, and so

fails to give the Court enough evidence to determine whether this distinction matters.  If

the Fugitive Practice was implicitly motivated by Exemption 7(A), then the SOP's explicit

invocation of Exemption 7(A) is merely a formal distinction, not a substantial one.  If it

was motivated, in part or in whole, by ICE's understanding of the fugitive disentitlement

doctrine, ICE has not explained its understanding of that doctrine, as embodied in the

Fugitive Practice, and when it would apply to a record *not also within* Exemption 7(A).

On balance, then, the SOP is somewhat narrower than the Fugitive Practice, but

not in a way that matters.  ICE will continue to withhold under the SOP a substantial

portion of the records it would have withheld under the Fugitive Practice.  The Court therefore finds this case analogous to *Florida Contractors*.  There, during the course of litigation, the defendant narrowed—but did not eliminate—its minority set-aside program for city contracts.  508 U.S. at 660–61.  Rejecting the defendant's argument that this change stripped the plaintiff of standing, the Supreme Court reasoned that

> [t]he gravamen of [the plaintiff's] complaint is that its members are disadvantaged in their efforts to obtain city contracts.  The new ordinance may disadvantage them to a lesser degree than the old one, but insofar as it accords preferential treatment to black- and female-owned contractors . . . it disadvantages them in the same fundamental way.

*Id.* at 662.  So too here.  The gravamen of Smith's complaint is her belief that many of her future FOIA requests will be denied based on ICE's determination of "fugitive" status and its understanding of its power to withhold responsive records on that account.  The SOP may disadvantage Smith to a lesser degree than the Fugitive Practice, but it disadvantages her in the same fundamental way.

In short, the SOP is not the sort of change that "render[s] the original controversy" over the Fugitive Practice "a mere abstraction."  *Fillyaw*, 958 F.2d at 1520.  If Smith had standing at the beginning of the lawsuit to seek an injunction against the Fugitive Practice, she continues to possess that commencement-of-the-suit standing to seek an injunction against the SOP.[14]

4.  <u>Did Smith Have Standing When She Filed the First Amended Complaint to Seek an Injunction Against Applications of the Fugitive Practice to Requests Made on Behalf of Clients Other Than Ms. Sanchez?</u>

Having established that the SOP is the only policy currently in force relevant to

---

[14] Stated differently, the dispute would not be moot.  (*See* n.11, above.)

Smith's claims of expected future injury, but also that the SOP continues to threaten the same alleged injury as the Fugitive Practice, the Court may finally turn to the question of Smith's standing upon filing the First Amended Complaint to seek an injunction against the Fugitive-Practice-become-SOP, or in other words, ICE's continuing practice of denying FOIA requests, in whole or in part, made by or on behalf of those who meet ICE's internal definition of "fugitive."

This re-raises essentially the same question explored at the motion-to-dismiss phase, namely, whether the state of facts at the beginning of the lawsuit was such that Smith could then reasonably expect "imminent" applications of the Fugitive Practice to her pending FOIA requests. As recounted previously (*see* Part III.B.2, above), the Court's order emphasized that the case remained at the pleading phase and Smith's allegations were enough at that phase. The Court found it "concerning" that Smith had "alleged only three instances of denial based on the Fugitive Practice" despite allegations of "'regularly' submit[ting] FOIA requests." *Smith*, 249 F. Supp. 3d at 1210. But she had nonetheless "presented a sufficiently 'concrete' allegation of likely future harm" to survive ICE's motion to dismiss. *Id.*

The advantage the plaintiff gets at the pleading phase—at least with respect to allegations going to standing—is that "general factual allegations of injury resulting from the defendant's conduct may suffice" because courts "presume that general allegations embrace those specific facts that are necessary to support the claim." *Lujan*, 504 U.S. at 561 (internal quotation marks omitted; alterations incorporated). "In response to a summary judgment motion, however, the plaintiff can no longer rest on such mere allegations, but must set forth[,] by affidavit or other evidence[,] specific facts . . . ." *Id.*

(internal quotation marks omitted).  But whether at the pleading or summary judgment phrase, the "imminence" inquiry turns on the objective "likelihood of a recurrence of the allegedly unlawful conduct.  It is the *reality* of the threat of repeated injury that is relevant to the standing inquiry, not the plaintiff's subjective apprehensions."  *City of Los Angeles v. Lyons*, 461 U.S. 95, 107 (1983) (emphasis in original).

Here, as at the pleading phase, Smith invokes prior FOIA denials on account of the Fugitive Practice as evidence that future denials were reasonably likely.  *Cf.* *O'Shea*, 414 U.S. at 496 (past exposure to illegal conduct is "evidence bearing on whether there is a real and immediate threat of repeated injury").  Smith sometimes asserts only two denials, namely, that related to Ms. Sanchez and that directed to "Ms. Brown" (*see* ECF No. 85 at 6–7, 13, ¶¶ 6–8, 11, 32), and Smith at other times additionally asserts the July 2015 denial (*see* ECF No. 89 at 12).  However, all of these assertions are supported in the manner required at the summary judgment phase, *see* *Lujan*, 504 U.S. at 561, and all of them predate Smith's "pattern or practice" cause of action and attendant request for an injunction.

As noted above (Part III.C), the "Ms. Brown" denial was not a denial of a request made by Smith, and the July 2015 denial was a denial in name only (it is also unclear whether Smith herself made the request that resulted in that denial).  But ICE nowhere disputes that these requests—or any of the requests detailed in Smith's chart (*see* Part III.C, above)—originated with Smith's law office.  Nor does ICE raise any dispute regarding Smith's awareness of the July 2015 denial and the denial directed at Ms. Brown.  Finally, there is no principle of law of which the Court is aware saying that others' past exposure to illegal conduct cannot form part of the basis for your own

argument that the same conduct is likely to happen to you, as long as you are similarly situated. Accordingly, although Smith herself likely could not have sued to overturn the denial directed at Ms. Brown, she may invoke that denial as part of her argument that future denials are likely forthcoming. The same is true for the July 2015 denial, if it was not directed to Smith.[15]

Furthermore, it is undisputed that Smith "had 11 FOIA requests pending with ICE" when "the case was filed," meaning the filing of the original complaint. (ECF No. 85 at 12, ¶ 30.) One of those requests was actually Ms. Brown's request, which ICE denied, invoking the Fugitive Practice, about a month after the original complaint. (*Id.* at 7, ¶ 11.) And Smith makes FOIA requests on behalf of one to two non-citizen clients per month, on average. (*See* Part III.C, above.)

As the Court stated at the motion-to-dismiss phase, "there is no predetermined number of prior denials, combined with future intentions, that distinguishes a plaintiff with standing and one without." *Smith*, 249 F. Supp. 3d at 1210. Given the undisputed facts, the Court finds that it was reasonably likely as of the First Amended Complaint that ICE would apply the Fugitive Practice to Smith's FOIA requests in the future. Smith therefore had standing to seek an injunction against the Fugitive Practice, which has now morphed into the SOP.

### 5. What About ICE's Lack of Invocation of the Fugitive Practice Against Smith?

The Court notes ICE's insistence that it has never applied the SOP to deny one of Smith's FOIA requests. (*See, e.g.*, ECF No. 84 at 15–16.) ICE has offered no

---

[15] Although the July 2015 denial was in name only, it is still some evidence of ICE's likelihood of applying the Fugitive Practice to future FOIA requests.

authority that its choice not to invoke the challenged policy while the challenger's litigation is pending has any relevance to whether it was likely at the relevant time (here, as of the filing of the First Amended Complaint) that the practice would be invoked in the future. Even if it had such relevance, such as in a mootness inquiry, ICE has put nothing into the record establishing *why* it chose not to invoke the SOP (or, previously, why it stopped invoking the Fugitive Practice as to Smith's FOIA requests).

       6.    <u>What About ICE's Relatively Rare Invocation of the SOP?</u>

As for the (apparently) 333 instances in which the SOP has been invoked against others out of more than 110,000 FOIA requests (*see* Part III.F.4, above), the Court sees this statistic differently than ICE. To the extent it is relevant to the state of affairs as of the filing of the First Amended Complaint (which the Court doubts, because the SOP did not exist then), it shows that the SOP is an active policy, not a dead letter.

* * *

For all the foregoing reasons, Smith has standing to challenge the SOP, assuming there such a thing as a "pattern or practice" claim under FOIA—which the parties dispute. The Court now turns to that question.

**B.    May Smith Sue for a "Pattern or Practice" FOIA Violation?**

The D.C. Circuit and the Ninth Circuits are the only circuits, so far, to recognize a claim under FOIA alleging a pattern or practice of violations. *See Payne Enters., Inc. v. United States*, 837 F.2d 486, 490–94 (D.C. Cir. 1988); *Long v. IRS*, 693 F.2d 907, 909 (9th Cir. 1982). The Court is aware of no case in which a court has held that such a claim is *not* viable, and the parties cite no such case either.

Having carefully considered the matter, the Court concludes that asking whether a pattern or practice claim may be implied under FOIA is not the right question when the

32

challenged pattern or practice is a formal policy governing invocation of a FOIA exemption.[16]  A cause of action already exists "[1] to enjoin the agency from withholding agency records and [2] to order the production of any agency records improperly withheld from the complainant."  5 U.S.C. § 552(a)(4)(B).  The second clause obviously contemplates the "traditional" FOIA plaintiff, from whom records are currently being withheld under the formal policy.  But the first clause is not so restricted.  This suggests that "enjoin[ing] the agency from withholding agency records" may be proper as the only form of relief, as would be the case for a plaintiff in Smith's position.

Thus, in the Court's view, a plaintiff seeking to plead a § 552(a)(4)(B) cause of action *before* the agency withholds records may do so in the same way that any plaintiff may plead a cause of action in federal court before suffering the relevant injury, namely, through the Declaratory Judgment Act, 28 U.S.C. §§ 2201–02, and by establishing Article III standing (in particular, a likelihood that the injury will occur).  When a plaintiff can establish a likelihood that an agency policy will be invoked against his or her FOIA request(s) in the future, the plaintiff may, through the Declaratory Judgment Act, invoke the 5 U.S.C. § 552(a)(4)(B) cause of action to enjoin the agency from withholding agency records.

The Court has already determined that Smith has Article III standing to assert her claim, and she has sought declaratory relief from the beginning of this lawsuit.  To be clear, she has not invoked the Declaratory Judgment Act by name, but she has sought a declaration that the Fugitive Practice is unlawful.  Only the Declaratory Judgment Act

---

[16] In contrast, potentially, with other pattern or practice theories that parties have advanced.  *See, e.g.*, *Rocky Mountain Wild, Inc. v. U.S. Forest Serv.*, 2016 WL 362459, at *11–12 (D. Colo. Jan. 29, 2016) (alleged pattern or practice of excessive delay in responding to FOIA requests).  The Court expresses no opinion about those other theories.

gives this Court power to provide a "declaration" as a discrete form of relief. Thus, Smith's reliance on the Declaratory Judgment Act is necessarily implicit. *See also* Fed. R. Civ. P. 8(e) ("Pleadings must be construed so as to do justice.").

In sum, Smith may pursue her claim that the Fugitive-Practice-become-SOP is unlawful, whether that claim is dubbed a "pattern or practice" claim or otherwise.

## C.     Is the SOP Facially Unlawful?

Smith argues that "the SOP violates FOIA on its face." (ECF No. 85 at 21.) Thus, Smith "must establish that no set of circumstances exists under which the [SOP] would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987); *see also Reno v. Flores*, 507 U.S. 292, 301 (1993) (no-set-of-circumstances standard applies to facial challenges under a statute).

Smith attacks both bases recited in the SOP for withholding records, *i.e.*, Exemption 7(A) and the fugitive disentitlement doctrine. (*See* ECF No. 85 at 21–27.) The Court will begin by explaining why the fugitive disentitlement doctrine is presently irrelevant. The Court will then address Exemption 7(A).

### 1.     Does the Fugitive Disentitlement Doctrine Matter to the Dispute as Presently Framed?

In its modern form, the fugitive disentitlement doctrine holds that a criminal defendant on the lam cannot "use the legal system to challenge the charges against him from the safety of his hideout," *Niemi v. Lasshofer*, 728 F.3d 1252, 1255 (10th Cir. 2013), nor will an appellate court hear an appeal from such a person, *see Ortega-Rodriguez v. United States*, 507 U.S. 234, 239–42 (1993). The Tenth Circuit has extended this principle immigration appeals. *Martin v. Mukasey*, 517 F.3d 1201, 1204 (10th Cir. 2008).

Smith argues extensively that the SOP's invocation of the fugitive disentitlement doctrine makes it facially unlawful under FOIA because FOIA only allows an agency to withhold documents under certain enumerated exemptions, and "fugitive disentitlement" is not among them. (ECF No. 85 at 22–27.) By way of declaration, however, Mr. Pineiro informs the Court that "there is never a situation in which ICE FOIA would deny a fugitive alien's FOIA request on the basis the fugitive disentitlement doctrine but not FOIA Exemption 7(A)." (ECF No. 72-1 ¶ 5.) Smith counters that this appears to make the SOP's invocation of the fugitive disentitlement doctrine "meaningless" and the Court "should treat [Pineiro's] assertion[] with significant skepticism." (ECF No. 85 at 24.)

ICE's position on this matter is confusing. However, the Court need not decide whether Mr. Pineiro's declaration creates any dispute of fact requiring trial. ICE's summary judgment briefing never attempts to defend the SOP as a proper application of the fugitive disentitlement doctrine. ICE instead argues that "as long as documents are properly withheld under a FOIA Exemption (here, Exemption 7(A)), then the invocation of an incorrect basis for withholding records by the agency would not amount to a FOIA violation." (ECF No. 88 at 31.) In other words, from ICE's point of view, its case stands or falls with Exemption 7(A). The Court accepts the concession and turns to the Exemption 7(A) question.

2.  Is the SOP a Proper Categorical Application of Exemption 7(A)?

As noted above (Part I), Exemption 7(A) permits a federal agency to withhold "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information * * * could reasonably be expected to interfere with enforcement proceedings." 5 U.S.C.

§ 552(b)(7)(A).  In the Tenth Circuit, records created by law enforcement agencies are *per se* "records or information compiled for law enforcement purposes."  *Jordan v. U.S. Dep't of Justice*, 668 F.3d 1188, 1195–98 (10th Cir. 2011).  No party disputes that ICE is a law enforcement agency.  The only question, then, is the second clause ("could reasonably be expected to interfere with enforcement proceedings").

ICE defends the SOP as a proper categorical application of Exemption 7(A) to "law enforcement records in the databases of ICE's Office of Enforcement and Removal Operations ('ERO'), the subjects of which requests ERO determines are fugitives." (ECF No. 88 at 1.)  More specifically, it represents that "[t]he SOP applies only to requests by fugitives for records within the ERO's law enforcement databases, and 'categorical' withholding refers to the withholding of the category of law enforcement records regarding the fugitive."  (*Id.* at 14, ¶ 25.)

Categorical withholding, as opposed to making document-by-document or line-by-line exemption decisions, is an approved concept in FOIA law.  In particular, the Supreme Court holds that "categorical decisions [about a FOIA exemption] may be appropriate and individual circumstances disregarded when a case fits into a genus in which the balance characteristically tips in one direction," *i.e.*, toward applying the exemption.  *U.S. Dep't of Justice v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 776 (1989) ("*Reporters Committee*").  Thus, particularly as to the law enforcement exemptions (including Exemption 7(A)), a court may conclude "for an appropriate class of law enforcement records or information" (or, stated slightly differently, for "a particular type of document") that the "categorical balance" favors declaring that category of record or information off-limits under a particular exemption—thus permitting the agency

(and any reviewing court) to make its FOIA decision "without regard to individual circumstances . . . [or] the difficulties attendant to ad hoc [*i.e.*, document-by-document] adjudication." *Id.* at 777 & n.22, 780.

But what is a "category" for purposes of categorical withholding? The Supreme Court's language quoted immediately above refers to "an appropriate class of law enforcement records or information" and "a particular type of document." By way of concrete examples, the Supreme Court has approved categorical withholding under Exemption 7(A) of statements gathered by the National Labor Relations Board from potential witnesses to NLRB enforcement proceedings, *see NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 236–43 (1978) ("*Robbins*"), and under Exemption 7(C) (relating to individual privacy interests) of FBI rap sheets, *Reporters Committee*, 489 U.S. at 780.

The D.C. Circuit, which handles FOIA cases more often than any other circuit, makes a distinction between "blanket" and "generic" categorical withholdings. A blanket exemption is an unlawful exemption "claimed for all records in a file simply because they are in the file." *Crooker v. Bureau of Alcohol, Tobacco & Firearms*, 789 F.2d 64, 66 (D.C. Cir. 1986). A generic exemption is another name for a lawful categorical exemption: "Because generic determinations are permitted, the government need not justify its withholdings document-by-document; it may instead do so category-of-document by category-of-document. The government may not, however, make its justifications file-by-file." *Id.* at 67. The D.C. Circuit makes this distinction because the law enforcement exemption, as originally enacted in 1966, allowed for withholding of "investigatory files," and Congress amended it in 1974 to focus on "records or

information" so the exemption could not be claimed simply because a document (regardless of its contents) happens to be found in an investigatory file. *See id.* at 65–66.

"File" and "document" had more distinct, concrete meanings when Congress was enacting and amending FOIA in the 1960s and '70s, as compared to today. The Court is persuaded nonetheless that *Crooker* properly states the applicable legal principles. A proper categorical exemption applies at the document level, and not at the broader "file" or "container" level, unless the container only contains documents to which a proper categorical exemption applies. In other words, the presence of a document in a container is not enough, by itself, to invoke a categorical exemption.[17]

Applying the foregoing, there is no genuine dispute of fact that ICE is impermissibly attempting to apply Exemption 7(A) at the container level. In this case, the container is "the databases of ICE's Office of Enforcement and Removal Operations ('ERO')." (ECF No. 88 at 1.)[18] The Court understands that, according to the SOP, ICE's "law enforcement databases . . . may include, but are not limited to, [documents such as] investigatory records, records of ICE encounters with an aliens [*sic*], attorney

---

[17] The Court recognizes that the distinction between a document and a container can be slippery in the digital age. Databases and other digital archives can store their contents in ways that defy tangible analogies such as a piece of paper within a folder. Even a Microsoft Word document is really a container for numerous discrete XML files. But nothing in the record suggests that such subtleties or ambiguities are at issue in this case.

[18] Although ICE argues in its summary judgment briefing that it withholds records only from the ERO databases, the SOP is not so precise. The SOP refers to "records that are kept in the agency's law enforcement databases" (ECF No. 60-2 at 1), without limiting itself to the ERO databases; and, regardless, it authorizes the ICE FOIA office to "categorically withhold the fugitive's law enforcement records or information," without mentioning any database (*id.* at 2). Further, the appeal process directs the reviewing attorney to review numerous sources of information but never mentions the ERO database. (*Id.* at 2–3.) However, the Court can accept ICE's representation in summary judgment briefing as the true state of facts because the outcome is the same regardless.

notes, and officers' investigatory notes." (ECF No. 60-2 at 1.) The Court also has no doubt, as ICE represents, that releasing these types of records "could interfere with [efforts to apprehend a fugitive] by allowing him or her to continue to evade law enforcement, such as by informing the individual that ICE is about to try to detain him or her, or that ICE is aware of a relative's address where the individual could try to hide to evade detention." (ECF No. 84 at 9, ¶ 19.) Thus, *some* types of records in the ERO databases may be the sorts of records to which Exemption 7(A) could apply categorically. Indeed, without prejudging the matter, these may be the sorts of records that are withholdable from any requester, not just the "fugitives" to which the SOP applies. But ICE has failed to show that the ERO databases contain *only* these types of records.

Not only has ICE failed to make the appropriate record, the evidence in the record shows there is no genuine dispute that the ERO databases contain more than the type of document to which a proper categorical 7(A) exemption may apply. First, as already noted, the SOP says that ICE's law enforcement databases are "not limited to" documents such as "investigatory records, records of ICE encounters with an aliens [*sic*], attorney notes, and officers' investigatory notes." (ECF No. 60-2 at 1.) So there are manifestly more than Exemption 7(A)-related documents in these databases. Second, Mr. Pineiro's and Ms. Pavlik-Keenan's apparent disagreement over whether ICE refers FOIA requests to other agencies or units when it finds documents that originated elsewhere at least shows that ICE indeed finds more than its own enforcement-related records in its databases. (*See* Part III.F.4, above.) Third, the SOP's appeal procedures specifically contemplate that the attorney handling the appeal

will find responsive, non-exempt materials once the relevant records are examined document-by-document.  (ECF No. 60-2 at 2–3.)

The SOP appeal procedures further illustrate, from a different perspective, why ICE's attempted categorical exemption is improper.  A categorical exemption is meant to be something the agency stands on to withhold documents, and, if upheld by a federal court, something the agency can invoke in perpetuity.  *Cf. Robbins*, 437 U.S. at 236 ("We conclude that Congress did not intend to prevent the federal courts from determining that, with respect to particular kinds of enforcement proceedings, disclosure of particular kinds of investigatory records while a case is pending would generally 'interfere with enforcement proceedings.'").  The fact that the SOP has a built-in appeal procedure during which, for the first time, someone inspects the potentially responsive documents "to ensure that there is a connection between the documents requested and the alien's continued evasion of law enforcement efforts" (ECF No. 60-2 at 3) shows that the SOP is not a categorical exemption on which the agency intends to stand, but only a categorical, container-level, first-instance denial.

A third perspective additionally illustrates why the SOP is not a proper categorical application of Exemption 7(A).  As ICE explains it, "[t]he SOP applies only to requests by fugitives for records within the ERO's law enforcement databases, and 'categorical' withholding refers to the withholding of the category of law enforcement records regarding the fugitive."  (ECF No. 88 at 14, ¶ 25.)  But this only gets ICE past the initial condition for any application of Exemption 7, namely, "records or information compiled for law enforcement purposes."  5 U.S.C. § 552(b)(7).  It does not get ICE all the way to Exemption 7(A), which requires that release of the records "could reasonably be

expected to interfere with enforcement proceedings." *Id.* § 552(b)(7)(A).

Again, the Court has no doubt that the ERO databases contain records which should not be released due to the potential interference with enforcement proceedings that such release may cause. Nothing in this order should be construed as prohibiting ICE from applying Exemption 7(A) in the normal way, *i.e.*, on a document-by-document basis. Nor should anything in this order be construed as prohibiting ICE from attempting a proper categorical exemption, whether tied to "fugitive" status or otherwise. But on the relevant record, in which there is no genuine dispute of material fact, ICE's SOP is not a proper categorical application of Exemption 7(A) because it withholds records based on the container in which they are found, and not based on the type of record itself.[19] Smith has thus carried her burden to show that there is no set of circumstances under which the SOP is lawful under FOIA.

## V. REMEDY

The statutorily mandated remedy for a FOIA violation such as the one found above is to "enjoin the agency from withholding agency records." 5 U.S.C. § 552(a)(4)(B). ICE argues that any such injunction must be directed at ICE's

_____

[19] To repeat (*see* n.17, above), no evidence suggests that the ERO databases handle data in a way that blurs the distinction between container and record. The Court can imagine, for example, a contemporary reboot of the FBI rap sheet dispute in *Reporters Committee*, where there no longer exists anything, tangible or digital, as discrete as a "sheet." Rather, the various events on a person's criminal history are simply rows in a table linked to that person through some unique identifier alongside many other kinds of information likewise linked to that person, all of which can be selectively pulled up in report form according to the end user's needs. In other words, it is hard to say what is a "document" and what is a "file" and what is just a discrete bit of information. Conceivably, this might prompt the Supreme Court to reevaluate what it means to make a FOIA decision "without regard to individual circumstances" and in light of "the difficulties attendant to ad hoc adjudication," *Reporters Committee*, 489 U.S. at 780, and how this interacts with Congress's plain intent to prevent withholding of law enforcement "files" as distinct from "records or information," *see Crooker*, 789 F.2d at 66. But ICE makes no argument in this vein, so the Court need not explore whether modern realities of data storage require reconsideration of the meaning and purpose of categorical exemptions.

application of the SOP to Smith, rather than ICE's application of the SOP in general. (ECF No. 88 at 38–39.)  ICE cites recent decisions from and within the D.C. Circuit suggesting that "pattern or practice" relief should be limited to the plaintiff's particular circumstances.  *See CREW*, 846 F.3d at 1243–44; *Am. Ctr. for Law & Justice v. U.S. Dep't of State*, 249 F. Supp. 3d 275, 281, 286 (D.D.C. 2017).

As explained in Part IV.B, above, the Court does not adopt a "pattern or practice" theory.  Moreover, the D.C. Circuit's recent jurisprudence heavily relies on the clause in § 552(a)(4)(B) authorizing the district court "to order the production of any agency records improperly withheld from the complainant."  *See CREW*, 846 F.3d at 1243 ("Section 552(a)(4)(B), we said, is aimed at relieving the injury suffered by the individual complainant, not by the general public as it allows district courts to order the production of any agency records improperly withheld *from the complainant*, not agency records withheld from the public." (internal quotation marks omitted; alterations incorporated; emphasis in original)).  In the Court's view, this ignores half of the statutorily authorized remedies.  As previously explained (also in Part IV.B, above), § 552(a)(4)(B) allows district courts "to enjoin the agency from withholding agency records *and* to order the production of any agency records improperly withheld from the complainant" (emphasis added).  The Court "will not construe a statute in a way that renders words or phrases meaningless, redundant, or superfluous."  *Bridger Coal Co. v. Office of Workers' Comp. Programs*, 927 F.2d 1150, 1153 (10th Cir. 1991).  Accordingly, the first remedy—"enjoin the agency from withholding agency records"—must not be treated as just another form of the second remedy—"order the production of any agency records improperly withheld from the complainant."  The Court thus disagrees with the D.C. Circuit in this respect.

Moreover, the notion of a facial challenge—by definition, that a statute, regulation, or other authority cannot be lawfully applied in *any* circumstance, *see Salerno*, 481 U.S. at 745—becomes nonsense if the corresponding remedy runs only in favor of the individual plaintiff in a single case.

For these reasons, the Court rejects ICE's argument that the injunction should only constrain ICE's conduct vis-à-vis Smith. The Court will enjoin ICE from withholding its records pursuant to the SOP or any other policy or practice not materially different from the SOP.

## VI. CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1. Defendant's Motion for Summary Judgment (ECF No. 84) is DENIED;

2. Plaintiff's Motion for Summary Judgment (ECF No. 85) is GRANTED to the extent stated above, but otherwise DENIED;

3. Defendant United States Immigration and Customs Enforcement, together with its officers, agents, servants, employees, and attorneys, is PERMANENTLY ENJOINED from applying the Standard Operating Procedure titled "FOIA Requests Made By, or On Behalf of, Fugitive Aliens," promulgated in or around July 2017, or any other policy (written or unwritten) not materially different from this Standard Operating Procedure, to withhold any information or record that is responsive to a Freedom of Information Act request;

4. The Clerk shall enter judgment in favor of Plaintiff and against Defendant and shall terminate this case; and

5. Plaintiff shall have her costs upon compliance with D.C.COLO.LCivR 54.1.

Dated this 16th day of December, 2019.

BY THE COURT:

William J. Martinez
United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Case No. 16-cv-2137-WJM-KLM

JENNIFER M. SMITH,

     Plaintiff,

v.

U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT,

     Defendant.

---

## FINAL JUDGMENT

---

In accordance with the orders filed during the pendency of this case, and pursuant to Fed. R. Civ. P. 58(a), the following Final Judgment is hereby entered.

Pursuant to the Order Granting Plaintiff's Motion for Summary Judgment in Part, Denying Defendant's Motion for Summary Judgment, and Permanently Enjoining Defendant [ECF 92] entered by Judge William J. Martínez on December 16, 2019, and incorporated herein by reference as if fully set forth, it is

ORDERED that Defendant's Motion for Summary Judgment [ECF 84] is denied. It is further

ORDERED that Plaintiff's Motion for Summary Judgment [ECF 85] is granted, as stated in the Order Granting Plaintiff's Motion for Summary Judgment in Part, Denying Defendant's Motion for Summary Judgment, and Permanently Enjoining Defendant [ECF 92]. It is further

ORDERED that final judgment is hereby entered in favor of Plaintiff, Jennifer M. Smith, and against Defendant, U.S. Immigration and Customs Enforcement. It is further

ORDERED that Plaintiff shall have her costs by the filing of a Bill of Costs with

the Clerk of this Court within fourteen days of the entry of judgment, pursuant to Fed. R.

Civ. P. 54(d)(1) and D.C.COLO.LCivR 54.1.

This case will be closed.

DATED at Denver, Colorado this 16th day of December, 2019.

FOR THE COURT:

JEFFREY P. COLWELL, CLERK

By: s/Anna Frank
      Anna Frank, Deputy Clerk

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 16-cv-02137-WJM-KLM

JENNIFER M. SMITH,

     Plaintiff,

v.

U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT,

     Defendant.

_____

## NOTICE OF APPEAL
_____

Defendant U.S. Immigration and Customs Enforcement appeals to the United States Court of Appeals for the Tenth Circuit from the District Court's December 16, 2019 Order Granting Plaintiff's Motion for Summary Judgment In Part, Denying Defendant's Motion for Summary Judgment, and Permanently Enjoining Defendant (ECF No. 92), the Final Judgment entered December 16, 2019 (ECF No. 93), and the District Court's April 5, 2017 Order Denying Motion to Dismiss (ECF No. 45).

DATED:  February 14, 2020.          Respectfully submitted,

                                    JASON R. DUNN
                                    United States Attorney

                                    *s/ Ian J. Kellogg*
                                    Ian J. Kellogg
                                    Assistant United States Attorney
                                    United States Attorney's Office
                                    1801 California Street, Suite 1600
                                    Denver, CO 80202
                                    Telephone: 303-454-0100
                                    Fax: 303-454-0407
                                    E-mail: ian.kellogg@usdoj.gov

                                    Attorneys for U.S. Immigration and Customs
                                    Enforcement

## CERTIFICATE OF SERVICE

I certify that on February 14, 2020, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following email addresses:

      Dan@CulhaneLaw.com
      msilverstein@aclu-co.org
      sneel@aclu-co.org

                        *s/ Ian J. Kellogg*
                        United States Attorney's Office